BARRY R. FEERST & ASSOCIATES (BRF-3836)
Attorneys for Plaintiffs
194 South 8th Street
Brooklyn, New York 11211
t(718)384-9111
f(718)384-5999


UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------X

STEVEN COOPER,

                             Plaintiff,          **COMPLAINT**

        -against-                                Plaintiff Demands
                                                 Trial by Jury
THE CITY OF NEW YORK; POLICE LIEUTENANT
THOMAS JACOBS, POLICE OFFICER JESSICA
SCHRELL SHIELD NO. 26482, POLICE
DEPARTMENT SERGEANT BRENDAN RYAN, NEW YORK
POLICE OFFICERS JOHN DOES 1-10 the
identity of whom is presently unknown,
in their individual and official capacities
as New York City Police Officers;
DANIEL O'CONNOR

                             Defendants.

------------------------------------------X

     Plaintiff, Steven Cooper ("Cooper") by and through his

attorneys, BARRY R. FEERST & ASSOCIATES, alleges as follows:

### INTRODUCTION

     1. This action arises from the unjustified assault and battery

of Cooper by New York Police Department("NYPD") Lieutenant Thomas

Jacobs ("Jacobs") and Daniel O'Connor("O'Connor")and the subsequent

actions of certain NYPD Officials who failed to arrest Jacobs for

Assault, and other crimes; but instead conspired with each other

and other and third parties to, among other things, conceal their

conduct. Said defendants made false statements of fact and ignored evidence, violated Cooper's rights with the intent of shielding Jacobs from criminal, civil and administrative sanctions by falsely arresting Cooper for numerous false charges including Assault, Menacing ,and Harassment. Thereafter, knowing the charges against Cooper were false, Police Sergeant Brendan Ryan ("Ryan) disseminated and published a false statement to the New York Post stating that Jacobs was punched in the face by Cooper causing bruising and swelling to Jacobs. This false and defamatory statement depicted Cooper as the aggressor rather than the victim.

2. Cooper seeks redress against the defendants for their acts, which permitted, condoned and preserved through the code of silence, the protection of Jacobs from any serious investigation, arrest, prosecution and conviction for his criminal acts, including, but not limited to, knowingly signing and filing with the Criminal Court, a deposition in support of the fabricated false and baseless charges against Cooper. The consequence of defendant's behavior was Cooper suffering: serious physical injury as a result of the Assault, followed by his unlawful arrest and false imprisonment by NYPD John Doe officers and NYPD Officer Jessica Schrell, Shield No. 26482 ("Schrell"); malicious prosecution and the public humiliation of being falsely accused of punching an NYPD officer. Cooper seeks compensation from defendants, including their supervisors, who approved defendants' conduct.

-2-

## JURISDICTION AND VENUE

3. This Court has original jurisdiction over Plaintiff's constitutional and federal law claims pursuant to 28 U.S.C. §§ 1331, 1343, and 2202 in that this action is brought pursuant to 42 U.S.C. §§ 1981, 1983, 1985 and 1988, to redress the deprivation under color of law of Plaintiff's rights guaranteed by the First, Fourth, Sixth, Eight and Fourteenth Amendments to the United States Constitution.

4. Plaintiff further invokes the supplemental jurisdiction of this Court to adjudicate pendent State Law claims pursuant to 28 U.S.C. § 1367.

5. Venue is properly laid in the Eastern District of New York under 28 U.S.C. §1391(b), in that this is the District in which the events that gave rise to the claims asserted herein occurred within its boundaries.

## NOTICE OF CLAIM

6. On June 20, 2016, within ninety days after this claim arose, a notice of claim in writing on behalf of Cooper was served upon the CITY OF NEW YORK ("NYC")in compliance with General Municipal Law, by delivering a copy of the notice to the person designated by law as a person to whom such claims may be served, setting forth the facts underlying Cooper's claim. The claim was assigned the number 2016PI019014 by NYC Comptrollers's office.

