UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

STEVEN COOPER,

                Plaintiff,

       -against-

THE CITY OF NEW YORK; POLICE LIEUTENANT
THOMAS JACOBS; POLICE OFFICER JESSICA
SCHRELL SHIELD NO. 26482; POLICE DEPARTMENT
SERGEANT BRENDAN RYAN; NEW YORK POLICE
OFFICERS JOHN DOES 1-10 the identity of whom is
presently unknown, in their individual and official capacities
as New York City Police Officers; and DANIEL O' CONNOR,

                Defendants.

-----------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**17-CV-1517 (NGG) (RLM)**

NICHOLAS G. GARAUFIS, United States District Judge.

    Plaintiff Steven Cooper brings this action pursuant to 42 U.S.C. § 1983 ("§ 1983") and certain state tort laws against Defendants Police Officer Jessica Schrell, Police Sergeant Brendan Ryan, Police Lieutenant Thomas Jacobs, unknown John Doe Police Officers 1-10, and Daniel O'Connor (collectively the "Individual Defendants"), and the City of New York ("the City"). (Am. Compl. ("FAC") (Dkt. 36).)

    Before the court are separate motions to dismiss Plaintiff's FAC by the City of New York, Ryan, and Schrell (the "City Defendants") (See City of New York Notice of Mot. to Dismiss ("City Mot.") (Dkt. 56)); Jacobs (Jacobs Notice of Mot. to Dismiss ("Jacobs Mot.") (Dkt. 54)); and O'Connor (O'Connor Motion To Dismiss ("O Connor Mot.") (Dkt. 55). For the reasons stated below, the City of New York's motion is GRANTED, Jacobs's motion is GRANTED, and O'Connor's motion is GRANTED.

1

## I. BACKGROUND

### A. Facts

The court takes the following statement of facts largely from Plaintiff's FAC, the well-pleaded allegations of which the court generally accepts as true for purposes of the motions to dismiss. See N.Y. Pet Welfare Ass'n v. City of New York, 850 F.3d 79, 86 (2d Cir. 2017).

Plaintiff alleges that on March 20, 2016, he was hit by a vehicle driven by Jacobs as he was crossing the street in Brooklyn, New York. (FAC ¶¶ 20-21.) Jacobs is a New York Police Department ("NYPD") officer, though at the time he did not "display anything that would identify him as a law enforcement officer." (FAC ¶ 25.) O'Connor, a private citizen, and at least three other individuals—all of whom are NYPD officers—were passengers in Jacobs's vehicle. (Id. ¶ 21.) After Plaintiff was struck by the vehicle, Jacobs and O'Connor exited the vehicle and proceeded to chased Plaintiff as he attempted to flee the location. (Id. ¶ 22.) O'Connor struck Plaintiff on the head, choked him, and grabbed and pushed him into the middle of the road. (Id. ¶ 24.) Jacobs joined O'Connor in "assaulting and battering" Plaintiff. (Id. ¶ 25.) Plaintiff alleges that he felt a firearm on Jacobs's person but "Jacobs concealed the fact that he [was] a law enforcement officer and did not display anything that would identify him as a law enforcement officer." (Id.) Plaintiff feared for his life and "in an attempt to distract Jacobs, took a defensive measure by flicking the sunglasses off of Jacobs," and ran away. (Id. ¶ 26.) O'Connor and Jacobs chased Plaintiff and, at one point, Jacobs lost his balance and "tumbled over and fell on the sidewalk face-first." (Id. ¶¶ 27-28.)

Plaintiff alleges that he "initially escaped" and called 911 for help. (Id. ¶ 29.) Plaintiff told the 911 operator that he had "just been assaulted by two men and that he needed help." (Id.) O'Connor and Jacobs caught up to Plaintiff, at which point they attempted to end the 911 call

and physically battered Jacobs; however, they were unsuccessful in ending the call and thereafter fled the scene. (Id.)

John Doe Police Officer #1 and Defendant Schrell arrived shortly thereafter. (Id. ¶ 30.) Plaintiff avers that these Officers "were informed by a bystander, and a witness to the events described above, that [Plaintiff] had just [been] beaten badly by Jacobs and O'Connor." (Id. ¶ 34) Plaintiff then "observed Jacobs displaying a badge to John Doe Police [O]fficer 1 and Schrell and the other Uniformed NYPD officers and heard Jacobs say to them 'I'm on the job.'" (Id. ¶ 36.)

Upon learning that Jacobs was an NYPD Officer, Plaintiff told John Doe Police Sergeant 2 that he wanted to go home and tend to his visible injuries, which he claims, were so severe that he could not see out of his eye. (Id. ¶ 38.) The NYPD officers at the scene told Plaintiff that he was not allowed to leave "because a police officer was involved" and took him to the NYPD's 90th precinct. (Id. ¶¶ 39- 46.) Plaintiff wanted to retrieve his hat, which he had lost as he was running away from Jacobs and O'Connor, but the officers told him that he must go to the precinct and NYPD officers would locate the hat. (Id. ¶ 43.) Plaintiff claims that "Jacobs took possession of Cooper's hat and continues his unlawful possession of Cooper's hat." (Id. ¶ 44.)