7. Cooper was subjected to an examination pursuant to N.Y. Gen. Mun. L. Sec. 50-h on September 14, 2016. At least thirty days have elapsed since the service of the notice of claim, and no response has been received by Plaintiff and no compensation has been offered by NYC in response to this claim, which has neglected and failed to adjust the claim within the statutory time period.

8. This action has been commenced within one year and ninety days of the date of occurrence of the events giving rise to this action.

## DEMAND FOR A JURY TRIAL

9. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues so triable.

## PARTIES

10. Cooper, is a citizen and resident of Kings County, New York.

11. O'Connor is a resident of the State of California.

12. NYC is and was at all times relevant herein a municipal corporation duly incorporated under the laws of the State of New York pursuant to § 431 of its Charter. NYC is authorized by law to maintain the NYPD, a municipal agency of NYC with multiple Police Precincts including the 90th Police Precinct, which acts for it in the area of law enforcement, and for whose acts NYC is ultimately responsible.

-4-

13. NYC assumes the risks incidental to the maintenance of a police force and the policies, procedures, and practices implemented through its various agencies, departments, and employees, and for injury occasioned thereby. It is the public employer of the police officers, detectives, supervisory and administrative personnel within the NYPD, which hired, supervised, trained, retained and controlled the police officers, detectives and supervisory personnel in the 90th police precinct of the NYPD who are named as individual Defendants herein and who have enforced the State laws at issue against Cooper.

14. Schrell, Ryan, and Jacobs at all times relevant herein, were officers, employees and agents of the NYPD, acting under color of State law. Schrell, Ryan and Jacobs are sued in their individual and official capacities.

15. At all times relevant defendants John and Jane Doe 1 through 10 were NYPD officers, detectives or supervisors acting under color of State law, whose real names and shield numbers are presently unknown to Plaintiff.

16. At all times relevant herein, John and Jane Doe 1 through 10 were acting as agents, servants and employees of NYC and said Defendants are sued in their individual and official capacities.

17. At all times hereinafter mentioned, Schrell, Ryan, and Jacobs, and JOHN and JANE DOE 1 through 10, were duly sworn NYPD and were acting under the supervision of NYPD and according to

their official duties.

18. At all times hereinafter mentioned Schrell, Ryan, and Jacobs, and JOHN and JANE DOE 1 through 10, either personally or through co-employees of NYPD, were acting under color of State law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State of New York and/or NYC.

19. Each and all of the acts of, Schrell, Ryan, and Jacobs, and JOHN and JANE DOE 1 through 10 alleged herein were carried out by said defendants while acting within the scope of their employment by NYC.

## STATEMENT OF FACTS

20. On March 20, 2016 at approximately 4:00 p.m., Cooper was lawfully walking across the sidewalk on a public street named ("Broadway"), in Kings County, New York.

21. A vehicle, in which Jacobs, O'Connor and a number of John Doe defendants were riding exiting the Williamsburg Bridge onto Broadway, ignored the stop sign at Broadway and struck Cooper, who was crossing from the east side to the west side of Broadway.

22. Immediately thereafter, both Jacobs and O'Connor exited the vehicle and chased Cooper who had remained were he was standing, when struck by the vehicle.

23. Cooper, saw both Jacobs and O'Connor approaching him, and tried to flee by attempting to cross Broadway from the north side

to the south side.

24. Before Cooper was able to cross Broadway, O'Connor grabbed and pushed Cooper into the middle of the roadway.

25. Within seconds, Jacobs joined O'Connor in assaulting Cooper, and Jacobs, who was carrying a concealed a firearm, brushed up against Cooper, who felt the firearm, with the intent of putting Cooper in immediate fear of death or serious bodily injury. Jacobs concealed the fact that he is a law enforcement officer and did not display anything that would identify him as a law enforcement officer.

26. Cooper in fear of his life, in an attempt to distract Jacobs, took a defensive measure by flicking the sunglasses off of Jacobs and was thereby able to initially escape by running across Broadway onto the sidewalk, at which time Cooper's hat fell to the ground.