Plaintiff sat at the 90th precinct for several hours while his right eye was bleeding. (Id. ¶ 46.) He requested medical attention, which he never received. (Id. ¶¶ 46-49.) Plaintiff avers that Jacobs and the other John Doe police officers, instead of helping Plaintiff with his "visible injuries," "conspired to come up with a story to arrest" Plaintiff. (Id. ¶ 50.) "After waiting approximately three hours, John Doe Police Sergeant 3 informed [Plaintiff] that he was under arrest and he was placed in a holding cell." (Id. ¶ 52.) "At approximately 10:00pm on March 20, 2016, almost 6 hours after being beaten, [Plaintiff] was formally arrested [by Schrell] and

finger[pr]inted." (Id. ¶¶ 53-54.) On March 21, 2016, Plaintiff was released and given a desk appearance ticket charging him with assault in the third degree and ordering him to appear at court on April 25, 2016. (Id. ¶ 55.)

On March 23, 2016, the New York Post wrote an article about the incident, in which Ryan published an allegedly false statement that Jacobs was punched in the face by Plaintiff causing bruising and swelling to Jacobs, which Plaintiff claims was per se "false and defamatory." (Id. ¶ 56.)

On April 25, 2016, Cooper was arraigned under docket number 2016KN023559. He was charged with "[a]ssault in the third degree, [c]riminal [m]ischief in the fourth degree, [a]ttempted assault in the third degree, menacing in the third degree and [h]arassment in the second degree." (Id. ¶ 57.) Jacobs filed a supporting deposition with the criminal court that contained allegedly "false and perjurious allegations . . . including that [Plaintiff] had purportedly punched Jacobs in the face with a closed fist which caused injuries to Jacobs face and broke the sunglasses that Jacobs was wearing." (Id. ¶ 58.)

Plaintiff alleges that "[d]espite receiving evidence that completely exonerated [Plaintiff], the Kings County District Attorney continued the malicious prosecution of [Plaintiff] and continued to ignore the criminal acts committed by Jacobs and the other John Doe Police officers that were driving in the car that struck [Plaintiff]." (Id. ¶ 60.) The criminal case against Plaintiff was ultimately "dismissed on the merits" on June 20, 2016. (Id. ¶ 61.)

In March 2016, O'Connor was charged with assault, menacing, and harassment as a result of the physical altercation with Plaintiff. (Id. ¶ 62.) The court issued an order of protection, ordering O'Connor to stay away from Plaintiff. (Id.) On November 21, 2016,

"O'Connor was allowed to negotiate a plea of disorderly conduct and sealing of the record." (Id. ¶ 63.) The order of protection remains in effect until November 20, 2018. (Id. ¶ 64.)

Plaintiff alleges that he has been "permanently physical[ly] injured" and suffers from emotional trauma as a result of the alleged battery committed by Jacobs and O'Connor. (Id. ¶¶ 65, 68.) Specifically, Plaintiff's right eye was "badly damaged," "requiring a procedure of cataract extraction with int[r]aocular lens implantation." (Id. ¶¶ 65-67.)

## B. Procedural History

Plaintiff filed his original complaint with this court on March 17, 2017. (Compl. (Dkt. 1).) On May 30, 2017, Plaintiff sought leave of the court to amend his complaint. (Plaintiff May 30, 2017, Ltr. Request for Leave to Amend Complaint, (Dkt. 26).) The court informed Plaintiff that he was permitted to amend the Complaint as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1). (May 31, 2017, Order.) Plaintiff filed his amended complaint (the "FAC") on June 30, 2017. (FAC.) On September 6, 2017, the court granted all defendants leave following a pre-motion conference to dismiss Plaintiff's FAC. (Sept. 6, 2017, Min. Entry.)

Jacobs, O'Connor, and the City Defendants filed separate, fully briefed motions to dismiss. (See Jacobs Mot.; O'Connor Mot; City Mot.) The City Defendants move to dismiss all claims against them. (City Mem. in Supp. of Mot. ("City of New York Mem.") (Dkt. 57).) Jacobs moves to dismiss all federal claims, as well as Plaintiff's state claim of libel. (Jacobs Mem. in Supp. of Mot ("Jacobs Mem.") (Dkt. 54).) O'Connor moves to dismiss the federal claim brought against him and Plaintiff's prima facie tort and larceny claims. (O'Connor Mem. in Supp. of Mot. ("O'Connor Mem.") (Dkt. 55).)

## II.     LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal adequacy of the plaintiff's complaint. Patane v. Clark, 508 F.3d 106, 112-13 (2d Cir. 2007). To survive a Rule 12(b)(6) motion, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

When considering a motion to dismiss for failure to state a claim, the court must accept as true all allegations of fact in the complaint and draw all reasonable inferences in favor of the plaintiff. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). "In determining the adequacy of the complaint, the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005).