27. O'Connor and Jacobs, after picking up his sunglasses, continued to pursue Cooper.

28. Jacobs, while running on the sidewalk of Broadway, attempted to pick up Cooper's hat that was on the sidewalk and unable to maintain his balance, tumbled over and fell on his face. Despite tumbling on his head, Jacobs got back on his feet and ran in the same direction where Cooper ran to seek refuge.

29. Cooper initially escaped and called 911 and told the 911 operator that had just been assaulted by two men and that he needed

help. During the call, made at the intersection of Broadway and Marcy Avenue, both O'Connor and Jacobs, who were waiting for Cooper, assaulted and battered Cooper by beating him about his face and eye. O'Connor and Jacobs hearing and seeing Cooper on his phone speaking to the 911 operator, attempted to grab Cooper's phone and end the 911 call but Cooper was able to remain on the phone with the 911 operator when Jacobs and O'Connor fled from the scene.

30. Thereafter John Doe Police officer 1 and Schrell arrived at the intersection of Broadway and Marcy Avenue in an NYPD vehicle("RMP"). Said NYPD officers were informed by a bystander that Cooper had just beaten badly. Cooper approached the RMP, and was told by the NYPD officers to jump in the car. In the backseat of the RMP, Cooper told the officers what happened and John Doe Police officer told Cooper to "shut the fuck up."

31. The NYPD vehicle then turned left onto Havenmayer Street, where and when Cooper saw and identified O'Connor and Jacobs to John Doe Police officer 1 and Schrell. John Doe Police officer 1 and Schrell told Cooper to remain in the car while they approached O'Connor and Jacobs. At which time, Cooper observed Jacobs displaying a badge to John Doe Police officer 1 and Schrell and heard Jacobs say to them "I'm on the job."

32. Cooper upon hearing Jacobs, exited the police car and approached John Doe Police officer 1 and Schrell who directed Cooper to stay back and wait on the sidewalk.

33. While waiting, Cooper told John Doe Police Sergeant 2 as a result of his fear in learning that Jacobs was an NYPD officer, that he, Cooper, would prefer to just go home. However, John Doe Police Sergeant 2 told Cooper that he must come to the police station since an NYPD officer was involved in the incident. Cooper then told John Doe Police Sergeant 2 that before going to the precinct, he wanted to retrieve his hat that had fallen off because the hat had great sentimental value. John Doe Police Sergeant 2 told Cooper that he could not go look for the hat, and that he must go to the precinct, but assured him that NYPD officers would find it.

34. Cooper learned that shortly after the incident, Jacobs took possession of Cooper's hat and continues his unlawful possession of Cooper's hat.

35. Cooper, against his will, was ordered to return to the back of the RMP without any arguable probable cause or reasonable suspicion of any wrongdoing by Cooper. John Doe Police Sergeant 2 joined Cooper in the backseat of the RMP as it was being driven to the 90th precinct.

36. As a result of the Assault by O'Connor and Jacobs, Cooper's eye was injured and bruised and he requested medical attention. Schrell told Cooper that he was fine and Cooper was denied any medical treatment; and was forced to sit in the 90th precinct for approximately two hours while bleeding, in pain and

suffering mental and emotional distress.

37. Cooper, while in the 90th precinct, visibly injured and in need of medical treatment from the Assault inflicted on him by Jacobs and O'Connor, repeated that he needed medical attention, which was again ignored.

38. Thereafter Cooper told John Doe Police Sergeant 3 that he wishes to press criminal charges against Jacobs. John Doe Police Sergeant 3 asked Cooper "are you sure? " to which Cooper responded "yes, don't you think I should based on what happened? " John Doe Police Sergeant 3 told Cooper he would be right back, while Cooper was still in need of medical attention.