## III.     DISCUSSION

### A.     Consideration of Extrinsic Documents

When considering a Rule 12(b)(6) motion to dismiss, the court may consider only limited materials, including "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). The court may also consider documents that are "integral" to the complaint, in that the complaint "relies heavily upon [their] terms and effect," so long as these documents are undisputedly authentic and accurate. Id. (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)). Additionally, the court may consider "public

records of which the court could take judicial notice." Mangiafico, 471 F.3d at 398; see Smart v. Goord, 441 F. Supp. 2d 631, 637 (S.D.N.Y. 2006) ("When ruling on a motion to dismiss, the Court may take judicial notice of records and reports of administrative bodies, items in the record of the case, matters of general public record, and copies of documents attached to the complaint."). "When matters outside the pleadings are presented in response to a 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." Friedl v. City of New York, 210 F.3d 79, 83 (2d Cir. 2000) (alteration adopted) (quotation marks omitted).

If, on a motion to dismiss, the court must "rely on the extrinsic materials, the proper course is to convert the motion to a motion for summary judgment . . . , after providing notice to the parties and an opportunity to be heard." Nicosia v. Amazon.com, Inc., 834 F.3d 220, 231 (2d Cir. 2016).

Plaintiff argues that the court "must ignore" the exhibits attached to the City's motion to dismiss. (Pl. Opp'n of Motion to Dismiss at 5 ("Pl. Opp'n") (Dkt. 59).) In particular, Plaintiff objects to the City Defendant's use of the NYPD Complaint Report associated with Plaintiff's arrest (the "Complaint Report") (Complaint Report (Dkt. 58-2)); the NYPD Arrest Report associated with Plaintiff's arrest (the "Arrest Report") (Arrest Report (Dkt. 58-3)); excerpts from Plaintiff's 50-h hearing testimony (the "50-h testimony") (50-h testimony (Dkt. 58-4)); the Kings County Criminal Court Complaint (the "Criminal Court Complaint") (Criminal Court Complaint (Dkt. 58-5)); and Plaintiff's Notice of Claim (the "Notice of Claim") (Notice of Claim (Dkt. 58-6)). Plaintiff argues that these documents are not incorporated by reference in the FAC, nor are they documents of which the court may take judicial notice. (Pl. Opp'n at 5-6.)

First, the court takes judicial notice of the Arrest Report, Complaint Report, and the Criminal Court Complaint. It is well established that these documents are matters of public record and, as such, the court may consider them on a motion to dismiss. See, e.g., Liang v. City of New York, No. 10-CV-3089 (ENV), 2013 WL 5366394, at *5 (E.D.N.Y. Sept. 24, 2013); Wims v. N.Y.C. Police Dep't, No. 10-CV-6128 (PKC), 2011 WL 2946369, at *2 (S.D.N.Y. July 20, 2011) ("[A] district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including arrest reports, criminal complaints, indictments and criminal disposition data." (citation and internal quotation marks omitted)); Obilo v. City Univ. of the City of N.Y., No. 01-CV-5118, 2003 WL 1809471, at *4 (E.D.N.Y. Apr. 7, 2003) (incorporating a police incident report and criminal complaint where the plaintiff's false arrest and malicious prosecution claims asserted that law enforcement improperly relied on "conspiratorial" allegations, which the court found was "an implicit reference" to allegations in the police report and criminal complaint); see also Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004) ("[Courts] may also look to public records . . . in deciding a motion to dismiss."). Plaintiff himself makes numerous direct references to his Criminal Court Complaint throughout his Amended Complaint. (See FAC ¶¶ 57-61.) Moreover, Plaintiff attaches to the FAC the supporting deposition of Jacobs, which cannot be understood without considering the Criminal Court Complaint. (Jacobs Dep., (Dkt. 36-2.)). See also Li v. City of New York, 246 F. Supp. 3d 578, 595 (E.D.N.Y. 2017) ("By repeatedly referring to the criminal complaint, the Amended Complaint incorporates it by reference.")

The court also considers the Notice of Claim, as it is directly referenced in the FAC. (FAC ¶ 6.) See Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir.

1995) (per curiam) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (alteration in original) (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991)); Shahzad v. Cty. of Nassau, No. 13-CV-2268 (SJF), 2013 WL 6061650, at *6 (E.D.N.Y. Nov. 14, 2013) ("The Notice of Claim is referenced in the Complaint . . . , and the court may take judicial notice of it.").

The court will therefore consider the Complaint Report, the Arrest Report, the Criminal Court Complaint, and the Notice of Claim. In considering these records, the court considers them to establish "their existence and legal effect" not for the truth of the matters asserted. Twine v. Four Unknown N.Y. Police Officers, No. 10-CV-6622 (DAB) (JLC), 2012 WL 6184014, at *7 (S.D.N.Y. Dec.12, 2012), report and rec. adopted, 2013 WL 314447 (Jan. 25, 2013); see also Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007).