39. After waiting approximately three hours, John Doe Police Sergeant 3 informed Cooper that he was under arrest and he was placed in a holding cell. Cooper was arrested soley on Jacobs's false allegations and Jacobs's authority as a police officer Despite repeated requests, the police refused to allow Cooper to press charges against Jacobs.

40.  On March 21, 2016, John Doe Police Officer 4 issued a desk appearance ticket to Cooper requiring him to appear at Kings County Criminal Court on March 25, 2016 under docket number 2016KN023559. The documents filed with the Criminal Court under said docked number included a supporting Deposition(attached as Exhibit "A" and incorporated herein)containing false and perjurious allegations by Jacobs, including among others, that Cooper

-10-

purportedly punched Jacobs in the face with a closed fist which caused injuries to Jacobs face and broke the sunglasses that Jacobs was wearing.

41. The aforementioned sworn allegations were filed by Jacobs to deceive the Court and to conceal the above mentioned acts of brutality and abuse of authority, and to otherwise avoid punishment for said acts by the NYPD or other investigative bodies.

42. Despite receiving evidence that completely exonerated Cooper, the Kings County District Attorney continued the malicious prosecution of Cooper and continued to ignore the criminal acts committed by Jacobs.

43. The criminal case against Cooper was dismissed on the merits in Cooper's favor on June 20, 2016.

44. On or about March 2016, O'Connor was charged under case 2016KN017021 with assault, menacing and harassment that he committed against Cooper.

45. Despite Cooper's full cooperation with the District Attorney and without any input or notice to Cooper, the victim, O'Connor was allowed to negotiate a plea of disorderly conduct and sealing of the record.

46. However, the Court extended its Order of protection requiring O'Connor to stay away from Cooper for three years.

## FEDERAL CAUSES OF ACTION

### COUNT I
### 42 U.S.C. §1985 CONSPIRACY

47. Paragraphs "1." through "46." are repeated.

48. The Defendants employed by NYPD agreed expressly and/or tacitly to conceal the facts leading up to and including the actions of Jacobs in assaulting Cooper.

49. The goal of the defendants described in paragraph "48." was to avoid the arrest of Jacobs and or reduce civil and interdepartmental punishment of Jacobs.

50. To accomplish this goal, defendants carried out overt acts in furtherance of this goal as described herein and by: Concealing and ignoring critical facts establishing that Jacob's was the assailant and should have been arrested for his criminal acts; Ignoring the physical evidence of Cooper being beaten up; Arresting Cooper almost four hours after the incident and only when Cooper stated that he wanted to press charges against Jacobs; Submitting false reports regarding the foregoing events to avoid criminal and civil responsibility for the mistreatment, false arrest and injuries to Cooper; Engaging in a conspiracy with each other and reaching an agreement between themselves express and/or tacit, to achieve an unlawful end by inflicting an unconstitutional injury upon Cooper; by carrying out such overt acts in furtherance of that goal in causing damages to Cooper.

-12-

## COUNT II
## 42 U.S.C. §1983 FALSE ARREST

51. Paragraphs "1." through "50." are repeated.

52. Pursuant to the Fourth Amendment to the Federal Constitution, it is clearly established law that an arrest and/or imprisonment is unlawful when not supported by probable cause.

53. Defendants caused Cooper to be falsely arrested, detained and imprisoned without reasonable suspicion or probable cause, thereby depriving Cooper of his right to be free from unlawful seizure under the Fourth Amendment to the Constitution of the United States, in violation of 42 U.S.C. § 1983.

54. The Defendants, intentionally and without probable cause or lawful justification, acted in willful and/or reckless disregard of the constitutional right of Cooper to be free from false arrest and false imprisonment, and did together and/or in combination with one or more of the other individual Defendants deprive Cooper of such constitutional right by placing Plaintiff under arrest without probable cause to do so, take him to the 90th police precinct, where he was searched, fingerprinted, photographed, denied medical treatment, despite knowing and/or not reasonably believing in the existence of probable cause at the time they arrested Cooper.