By contrast, the court declines to consider the transcript of Plaintiff's 50-h hearing testimony on the instant motion to dismiss. Unlike arrest warrants and other police documents, 50-h hearings are not matters of public record. See Bissinger v. City of New York, No. 06-CV-2325 (WHP), 2007 WL 2826756, at *2 n.1 (S.D.N.Y. Sept. 24, 2007). The court may thus only consider the transcript if the complaint "relies heavily upon its terms and effect." See Difolco, 622 F.3d at 111. Courts routinely consider 50-h transcripts at the motion to dismiss stage where "both parties have relied upon these extrinsic materials in their submissions." See, e.g., Harley v. City of New York, No. 14-CV-5452 (PKC), 2016 WL 552477, at *3 (E.D.N.Y. Feb. 10, 2016); Dellate v. Great Neck Union Free Sch. Dist., No. 09-CV-2567 (AKT), 2010 WL 3924863, at *4 (E.D.N.Y. Sept. 30, 2010), aff'd, 448 F. App'x 164 (2d Cir. 2012). Here, however, the text of Plaintiff's complaint contains no mention of the 50-h transcript and there is

no reason to believe that Plaintiff relied on the transcript in filing the complaint. See Weaver v. City of New York, No. 13-CV-20 (CBA), 2014 WL 950041, at *4 (E.D.N.Y. Mar. 11, 2014); see also id. at *4 (collecting cases). The court will therefore not consider Plaintiff's 50-h testimony in deciding the motions to dismiss. See Friedl, 210 F.3d at 83.

### B. As to all Claims Asserted Against Sergeant Brendan Ryan

Before addressing Plaintiff's claims against all defendants, the court will begin by addressing the federal claims asserted against Ryan.

To sustain a § 1983 claim against a person in his or her individual capacity, a plaintiff must allege facts showing the individual's personal involvement in causing the harm alleged. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). The City Defendants contend that Plaintiff has failed to sufficiently plead facts that suggest Ryan was personally involved in any of the alleged constitutional violations. (City of New York Mem. at 12.) Plaintiff's opposition fails to address this argument at all. (See Pl. Opp'n.)

The only allegation Plaintiff makes as to Ryan in the FAC is in connection with the New York Post article. Plaintiff alleges that Ryan "disseminated and published a false statement to the New York Post stating that Jacobs was punched in the face by Cooper causing bruising and swelling to Jacobs." (FAC ¶ 56.) Plaintiff avers that Ryan's act of publishing a statement with the New York Post was in "furtherance of Defendants [c]onspiracy to deprive Cooper of his [c]onstitutional rights." (Id.) The court holds that this one allegation is insufficient to state a conspiracy claim against Ryan in his personal capacity. Ciambriello v. County of Nassau, 292 F.3d 307, 325 (2d Cir. 2002) (citation omitted) ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are

insufficient, unless amplified by specific instances of misconduct."). Plaintiff fails to allege any facts that suggest that Ryan took part in a conspiracy to deprive Plaintiff of his constitutional rights.

Because the sole allegation against Ryan is insufficient to suggest Ryan was involved in any of the alleged federal constitutional violations, the court dismisses Plaintiff's § 1983 conspiracy claim and all other federal claims asserted against Ryan in his personal capacity.

## C. Plaintiff's Excessive Force Claim

Plaintiff asserts an excessive force claim under § 1983 against all defendants, except O'Connor. (Id.) The only facts alleged that apply to Plaintiff's excessive force claim stem from Plaintiff's physical altercation with Jacobs and O'Connor. Therefore, the court dismisses Plaintiff's excessive force as to all Individual Defendants except for Jacobs, and dismisses the claim as to Jacobs for the reasons provided below.[1]

In order to state a claim under § 1983, a plaintiff must allege that he has been (1) deprived of a right, privilege or immunity secured by the Constitution or laws of the United States, and that (2) this deprivation was done under color of law. § 1983; accord Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994) (citing Parratt v. Taylor, 451 U.S. 527, 535 (1981)). It is well established that the "under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) (quoting Blum v. Yaretsky, 457 U.S. 991, 1002 (1982)). The Supreme Court has held that an individual acts under the color of law when he or she exercises

---

[1] Failure to allege facts concerning the personal involvement of any defendant is fatal to a plaintiff's claims under § 1983. See Costello v. City of Burlington, 632 F.3d 41, 48-49 (2d Cir. 2011) (citing Wright, 21 F.3d at 501.) Here, although the FAC states that "as a result of defendants conduct described above, Cooper was subjected to excessive force and sustained serious physical injuries and emotional distress" (FAC ¶ 78), it does not include any factual allegations contending that other individuals were involved in the physical altercation.

power "made possible only because [he or she] is clothed with the authority of state law." United States v. Classic, 313 U.S. 299, 326 (1941); see also United States v. Walsh, 194 F.3d 37, 50 (2d Cir. 1999) ("The Supreme Court has broadly interpreted the color of law requirement, concluding that misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken under color of state law." (alteration adopted) (citation and internal quotation marks omitted)).

Here, Plaintiff alleges that "the level of force employed by defendant Jacobs was excessive, objectively unreasonable and otherwise in violation of Cooper's constitutional rights." (FAC ¶ 77.) Jacobs moves to dismiss Plaintiff's excessive force claim by contending that Plaintiff failed to plead facts that could plausibly allege Jacobs acted under color of state law at the time of the physical altercation. (Jacobs Mem. at 5-9.) The court agrees.