55. Each of the Defendants, other then O'Connor, individually, and in concert with the others, acted under color of law in his/their official capacity, to deprive Cooper of his rights to

-13-

freedom from illegal searches and seizure of his person, papers, and effects and his rights to freedom from unlawful arrest, detention and imprisonment. All of the Defendants, while acting individually, jointly, and/or in conspiracy with each other, as well as under color of State law and within the scope of their employment, caused Cooper to be so arrested and imprisoned falsely and each was instrumental in the initiation and arrest of Cooper. Defendants acted with malice or reckless indifference to Cooper's constitutional rights.

56. The Defendants' conduct as aforesaid also deprived Cooper of his rights under the Fifth and Fourteenth Amendments to the Constitution of the United States to liberty without due process of law and to the equal protection of the laws, and the due course of justice was impeded, in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States, all and in violation of 42 U.S.C. § 1983.

57. Acting under the color of law, the Defendants' conduct as detailed above also deprived Cooper of his rights, privileges and immunities secured by the Fifth and Fourteenth Amendments to the Constitution of the United States, in violation of 42 U.S.C. § 1983.

58. Defendants further engaged in willful, wanton, malicious, and abusive conduct while falsely arresting and imprisoning Cooper under the color of law that deprived Cooper of constitutionally

-14-

protected rights under the Fourth and Fourteenth Amendments of the United States Constitution.

59. The arrest of Cooper without probable cause was designed to, and did, cause specific and serious bodily harm, pain and suffering to Cooper and deprived him of his right to be free from false arrest and false imprisonment, as guaranteed by the Fourth and Fourteenth Amendment to the United States Constitution, and was undertaken pursuant to the policies and practices of the NYPD in its 90th police precinct, in the manner described above.

60. As a direct and proximate result of the above-mentioned unconstitutional acts of the defendants, Cooper was deprived of his civil rights through false, arrest, false imprisonment, abusive conduct, humiliation, and mistreatment.

61. Defendants' deliberate actions and failure to act caused and contributed to Cooper's false arrest and false imprisonment violated Cooper's civil rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution, for which redress is available under 42 U.S.C. § 1983, for the deprivation of such rights under color of State law.

62. Cooper has suffered, and will continue to suffer, damages as a proximate result of the false arrest and imprisonment perpetrated upon him by Defendants including, a deprivation of rights and loss of freedom and reputation.

63. As a direct and proximate result of the Defendants'

-15-

unlawful actions, Cooper has suffered, and will continue to suffer, damages including physical and emotional injury and psychological harm such as mental anguish, distress, humiliation and embarrassment affecting his psychological well-being, some or all of which may be permanent, as well as financial harm including loss-profit and business opportunities, expending attorneys' fees associated with his defense in the criminal case and medical bills for the treatment of his injuries.

### COUNT III
### 42 U.S.C. §1983 MALICIOUS PROSECUTION

64. Paragraphs "1." through "63." are repeated.

65. Defendants, maliciously and without regard to Cooper's liberty and rights, violated and/or conspired to violate Cooper's right to be free from malicious prosecution under the Fourth Amendment to the United States Constitution, made actionable through 42 U.S.C. Section 1983.

66. Defendants initiated a malicious prosecutions against Cooper by falsely charging him with misdemeanor counts, forwarding false information to prosecutors and filing perjurious documents in support of the prosecution.

67. Defendants acted without probable cause to believe that Cooper had committed the crimes for which he was accused in the institution of the prosecution or during its continuation. The charges initiated against Cooper were without legal or factual

justification. Defendants initiated and perpetuated the charges against Cooper until their dismissal with malice, with absolute disregard for his rights and liberties and with the deliberate intent to deprive Cooper of his constitutional rights.

68. At no point during the duration of the proceedings against Cooper, did Defendants possess any evidence against Cooper establishing probable cause and/or a legal basis that Cooper was engaged in the criminal acts complained and in fact had evidence that completely exonerated him.  Nevertheless, he was prosecuted for crimes he clearly did not commit.