In the context of off-duty police officers, "[c]ourts have had frequent occasion to interpret the term 'color of law' for the purposes of § 1983 actions, and it is by now axiomatic that 'under "color" of law means under "pretense" of law' and that 'acts of officers in the ambit of their personal pursuits are plainly excluded.'" Pitchell v. Callan, 13 F.3d 545, 547-48 (2d Cir. 1994) (quoting Screws v. United States, 325 U.S. 91, 111 (1945)). "[T]here is no bright line test for distinguishing 'personal pursuits' from activities taken under color of law." Id. at 548. The relevant question is not whether the officer "was on or off duty when the challenged incident occurred," but whether the officer "albeit off-duty, nonetheless invokes the real or apparent power of the police department" or "perform[s] duties prescribed generally for police officers." Id.; see also Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003) ("We have no doubt that when an officer identifies himself as a police officer and uses his service pistol, he acts under color of law."). In analyzing whether an off-duty police officer acted under the color of

law, courts consider whether the officer: (1) was off-duty; (2) identified himself as an officer of the law; (3) was in uniform; (4) was authorized to make an arrest at the time; (5) was carrying handcuffs; (6) was carrying any weapons; (7) flashed a police badge; and (8) placed the plaintiff under arrest or otherwise detained him. Cotz v. Mastroeni, 476 F. Supp. 2d 332, 372 (S.D.N.Y. 2007).

Here, while Plaintiff alleges that Jacobs was "acting under color of state law" and "in his capacity as a Police Officer," Plaintiff (or the FAC) fails to set forth any facts that render this assertion as plausible. (FAC ¶¶ 72-74.) While Plaintiff does allege that he felt Jacobs holding a firearm during the altercation, he does not allege any facts to suggest that this made Plaintiff believe Jacobs was officer. (Id. ¶ 25.) Indeed, the mere act of possessing a firearm does not render an off-duty police officer's actions as having occurred "under color of law." See, e.g, Pitchell, 13 F.3d at 548; Bonsignore v. City of New York, 683 F.2d 635, 639 (2d Cir. 1982).

In fact, Plaintiff alleges that "Jacobs concealed the fact that he [was] a law enforcement officer and did not display anything that could identify him as a law enforcement officer." (FAC ¶ 25.) Plaintiff further states that he was not aware that Jacobs was a police officer until he witnessed Jacobs display a badge and heard him say to the responding officer, "I'm on the job." (Id. ¶¶ 36-38.) At no point during the altercation, therefore, does Plaintiff allege that Jacobs (1) was on-duty at the time of the altercation; (2) identified himself as an officer of the law; (3) wore a uniform or carried handcuffs; (4) revealed a police badge; or (5) placed plaintiff under arrest or otherwise detained him. See Cotz, 476 F. Supp. at 372.

In response to Jacobs's argument that Plaintiff failed to allege any facts that Jacobs was acting under color of state during the physical altercation, Plaintiff wholesale lifts the text of judicial opinions that cite relevant standards, but Plaintiff fails to engage in any analysis

whatsoever as to the facts at hand. (Pl. Opp'n at 18-22.) In fact, in McNamara v. City of New York, No. 06-CV-5585 (LTS), 2009 WL 735135, at *3 (S.D.N.Y. Mar. 20, 2009), a case which Plaintiff copies entire sections from in his opposition papers, the court found that: "[N]o rational fact finder could determine that [Defendant] was acting under color of state law prior to the time he displayed his badge and gun and identified himself as a police officer. Thus, there is no predicate for liability under section 1983 or section 1988 for the physical altercation that occurred before [Defendant] identified himself as a police officer." (Pl. Opp'n at 21.) Similarly, Plaintiff does not allege to have been informed that Jacobs was a police officer until after the physical altercation, when he heard Jacobs tell the on-duty officers, "I'm on the job." (FAC ¶ 36.)

It is simply not enough for Plaintiff to allege that Jacobs was "at all times relevant . . . acting under color of State law." (Id. ¶ 14.) As the court in Stoeckley v. City of New York, 700 F. Supp. 2d 489 (S.D.N.Y. 2010) aptly stated, "these are assertions of legal conclusions rather than of fact . . . [and the court is] not obliged to accept them as true for purposes of the motion." Id. at 499. In Stoeckley, the court found that the defendant was not acting under color of state law because there was "no allegation that [the defendant] was in uniform, that he was on duty, or that he exhibited a badge or identified himself as a police officer during the entire course of the incident," and plaintiffs first learned that the defendant was a police officer "after the incident had concluded and the officers who responded to the 911 call came out of the grocery store into which [the defendant] had gone and said to the plaintiffs, 'Don't worry, he's a cop.'" Id. at 493. The same analysis applies here.

The court finds that Plaintiff has failed to allege that Jacobs was acting under color of state law for purposes of Plaintiff's excessive force claim. There is thus no predicate for liability

under § 1983 for the physical altercation that occurred, and Plaintiff's excessive force claim is dismissed against all Individual Defendants.