69. The criminal case against Cooper was dismissed by the Criminal Court and thereby terminating the case in Cooper's favor.

70. The misconduct described in this Count was undertaken pursuant to the policies and practices of the NYPD in the 90th Police Precinct in the manner described above.

71. As a direct and proximate result of Defendants' unlawful actions, Cooper has suffered, and will continue to suffer, damages including physical and emotional injury, mental anguish and pain in connection with the deprivation of his constitutional rights in that, among other things, endured almost three months of legal proceedings.

## COUNT IV
### SUPERVISORY LIABILITY UNDER 42 U.S.C. § 1983

72. Paragraphs "1." through "71." are repeated.

73.    The supervisory defendants personally caused Cooper's constitutional injury by being deliberately or consciously indifferent to Cooper's rights in failing to properly supervise and train their subordinate employees.

74.    As a result of the foregoing, Cooper is entitled to compensatory damages and is further entitled to punitive damages against the individual defendants plus reasonable attorneys' fees.

## COUNT V
## MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983

75. Paragraphs "1." through "74." are repeated.

76. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

77. The aforementioned customs, policies, usages, practices, procedures and rules of the NYPD included, but were not limited to, using excessive force against individuals and then covering up said acts by manufacturing evidence and otherwise engaging in falsification.  Morever, NYPD engaged in a policy, custom or practice of inadequate screening, hiring, retaining, training, and supervising its employees that was the driving force behind the violation of Cooper's rights as described herein. As a direct result of the failure of NYPD to properly recruit, screen, train,

-18-

discipline, and supervise its officers, including the individual defendants, NYC has tacitly authorized, ratified, and has been deliberately indifferent to, the acts and conduct complained of herein.

78.  The foregoing customs, policies, usages, practices, procedures and rules of NYC and the NYPD constituted deliberate indifference to the safety, well-being and constitutional rights of Cooper.

79.  The foregoing customs, policies, usages, practices, procedures and rules of NYC and the NYPD were the direct and proximate cause of the constitutional violations suffered by Cooper as alleged herein.

80.  The foregoing customs, policies, usages, practices, procedures and rules of NYC and the NYPD were the moving force behind the Constitutional violations suffered by Cooper as alleged herein.

### COUNT VI
### ASSAULT UNDER PENDENT JURISDICTION AGAINST O'CONNOR

81. Paragraphs "1." through "80." are repeated.

82. On March 20, 2016, Cooper was lawfully walking across the sidewalk on Broadway, in Kings County when O'Connor, acting together with Jacobs, without any just cause or provocation, maliciously assaulted, punched, and beat Cooper about his head with their hands, and fists causing the injuries described herein.

83. By reason of and in consequence of this assault, Cooper sustained serious bodily injuries with accompanying pain and was rendered sick, sore, and bruised and sustained numerous physical injuries, some of which may be permanent, in addition to permanent mental and emotional distress.

84. On or about March 2016, O'Connor was prosecuted under case 2016KN017021 with assault, menacing and harassment in Kings County Criminal Court that he committed against Cooper. Thereafter O'Connor was allowed to negotiate a plea of disorderly conduct and sealing of the Court record with an Order of Protection directing O'Connor to stay away from Cooper for three years with respect to the event and occurrence which gives rise to this action, and consequently this action is being commenced within the applicable statutory time period.

85. By reason of the foregoing, Cooper has been damaged.

86. As a result of the conduct described above, Cooper is entitled to compensatory damages and is further entitled to punitive damages against O'Connor plus reasonable attorneys' fees, costs and disbursements of this action.

## COUNT VII
### ASSAULT UNDER PENDENT JURISDICTION

87. Paragraphs "1." through "86." are repeated

88. By reason of and in consequence of the Assault by Jacobs, Cooper sustained serious bodily injuries with accompanying pain and

-20-

was rendered sick, sore, and bruised and sustained numerous physical injuries, some of which may be permanent, in addition to permanent mental and emotional distress.