### D. Plaintiff's False Arrest Claim

In analyzing a claim for false arrest under § 1983, "federal courts look to the law of the state in which the arrest occurred." Hoyos v. City of New York, 999 F. Supp. 2d 375, 385 (E.D.N.Y. 2013). To prevail on a claim for false arrest in New York, a plaintiff must plead that "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Singer v. Fulton Cty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995) (alteration in original) (quoting Broughton v. State, 335 N.E.2d 310, 314 (N.Y. 1975)). "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (citation and internal quotation marks omitted). Probable cause to arrest exists where an officer has "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000) (quoting Singer, 63 F.3d at 119). "The inquiry is limited to 'whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest.'" Jaegly v. Couch, 439 F.3d 149, 153 (2d Cir. 2006) (Sotomayor, J.)).

The court finds that there was probable cause for Plaintiff's arrest. Accordingly, the court dismisses Plaintiff's § 1983 false arrest claim against all Individual Defendants for the reasons provided below.

When information is received from a putative victim or an eyewitness, probable cause exists unless the circumstances raise doubt as to the person's veracity. Singer, 63 F.3d at 119.

"The veracity of citizen complaints who are the victims of the very crime they report to the police is assumed." Miloslavsky v. AES Eng'g Soc'y Inc., 808 F. Supp. 351, 355 (S.D.N.Y. 1992), aff'd, 993 F.2d 1534 (2d Cir. 1993).

In his complaint, Plaintiff alleges that he witnessed Jacobs, O'Connor and the other John Doe defendants "talking to the other officers from the other two [police] vehicles" prior to his arrest. (FAC ¶ 35.) Plaintiff contends that he was arrested because of "Jacob[s]'s false allegations [and] the other John Doe Police officers['] statements and or omissions." (FAC ¶ 52.)[2] Merely stating in a conclusory fashion that Jacobs made "false allegations" is not enough to plausibly allege that Schrell, the arresting officer according to the FAC, had any reason to doubt the veracity of Jacobs' statements. In Lowery v. City of New York, No. 10-CV-7284 (KBF), 2014 WL 2567104 (S.D.N.Y. June 6, 2014) the plaintiff similarly alleged, "that her arrest was without legal justification and/or probable cause, that her indictment was the product of false allegations, and that the investigation into her conduct was otherwise insufficient and 'tainted by official misconduct.'" Id. at *4 (internal quotation marks and citation omitted). There, the court found that, "[t]hese legal conclusions and bare references to the elements of a claim, absent any specific factual allegations, cannot survive dismissal pursuant to Rule 12(b) (6)." Id. Such conclusory allegations, without any facts suggesting that the arresting officer had any reason to doubt the veracity of the statements being made, is simply not enough to establish that Schrell lacked probable cause to arrest Plaintiff.

Moreover, although Plaintiff alleges that a "bystander, and a witness to the events, [informed the NYPD officers] that Cooper had just [been] beaten badly by Jacobs and O'Connor" (FAC ¶ 34), such conflicting reports at the time of arrest does not mean the arresting

---

[2] The Complaint Report notes that the officer on the scene was informed that Plaintiff had struck Jacobs with a closed first on the right side of his face, causing swelling and pain. (See Complaint Report at 2.)

officer lacked probable cause. See Wieder v. City of New York, 569 F. App'x 28, 29 (2d Cir. 2014); Curley v. Village of Suffern, 268 F.3d 65, 70 (2d Cir. 2001) ("Plaintiff argues . . . that the conflicting accounts . . . should have prompted a more thorough investigation. But, we have found probable cause where a police officer was presented with different stories from an alleged victim and the arrestee."); Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997) ("Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest."); see also Russell v. Eighty Fourth Precinct, No. 03-CV-6179 (JBW), 2004 WL 2504646, at *3 (E.D.N.Y. Nov. 8, 2004) ("An arresting officer is not a judge and cannot be expected to hold a trial at the scene of an apparent crime to determine credibility of witnesses.").[3]

In objecting to Defendants' motion to dismiss on this claim, Plaintiff relies principally on Rivera v. Balter Sales Co., No. 14-CV-1205 (LTS), 2014 WL 6784384 (S.D.N.Y. Dec. 1, 2014), a case that addresses when a private defendant may be held liable for making false statements that could lead to an arrest. (Pl. Opp'n at 16.) In contrast, here, Plaintiff was arrested by an officer based on the statements made by an individual involved in the physical altercation. These facts establish probable cause for Plaintiff's arrest for assault with intent to cause physical injury. (See Arrest Report); See also N.Y. Penal Law § 120.00(1). Since no federal civil rights claim for false arrest can exist where the arresting officer had probable cause, Singer, 63 F.3d at 118, Plaintiff's false arrest claim against all Individual Defendants is dismissed.

---

[3] The City Defendants further state that probable cause existed because Plaintiff was found to be in possession of marijuana. (City of New York Mot. at 8.) Defendants rely on Jaegly v. Couch, 439 F.3d 149 (2d Cir. 2006) wherein the Second Circuit concluded that: "a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and that it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest. Stated differently, when faced with a claim for false arrest, we focus on the validity of the arrest, and not on the validity of each charge." Id. at 154. Because Schrell had probable cause to arrest Plaintiff following the physical altercation, this court need not consider whether probable cause also existed in light of Plaintiff's possession of marijuana.