89. NYC is responsible for the unjustified and vicious physical force used by Jacobs because it occurred while he was acting in the scope of his employment.

90. As a result of the foregoing, Cooper is entitled to damages as described herein.

### COUNT VIII
### PRIMA FACIE TORT UNDER PENDENT JURISDICTION

91. Paragraphs "1." through "90." are repeated.

92. By their actions, as set forth above, Defendants inflicted harm upon Cooper without excuse or justification.

93. As a result of the foregoing, Cooper is entitled to damages as described herein.

### COUNT IX
### LIBEL AND SLANDER UNDER PENDENT JURISDICTION

94. Paragraphs "1." through "93." are repeated.

95. By their actions set forth above, knowing the charges against Cooper were false, NYPD Sergeant Ryan disseminated and published a completely false statement to the New York Post stating that Jacobs was punched in the face by Cooper causing bruising and swelling to Jacobs, which upon its face was per say false and defamatory.

96. As a result of the foregoing, Cooper is entitled to

damages as described herein.

## COUNT X
### FALSE ARREST UNDER PENDENT JURISDICTION

97.   Paragraphs "1." through "96." are repeated.

98.   Cooper was wrongfully, unlawfully and unjustifiably charged and arrested without a warrant and without any probable cause.

99.   NYC is responsible because at all relevant times, Defendants, except O'Connor, were employees of the NYPD and NYC, and were acting within the scope of their employment, in furtherance of the business of NYPD and NYC. The individual defendants were acting pursuant to the authority conferred upon them by NYPD and NYC.

100.   As a result of the foregoing, Cooper is entitled to damages as described herein.

## COUNT XI
### MALICIOUS PROSECUTION UNDER PENDENT JURISDICTION

101.   Paragraphs "1." through "100." are repeated.

102.   Criminal proceedings were commenced and continued against Cooper which falsely and maliciously charged Cooper with the commission of criminal acts.

103.   Defendants, except O'Connor, with the consent and participation of one another, continued said proceeding despite the fact they knew Cooper had not committed any crimes, and that there

was no need for arrest and imprisonment of Cooper, as is described below.

104. Defendants were directly and actively involved in the initiation of criminal proceedings against Cooper.

105. Defendants lacked probable cause to initiate criminal proceedings against Cooper.

106. Defendants were motivated by actual malice in initiating criminal proceedings against Cooper.

107. Defendants misrepresented and falsified evidence before the District Attorney.

108. Defendants did not make a complete and full statement of facts to the District Attorney.

109. Defendants ignored exculpatory evidence in the continuation of criminal proceedings against Cooper.

110. Defendants were directly and actively involved in the continuation of criminal proceedings against Cooper.

111. The Criminal case against Cooper was dismissed on the merits in Cooper's favor on June 20, 2016.

112. NYC, as an employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of respondeat superior.

113. As a direct and proximate result of the misconduct and abuse of authority stated above, Cooper sustained and continues to sustain injuries and damages as alleged herein.

114. As a result of the foregoing, Cooper is entitled to damages as described herein.

## COUNT XII
### LARCENY UNDER PENDENT JURISDICTION

115. Paragraphs "1." through "114." are repeated.

116. Jacobs unlawful possession and retention of Cooper's hat constitutes larceny.

**WHEREFORE,** Plaintiff requests judgment against all of the defendants:

a) For compensatory damages in an amount to be determined at trial; and

b) For punitive damages in an amount to be determined at trial; and

c) For attorney Fees; and

For the allowable Disbursements and costs of this actions; and

Such other and further relief as may be just and proper.

BARRY R. FEERST & ASSOCIATES

BY:_____
YITZCHOK KOTKES (YK0338)
Attorney(s) for Plaintiff
Steven Cooper
194 South 8th Street
Brooklyn, New York 11211
(718)384-9111

Dated: Brooklyn, New York
       March 17, 2017