### E.  Plaintiff's Malicious Prosecution Claim

To state a claim for malicious prosecution under § 1983, a plaintiff must allege: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for Defendant's actions." Manganiello v. City of New York, 612 F.3d 149, 161 (2d Cir. 2010) (citation and quotation marks omitted). "Since the four elements are in the conjunctive, the failure to establish any one of the four is fatal to the plaintiff's claim." Allen v. Antal, 12-CV-8024 (NSR), 2014 WL 2526977, at *16 (S.D.N.Y. Mar. 13, 2014). A plaintiff bears a heavy burden with respect to each of the essential elements of a malicious prosecution claim. See Rothstein v. Carriere, 373 F.3d 275, 282 (2d Cir. 2004).

Like a claim for false arrest, "the existence of probable cause is a complete defense to a claim of malicious prosecution in New York." Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003). However, the existence of probable cause at the time of arrest "may not be dispositive of the issue as to the malicious prosecution claim, because . . . 'evidence could later surface which would eliminate that probable cause.'" Mitchell v. County of Nassau, 786 F. Supp. 2d 545, 562 (E.D.N.Y. 2011) (quoting Lowth v. Town of Cheektowaga, 82 F.3d 563, 571 (2d Cir. 1996)). Nevertheless, "in the absence of exculpatory facts which became known after an arrest, probable cause to arrest is a complete defense to a claim of malicious prosecution." D'Angelo v. Kirschner, 288 App'x 724, 726 (2d Cir. 2008) (summary order); see also Peterson v. Regina, No. 10-CV-1692 (JSR), 2013 WL 1294594, at *10 (S.D.N.Y. Mar. 28, 2013) (probable cause for malicious prosecution claim is assessed at time judicial proceeding commenced, not at time of warrantless arrest).

Plaintiff does not allege any new, exculpatory facts to suggest further information was gathered from the time of his arrest to the time of his prosecution to establish Defendants lacked probable cause. Plaintiff's complaint, which references the Criminal Court Complaint, states that the documents filed in that matter contain "false and perjurious allegations by Jacobs, including among others, that Cooper purportedly punched Jacobs in the face with a closed fist which caused injuries to Jacobs face and broke the sunglasses that Jacobs was wearing." (FAC ¶ 58.) But Plaintiff gives no plausible explanation as to why the prosecutor would believe that such an affidavit was false, other than to say the sworn allegations were filed by Jacobs "to deceive the Court and to conceal the above mentioned acts of brutality and abuse of authority, and to otherwise avoid punishment for said acts by the NYPD or other investigative bodies." (Id. ¶ 59.) Plaintiff further alleges that "Defendants ignored exculpatory evidence in the continuation of criminal proceedings against Cooper." (Id. ¶ 157.)

Merely saying something is false is not enough to plausibly make out a claim for malicious prosecution. See Crown Heights Shomrim Volunteer Safety Patrol, Inc. v. City of New York, No. 11-CV-329 (KAM), 2014 WL 4804869, at *10 (E.D.N.Y. Sept. 25, 2014) (finding that the complaint did not sufficiently articulate what false information motivated the prosecution); Abdul-Rahman v. City of New York, No. 10-CV-2778 (ILG), 2012 WL 1077762, at *10 (E.D.N.Y. Mar. 30, 2012) (dismissing malicious prosecution claim where plaintiff alleged that defendant officers fabricated false statements against him but did not allege what the false statements were); see also Iqbal, 556 U.S. 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2))). Given that Plaintiff failed to plausibly allege any intervening facts, probable cause both existed at the

time of Plaintiff's arrest and continued to exist at the time of the prosecution. Therefore, this court dismisses the malicious prosecution claim as to all Individual Defendants.

### F.    Plaintiff's Conspiracy Claim

In addition to the substantive § 1983 claims of excessive force, false arrest, and malicious prosecution, Plaintiff also alleges that the Defendants, including O'Connor, conspired to violate his constitutional rights pursuant to § 1983.[4] In order to bring a § 1983 conspiracy claim, a plaintiff must show "(1) an agreement between two or more state actors or between a state actor and private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999). A conspiracy claim must contain more than "conclusory, vague or general allegations of conspiracy to deprive a person of constitutional rights." Boddie v. Schnieder, 105 F.3d 857 (2d Cir. 1997) (quotation marks and citation omitted).

While substantive claims under § 1983 are normally brought only against state officials, "a § 1983 claim may be proved by showing that a person acting under color of state law . . . collaborated or conspired with a private person . . . to deprive the plaintiff of a constitutional right." Fries v. Barnes, 618 F.2d 988, 990 (2d Cir. 1980) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 152 (1970)); see also Am. Broad. Cos. v. Cuomo, 570 F.2d 1080, 1083 (2d Cir. 1977) ("[A]n ordinary citizen who conspires with a state agent to violate the civil rights of a plaintiff is equally liable . . . . ").

"Section 1983 is only a grant of a right of action; the substantive right giving rise to the action must come from another source." Id. Therefore, Plaintiff's conspiracy claim fails if he

---

[4] Plaintiff's § 1983 claim against O'Connor is dismissed for the independent reason that the FAC fails to set forth any facts to suggest that O'Connor conspired with his co-defendants to violate Plaintiff's civil rights. None of the allegations that pertain to Plaintiff's conspiracy claim allege any facts that support the claim that O'Connor played any part in the alleged conspiracy. (Cf., FAC ¶¶ 94-101.) See Wright, 21 F.3d at 501.

cannot prove the "sine qua non of a § 1983 action: the violation of a federal right." Id. (citing Adickes, 398 U.S. at 150.) Since Plaintiff has not adequately pleaded § 1983 claims for false arrest, malicious prosecution, or excessive force, he may not maintain a § 1983 cause of action for conspiracy. See Singer, 63 F.3d at 119. Having failed to allege that the Individual Defendants violated his constitutional rights, Plaintiff fails to adequately plead conspiracy arising under § 1983 against the Individual Defendants.

### G. Plaintiff's Supervisory Liability and Municipal Liability Claims

In Count III and Count IV of the FAC, Plaintiff brings § 1983 claims for supervisory liability and municipal liability against all defendants except for O'Connor. The City Defendants move to dismiss Plaintiff's supervisory and municipal liability claims. (City of New York Mem. at 16-22.) Plaintiff, however, failed to oppose the dismissal of these claims in his opposition papers. (See Pl. Opp'n.) Consequently, because Plaintiff did not address the City Defendants' motion with regard to these claims, his arguments to the contrary are deemed abandoned and these claims are hereby dismissed. See Martinez v. Sanders, No. 02-CV-5624 (RCC), 2004 WL 1234041, at *3 (S.D.N.Y. June 3, 2004) (finding that the plaintiff's failure to oppose dismissal of certain claims enabled the court to deem them abandoned); Bonilla v. Smithfield Assocs. LLC, No. 09-CV-1549 (DC), 2009 WL 4457304, at *4 (S.D.N.Y. Dec. 4, 2009) (holding that, because the plaintiff "fail[ed] to respond to the remaining two arguments" for dismissing certain of the claims, he had "effectively abandoned" those claims).

The court also concludes that Plaintiff's supervisory and municipal liability claims must be dismissed in light of the court's dismissal of Plaintiff's § 1983 claims for excessive force, false arrest, and malicious prosecution. See Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006) (citations omitted) (Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978) "does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation . . . . Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under Monell was entirely correct."); Garcia-Garcia v. City of New York, No. 12-CV-1302 (CM), 2013 WL 3832730, at *10 (S.D.N.Y. July 22, 2013) ("[W]here there is no underlying deprivation of rights, there can be no 'supervisory liability.'"); Elek v. Incorporated Village of Monroe, 815 F. Supp. 2d 801, 808 (S.D.N.Y. 2011) ("[B]ecause Plaintiff has not established any underlying constitutional violation, she cannot state a claim for § 1983 supervisor liability.").

## H.    Supplemental Jurisdiction

Because the court has dismissed all federal-law claims asserted by Plaintiff, it declines to exercise supplemental jurisdiction over any remaining state-law claims that may have been raised in Plaintiff's complaint. The district court has broad discretion as to whether to exercise its supplemental jurisdiction over state law claims where all federal claims have been dismissed from a suit. See 28 U.S.C. § 1367(c). In making this decision, the court should balance the traditional "values of judicial economy, convenience, fairness, and comity." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988). As a general rule, "when the federal claims are dismissed the 'state claims should be dismissed as well.'" In re Merrill Lynch Ltd. P'ships

Litig., 154 F.3d 56, 61 (2d Cir. 1998) (quoting United Mine Workers of Am. v. Gibbs, 383 U.S.

715, 726 (1966)); see also Kolari v. N.Y. Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir.

2006) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance

of factors . . . will point toward declining to exercise supplemental jurisdiction over the

remaining state-law claims." (quoting Cohill, 484 U.S. at 350 n.7) (alteration in original)).

Here, consideration of the Cohill factors does not upset the presumption against the

exercise of supplemental jurisdiction in this case. First, there is no gain in judicial economy to

be achieved by retaining the claims, as this court has not yet considered any state-law claims

raised by Plaintiff. Second, none of the parties would be placed at a disadvantage by proceeding

in state court. Finally, "given that only state-law issues remain in this case, comity dictates that

the [c]ourt decline to decide those disputes." Jackson v. Barden, No. 12-CV-1069 (KPF), 2018

WL 340014, at *21 (S.D.N.Y. Jan. 8, 2018). The court sees no reason to depart from this general

rule and, accordingly, declines to exercise supplemental jurisdiction over Plaintiff's remaining

state law claims.

## IV.    CONCLUSION

For the foregoing reasons, the City Defendants' motion to dismiss (Dkt. 56) is

GRANTED, Jacobs's motion to dismiss (Dkt. 54) is GRANTED, and O'Connor's motion to

dismiss (Dkt. 55) is GRANTED.  Plaintiff's amended complaint is hereby dismissed without

prejudice.  The Clerk of Court is respectfully DIRECTED to enter judgment for Defendants and

close the case.


SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
       September 27, 2018

NICHOLAS G. GARAUFIS
United States District Judge