BARRY R. FEERST & ASSOCIATES (BRF-3836)
Attorneys for Plaintiffs
194 South 8th Street
Brooklyn, New York 11211
t(718)384-9111
f(718)384-5999


UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------X
STEVEN COOPER,

|                                    |                              |
|------------------------------------|------------------------------|
| Plaintiff,                         | **SECOND AMENDED COMPLAINT** |
| -against-                          | **Plaintiff Demands Trial by Jury** |

THE CITY OF NEW YORK; POLICE LIEUTENANT
THOMAS JACOBS, POLICE OFFICER JESSICA
SCHRELL SHIELD NO. 26482, POLICE
DEPARTMENT SERGEANT BRENDAN RYAN,POLICE
OFFICER NICHOLAS HORUN, POLICE SERGEANT
ADAM KATRINCIC, POLICE SERGEANT PEARL
BARNHART, NYPD CAPTAIN DESMOND MORALES,
STEVEN MONA, DANIEL O'CONNOR,
NEW YORK POLICE OFFICERS JOHN DOES 1-10
the identity of whom is presently unknown,
in their individual and official
capacities as New York City
Police Officers;

                            Defendants.

------------------------------------------X

        Plaintiff, Steven Cooper ("Cooper") by his attorneys, BARRY

R. FEERST & ASSOCIATES, alleges as follows:

## JURISDICTION AND VENUE

        1. This Court has original jurisdiction over Plaintiff's

constitutional and federal law claims pursuant to 28 U.S.C. §§

1331, 1343, and 2202 in that this action is brought pursuant to 42 U.S.C. §§, 1983 and 1988, to redress the deprivation under color of law of Cooper's rights guaranteed by the First, Fourth, Fifth Sixth, Eight and Fourteenth Amendments to the United States Constitution.

2. Cooper further invokes the supplemental jurisdiction of this Court to adjudicate pendent State Law claims pursuant to 28 U.S.C. § 1367.

3. Venue is properly laid in the Eastern District of New York under 28 U.S.C. §1391(b), in that this is the District in which the events that gave rise to the claims asserted herein occurred within its boundaries.

## NOTICE OF CLAIM

4. On June 20, 2016, within ninety days after this claim arose, a notice of claim in writing on behalf of Cooper was served upon the CITY OF NEW YORK ("NYC") in compliance with the General Municipal Law, by delivering a copy of the notice to the person designated by law as a person to whom such claims may be served, setting forth the facts underlying Cooper's claim. The claim was assigned the number 2016PI019014 by NYC Comptrollers' office.

5. Cooper was subjected to an examination pursuant to N.Y. Gen. Mun. L. Sec. 50-h on September 14, 2016. At least thirty

days have elapsed since the service of the notice of claim, and no response has been received by Cooper and no compensation has been offered by NYC in response to this claim, who has neglected and failed to adjust the claim within the statutory time period.

6. This action has been commenced within one year and ninety days of the date of occurrence of the events giving rise to this action.

**DEMAND FOR A JURY TRIAL**

7. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Cooper demands a trial by jury of all issues so triable.

**PARTIES**

8. Steven Cooper is a citizen and resident of Kings County, New York.

9. Daniel O'Connor ("O'Connor") is a resident of the State of California.

10. New York Police Department ("NYPD") Lieutenant Thomas Jacobs ("Jacobs"), is an officer of the NYPD who works out of the 114th Precinct, located at 34-16 Astoria Boulevard, Astoria, NY 1103.

11. Police Officer Nicholas Horun ("Horun"), Shield # 10848, is an officer of the NYPD who works out of the 90th precinct, located at 211 Union Avenue, Brooklyn, New York 11211.

12. Police Officer Jessica Schrell ("Schrell"), Shield # 26482, is an officer of the NYPD who works out of the 90th Precinct, located at 211 Union Avenue, Brooklyn, New York 11211.

13. Sergeant Adam Katrinic ("Katrinic"), Shield # 01319, is an officer of the NYPD who works out of Patrol Borough Brooklyn North, located at 179 Wilson Avenue, Brooklyn, New York 11237.

14. Sergeant Pearl Barnhart ("Barnhart") is an officer of the NYPD who works out of the 90th Precinct, located at 211 Union Avenue, Brooklyn, New York 11211.

15. Captain Desmond Morales ("Morales"), Tax # 925772, is an officer of the NYPD who works out of the Patrol Borough Brooklyn North, located at 179 Wilson Avenue, Brooklyn, New York 11237.

16. Sergeant Brendan Ryan ("Ryan"), Shield #02840, is an officer of the NYPD who works out of the Office of the Deputy Commissioner of Public Information, located at 1 Police Plaza, Room 1320, New York, New York 10007.

17. Steven Mona ("Mona") is a retired lieutenant of the NYPD and was present at the time and place herein after described.

18. NYC is a municipal corporation duly incorporated under the laws of the State of New York pursuant to § 431 of its Charter. NYC is authorized by law to maintain the NYPD, a

municipal agency of NYC with multiple Police Precincts including the 90th Police Precinct, which acts for it in the area of law enforcement, and for whose acts NYC is ultimately responsible.

19. NYC assumes the risks incidental to the maintenance of a police force and the policies, procedures, and practices implemented through its various agencies, departments, and employees, and for injury occasioned thereby. It is the public employer of the police officers, detectives, supervisory and administrative personnel within the NYPD, which hired, supervised, trained, retained and controlled the police officers, detectives and supervisory personnel in the 90th police precinct of the NYPD named as individual defendants herein and who have enforced the State laws at issue against Cooper.

20. Schrell, Ryan, Jacobs, Horun, Katrinic, Morales and Barnhart at all times relevant herein, were officers, employees and agents of the NYPD, acting under color of State law. Schrell, Ryan, Jacobs, Horun, Katrinic, Morales and Barnhart are sued in their individual and official capacities.

21. At all times relevant, defendants John and Jane Doe 1 through 10 were NYPD officers, detectives or supervisors acting under color of State law, whose real names and shield numbers are presently unknown to Plaintiff, and Cooper will amend the

complaint to add the defendants' true names once the identities of said defendants are discovered.

22. At all times relevant herein, John and Jane Doe 1 through 10 were acting as agents, servants and employees of NYC and said Defendants are sued in their individual and official capacities.

23. At all times hereinafter mentioned, Schrell, Ryan, Jacobs, Horun, Katrinic, Morales and Barnhart and JOHN and JANE DOE 1 through 10, were duly sworn NYPD officers and were acting under the supervision of NYPD and according to their official duties.

24. At all times hereinafter mentioned, Schrell, Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart, and JANE DOE 1 through 10, either personally or through co-employees of NYPD, were acting under color of State law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State of New York and/or NYC.

25. Each and all of the acts of Schrell, Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart, and JOHN and JANE DOE 1 through 10 alleged herein were carried out by said defendants while acting within the scope of their employment by NYC.

## STATEMENT OF FACTS

26. On March 20, 2016 at approximately 4:00 p.m., Cooper

was lawfully walking across the sidewalk on a public street named Broadway in Kings County, New York.

27. At the time and place described in paragraph "26." above, Jacobs was operating a motor vehicle, in which O'Connor, Mona and a number of John Doe defendants, at least three of whom are NYPD officers, were in the vehicle.

28. At the time described in paragraph "25." above, the motor vehicle was exiting the ramp on the Brooklyn Side of the Williamsburg Bridge onto Broadway, ignored the stop sign at Broadway and struck Cooper, who was crossing from the east side to the west side of Broadway.

29. After Cooper was struck by the motor vehicle, Jacobs reached Broadway and parked the vehicle in the middle of the street. Jacobs and O'Connor and a John Doe exited the vehicle and assaulted Cooper who had remained where he was standing, when struck by the vehicle.

30. Cooper saw both Jacobs and O'Connor approaching him, and tried to flee by attempting to cross Broadway from the north side to the south side.

31. Before Cooper crossed Broadway, O'Connor struck Cooper on the head, choked him and grabbed and shoved him into the middle of the roadway.

32. Within seconds, Jacobs joined O'Connor in assaulting

and battering Cooper. Jacobs, who was carrying a concealed firearm, brushed up against Cooper, who felt the firearm, with the intent of putting Cooper in immediate fear of death or serious bodily injury.

33. Cooper in fear of his life, fled from O'Connor and Jacobs, at which time Cooper's hat fell to the ground.

34. O'Connor and Jacobs continued to pursue Cooper.

35. Jacobs, while running on the sidewalk of Broadway, attempted to pick up Cooper's hat that was on the sidewalk and unable to maintain his balance, tumbled over and fell on the sidewalk face-first. Despite tumbling on his head, Jacobs got back on his feet and ran in the same direction where Cooper ran to seek refuge.

36. Cooper initially escaped and called 911 at approximately 4:15pm and told the 911 dispatcher about the events and requested police assistance.

37. During the 911 call, which is automatically recorded and preserved, O'Connor and Jacobs apprehended Cooper, were heard punching and otherwise assaulting him.

38. The 911 operator hearing and recording the vicious assault and beating on the phone, advised Cooper that the police were on the way and directed Cooper to head back towards the Broadway.

39. As Cooper approached Broadway, and while on the phone with the 911 operator, Horun and Schrell operating a NYPD radio mobile patrol ("RMP") vehicle, with its lights and siren activated, intercepted Cooper.

40. Cooper approached the RMP, and was then ordered by Horun and Schrell to get in and taken to Roebling Street. In the backseat of the RMP, Cooper told Horun and Schrell what occurred and Horun told Cooper to "shut the fuck up."

41. At Roebling Street, Cooper expressed his wish to leave the scene and attend to his injuries. Cooper believed he was free to leave and gave the officers his information. However, Katrincic and Morales told Cooper he was not free to leave and insisted that he remain in the RMP to be transported to the 90th precinct.

42. Without an arrest warrant or probable cause, and lacking any legal justification, Cooper was unlawfully detained, against his will, and transported in the RMP to the 90th Precinct at which time Cooper was told to sit down and wait.

43. As a result of the vehicle striking him and the bodily assault described in the paragraphs above, Cooper's face, body and right eye were so swollen and bleeding that he repeatedly pleaded with Schrell, Horun, Katrinic, Morales, Barnhart and John Doe Police Officers for medical assistance.

44. Despite his request, Schrell, Horun, Katrinic, Morales, Barnhart and John Doe Police Officers all told Cooper that he was fine and was therefore denied any medical treatment; and was forced to sit in the 90th Precinct for approximately two hours while bleeding, in pain and suffering mental and emotional distress.

45. Cooper was told by Schrell, Horun, Katrinic, Morales, Barnhart and John Doe Police Officers that he could not leave because the NYPD Internal Affairs Bureau ("IAB") were allegedly on their way to the 90th Precinct. Despite the fact that it is proper protocol for the IAB to question the officer and civilian when a civilian is injured by an officer, no one from the IAB interviewed Cooper on that day.

46. Cooper, while in the 90th Precinct, visibly injured and in need of medical treatment from the assault inflicted on him by Jacobs, O'Connor, Mona and the John Doe Police officers repeated that he needed medical attention, which was again ignored.

47. At approximately 8:00pm, four hours after the assault, Cooper told Barnhart that he wanted to press criminal charges against Jacobs, O'Connor and all the John Doe Police officers involved. Barnhart asked Cooper, "are you sure?", to which Cooper responded "yes, don't you think I should based on what

happened?" After hearing Cooper's request, Barnhart told Cooper he would be right back.

48. Thereafter, Schrell, Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart and the John Doe Police Officers conspired to conjure a story to arrest Cooper.

49. Despite the visible injuries to Cooper and the 911 recording of Cooper's beating, at approximately 10:30pm, Barnhart informed Cooper that he was under arrest, placed in a holding cell and then fingerprinted.  Cooper was arrested based on Schrell, Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart and the John Doe Police Officers false allegations and or omissions.

50. Schrell Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart and John Doe Police Officers all participated and otherwise approved in the false imprisonment, unlawful search and seizure, and False arrest of Cooper.

51. On March 21, 2016, Cooper was given a desk appearance ticket, DAT serial No: 090-00121, charging Cooper with NY Pl 120.00.01(assault in the third degree) and ordering Cooper to appear at court on April 25, 2016.

52. In furtherance of their conspiracy, as described above, Schrell, Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart and the John Doe Police Officers Conspiracy to deprive Cooper of his Constitutional rights guaranteed under the 4th and 14th Amendment

-11-

rights to be free from unlawful searches and seizures and arrests. On March 23, 2016, the New York Post published an article about the incident and in the article Ryan stated a completely false statement to the New York Post stating that Jacobs was punched in the face by Cooper causing bruising and swelling to Jacobs, which upon its face was per say false and defamatory.

53. On April 25, 2016, Cooper was arraigned under docket number 2016KN023559, falsely and maliciously charged Cooper with Assault in the third degree, Criminal Mischief in the fourth degree, Attempted assault in the third degree, Menacing in the third degree and Harassment in the second degree.

54. The documents filed by Schrell, Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart and the John Doe Police Officers with the Criminal Court under said docket number were false, perjurious and filed in order to shield the defendants from liability and continue the malicious prosecution of Cooper.

55. The aforementioned sworn allegations and documents were filed by Schrell, Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart and the John Doe Police Officers in order to deceive the Court and to conceal the above mentioned acts of brutality and abuse of authority, and to otherwise avoid punishment for said acts by the NYPD or other investigative bodies.

56. Despite receiving video evidence that showed the true aggressors, the Kings County District Attorney relentlessly continued the malicious prosecution of Cooper and continued to ignore the criminal acts committed by Schrell, Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart and the John Doe Police Officers as described above.

57. The criminal case against Cooper was dismissed on the merits in Cooper's favor on June 20, 2016.

58. On or about March 2016, O'Connor was charged under case 2016KN017021 with assault, menacing and harassment that he committed against Cooper.

59. Despite Cooper's full cooperation with the District Attorney and without any input from or notice to Cooper, the victim, on November 21, 2016, O'Connor was allowed to negotiate a plea of disorderly conduct and sealing of the record.

60. However, given the extent of then injuries suffered as a result of the vicious attack committed by O'Connor, the Court extended its Order of protection that it issued at O'Connor's arraignment requiring O'Connor to stay away from Cooper until November 20, 2018.

61. As a direct result of the assault, battery and tortious conduct committed by Schrell, Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart, the John Doe Police Officers and O'Connor,

Cooper has been permanently injured both physically and mentally.

62. Before the assault and battery and tortious conduct of Schrell Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart, the John Doe Police Officers and O'Connor, Cooper had no damage to his eyesight.

63. The beating of Cooper by Jacobs and O'Connor badly damaged his right eye requiring a procedure of cataract extraction with intraocular lens implantation in his right eye and the damage is permanent.

64. Cooper now has permanent eye damage and must wear eye glasses.

65. Cooper also suffers and continues to suffer emotional trauma as a result of the tortious conduct of Schrell Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart, the John Doe Police Officers and O'Connor.

## FEDERAL CAUSES OF ACTION

### COUNT I
### 42 U.S.C. §1983 FALSE IMPRISONMENT

66. Paragraphs "1." through "65." are repeated.

67. After Cooper was unlawfully and falsely arrested he was taken to the 90th precinct where he was falsely imprisoned.

68. Schrell, Ryan, Jacobs, Horun, Katrinic, Morales,

Barnhart and John Doe Police Officers did purposely, intentionally and maliciously present and make knowingly false sworn allegations and testimony against Cooper.

69. A result of the intentional and malicious and knowingly false allegations, Cooper was charged with violating numerous sections of the Penal Law of the State of New York.

70. The unlawful and illegal imprisonment of Cooper caused him grievous harm.

71. Schrell, Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart and the John Doe Police Officers intended to confine Cooper; Cooper was conscious of the confinement; Cooper did not consent to the confinement and the confinement was not otherwise privileged

72. By reason of the aforementioned, Cooper suffered physical harm, great mental anguish and was deprived of his constitutional rights.

73. The conduct of Schrell, Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart and the John Doe Police Officers caused Cooper to be falsely arrested, detained and imprisoned without reasonable suspicion or probable cause, thereby depriving Cooper of his right to be free from unlawful seizure under the Fourth Amendment to the Constitution of the United States, in violation of 42 U.S.C. § 1983.

74. Schrell, Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart, and the John Doe Police Officers intentionally and without probable cause or lawful justification, acted in willful and/or reckless disregard of the constitutional rights of Cooper to be free from false arrest and false imprisonment, and did together and/or in combination with one or more of the other individual defendants deprived Cooper of such constitutional rights by placing Cooper under arrest without probable cause to do so, transporting him to the 90th Precinct, where he was searched, fingerprinted, photographed and denied medical treatment, despite knowing and/or not reasonably believing in the existence of probable cause at the time they arrested Cooper.

75. Each of the defendants individually, and in concert with the others, acted under color of law in his/their official capacity, to deprive Cooper of his rights to freedom from illegal searches and seizure of his person, papers, and effects and his rights to freedom from unlawful arrest, detention and imprisonment. All of the defendants while acting individually, jointly, and/or in conspiracy with each other, as well as under color of State law and within the scope of their employment, caused Cooper to be so arrested and imprisoned falsely and each was instrumental in the initiation and arrest of Cooper, which

was the result of their having acted with malice or reckless indifference to Cooper's constitutional rights.

76. The defendants' conduct as aforesaid also deprived Cooper of his rights under the Fifth and Fourteenth Amendments to the Constitution of the United States to liberty without due process of law and to the equal protection of the laws, and the due course of justice was impeded, in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States, all and in violation of 42 U.S.C. § 1983.

77. Acting under the color of law, the defendants' conduct as detailed above also deprived Cooper of his rights, privileges and immunities secured by the Fifth and Fourteenth Amendments to the Constitution of the United States, in violation of 42 U.S.C. § 1983.

78. Schrell, Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart and the John Doe Police officers further engaged in willful, wanton, malicious, and abusive conduct while falsely arresting and imprisoning Cooper under the color of law that deprived Cooper of constitutionally protected rights under the Fourth and Fourteenth Amendments of the United States Constitution.

79. The arrest of Cooper without probable cause was designed to, and did, cause specific and serious bodily harm,

-17-

pain and suffering to Cooper and deprived him of his right to be free from false arrest and false imprisonment, as guaranteed by the Fourth and Fourteenth Amendment to the United States Constitution, and was undertaken pursuant to the policies and practices of the NYPD in its 90th Precinct, in the manner described above.

80. As a direct and proximate result of the above-mentioned unconstitutional acts of Schrell, Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart and John Doe Police offers, Cooper was deprived of his civil rights through false arrest, false imprisonment, abusive conduct, humiliation, and mistreatment.

81. Schrell, Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart and the John Doe Police Officers acted deliberately and their failure to act caused and contributed to Cooper's false arrest and false imprisonment, thereby violating Cooper's civil rights guaranteed by the Fourth and Fourteenth Amendments to be free from unlawful search and stop and seizures to the United States Constitution, for which redress is available under 42 U.S.C. § 1983, for the deprivation of such rights under color of State law.

82. Cooper has suffered, and will continue to suffer damages as a proximate result of the false arrest and imprisonment perpetrated upon him by Schrell, Ryan, Jacobs,

Horun, Katrinic, Morales, Barnhart and the John Doe Police Officers including, a deprivation of rights and loss of freedom and reputation.

83. As a direct and proximate result of the aforementioned unlawful actions, Cooper has suffered, and will continue to suffer, damages including physical and emotional injury and psychological harm such as mental anguish, distress, humiliation and embarrassment affecting his psychological well-being, some or all of which may be permanent, as well as financial harm including loss-profit and business opportunities, expending attorneys' fees associated with his defense in the criminal case and medical bills for the treatment of his injuries.

**COUNT II**
**42 U.S.C. §1983 FALSE ARREST**

84. Paragraphs "1." through "83." are repeated.

85. Pursuant to the Fourth Amendment to the Federal Constitution, it is clearly established law that an arrest and/or imprisonment is unlawful when not supported by probable cause.

86. Cooper was illegally taken to the 90th Precinct and falsely arrested and unlawfully restrained.

87. Cooper was arrested by Schrell, Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart and the John Doe Police Officers

-19-

without probable cause and without a warrant.

88. The aforesaid arrest was implemented by Schrell, Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart and the John Doe Police Officers, its agents, servants and employees, including but not limited to the police officers without a warrant and without any reasonable cause or belief that Cooper was in fact guilty of any crime.

89. Schrell, Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart and the John Doe Police Officers intentionally and without the right to do so, arrested Cooper who was aware of the arrest and did not consent to it.

90. Cooper's arrest was unlawful and was made without justification.

91. Based on the facts and circumstances presented, a reasonably prudent person would not believe that Cooper committed a crime.

## COUNT III
### 42 U.S.C. §1983 MALICIOUS PROSECUTION

92. Paragraphs "1." through "91." are repeated.

93. Schrell, Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart and the John Doe Police Officers maliciously and without regard to Cooper's liberty and rights, violated and/or conspired to violate Cooper's right to be free from malicious

prosecution under the Fourth Amendment to the United States Constitution, made actionable through 42 U.S.C. Section 1983.

94. Schrell, Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart and the John Doe Police Officers initiated a malicious prosecution against Cooper by falsely charging him with misdemeanor counts, forwarding false information to prosecutors and filing perjurious documents in support of the prosecution.

95. Schrell, Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart and the John Doe Police Officers acted without probable cause to believe that Cooper had committed the crimes for which he was accused in the institution of the prosecution or during its continuation. The charges initiated against Cooper were without legal or factual justification. Schrell, Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart and the John Doe Police Officers initiated and perpetuated the charges against Cooper until their dismissal with malice, with absolute disregard for his rights and liberties and with the deliberate intent to deprive Cooper of his constitutional rights.

96. At no point during the duration of the proceedings against Cooper, did Schrell, Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart and the John Doe Police Officers possess any evidence against Cooper establishing probable cause and/or a legal basis that Cooper was engaged in the criminal acts

complained and in fact had video evidence and the 911 call that unequivocally showed that Cooper was the victim. Nevertheless, he was prosecuted for crimes he clearly did not commit.

97. The criminal case against Cooper was dismissed by the Criminal Court and thereby terminating the case in Cooper's favor.

98. The misconduct described in this Count was undertaken pursuant to the policies and practices of the NYPD in the 90th Police Precinct in the manner described above.

99. As a direct and proximate result of the unlawful actions of Schrell, Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart and the John Doe Police Officers, including withholding video evidence from the prosecutors, Cooper has suffered, and will continue to suffer, damages including physical and emotional injury, mental anguish and pain in connection with the deprivation of his constitutional rights in that, among other things, endured almost three months of legal proceedings.

## COUNT IV
### DEPRIVATION OF RIGHTS Under 42 U.S.C. § 1983

100. Paragraphs "1." through "99." are repeated.

101. All of the acts of defendants, their agents, servants and employees were carried out under the color of state law.

102. All of the acts described above deprived Cooper of the

rights, privileges and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

103. The acts complained of were carried out by Schrell, Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart and the John Doe Police Officers in their capacities as police officers, with the entire actual and/or apparent authority attendant thereto.

104. The acts complained of were carried out by Schrell, Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart and the John Doe Police Officers in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the CITY OF NEW YORK and the New York City Police Department, all under the supervision of ranking officers of said department.

105. Schrell, Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart and the John Doe Police Officers, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

106. As a result of the foregoing, Cooper is entitled to compensatory damages in an amount to be fixed by a jury, and is

further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

**COUNT V**
**EXCESSIVE FORCE under 42 U.S.C. § 1983**

107. Paragraphs "1." through "106." are repeated.

108. The level of force employed by Schrell, Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart and the John Doe Police Officers were excessive, objectively unreasonable and otherwise in violation Cooper's constitutional rights.

109. As result of defendants' conduct as described above, Cooper was subjected to excessive force and sustained serious physical injuries and emotional distress.

110. As a result of the foregoing, Cooper is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

**COUNT VI**
**SUPERVISORY LIABILITY under 42 U.S.C. § 1983**

111. Paragraphs "1." through "110." are repeated.

112. The supervisory defendants, Katrincic and the John Doe Police officers whose identity is not yet known to Cooper,

personally caused Cooper constitutional injury by being deliberately or consciously indifferent to the rights of others in failing to properly supervise and train their subordinate employees.

113. As a result of the foregoing, Cooper is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

**COUNT VII**
**MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983**

114. Paragraphs "1." through "113." are repeated.

115. Schrell, Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart and the John Doe Police Officers, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

116. The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York Police Department included, but were not limited to, using excessive force against individuals and then concealing said acts by manufacturing evidence and otherwise engaging in falsification.

In addition, the City of New York engaged in a policy, custom or practice of inadequate screening, hiring, retaining, training, and supervising its employees that the moving force behind the violation of Cooper's rights as described herein. As a result of the failure of the City of New York to properly recruit, screen, train, discipline, and supervise its officers, including the individual defendants, the City of New York has tacitly authorized, ratified, and has been deliberately indifferent to, the acts and conduct complained of herein.

117. The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York Police Department constituted deliberate indifference to the safety, well-being and constitutional rights of Cooper.

118. The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department were the direct and proximate cause of the constitutional violations suffered by Cooper as alleged herein.

119. The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department were the moving force behind the Constitutional violations suffered by Cooper as alleged herein.

120. As a result of the foregoing customs, policies,

usages, practices, procedures and rules of the City of New York and the New York City Police Department, Cooper was subjected to excessive force.

121. Schrell, Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart and the John Doe Police Officers, collectively and individually, while acting under color of state law, were directly and actively involved in violating plaintiff Cooper's constitutional rights.

122. All of the foregoing acts by Schrell, Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart and the John Doe Police Officers deprived Cooper of federally protected rights, including, but not limited to, the right to be free from excessive force.

123. As a result of the foregoing, Cooper is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury.

## COUNT VIII
### CONSPIRACY TO DEPRIVE PLAINTIFF OF HIS CONSTITUTIONAL RIGHTS under 42 U.S.C. § 1983

124. Paragraphs "1." through "123." are repeated.

125. After Cooper decided to try and press charges against Jacobs, Schrell, Ryan, Jacobs, Horun, Katrinic, Morales,

Barnhart and the John Doe Police Officers reached an agreement amongst themselves to retaliate against Cooper by framing him for a series of crimes he never committed to thereby deprive Cooper of his constitutional rights, all as described above.

126. Before and after the commencement of the malicious prosecution, Schrell, Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart and the John Doe Police Officers and the individual private defendants, Mona and O'Connor further conspired, and continue to conspire, to deprive Cooper of his constitutional rights to be free from false arrests, malicious prosecutions and unlawful, warrantless searches and seizures by purposely concealing information, submitting false information, making libelous statements to the Press and perjurious depositions to prevent Cooper's exoneration of the false charges as described in detail above.

127. In this manner, Schrell, Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart, Mona, O'Connor and the John Doe Police Officers have conspired by concerted action to accomplish an unlawful purpose by an unlawful means.

128. In furtherance of the conspiracy, each of the coconspirators committed overt acts and was an otherwise willful participant in joint activity. The misconduct described in this Count was undertaken with malice, willfulness, and reckless

-28-

indifference to the rights of others.

129. As describe above, Schrell, Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart, Mona, O'Connor and the John Doe Police Officers also conspired and participated in a common design through concerted action, directly or indirectly, for the ulterior motives and purposes stated above. In so doing, they took actions in furtherance of this conspiracy, causing injury to Cooper.

130. The misconduct described in this Count was undertaken pursuant to the policies and a practice of the NYPD in its 90th Precinct in the manner described more fully in the preceding paragraphs, and was tacitly ratified by policy-makers for the CITY OF NEW YORK with final policymaking authority.

131. The conspiratorial conduct described above, under of color of law, and effected through ways and means of an applied city policy, deprived Plaintiff of fundamental liberty rights guaranteed to him by the First, Fourth, and Fourteenth Amendments of the United States Constitution for which each is liable to him under 42 U.S.C. §1983 for damages.

132. As a direct and proximate result of the illicit agreement referenced above, Cooper's rights were violated, and he suffered financial damages, as well as severe emotional distress and anguish, as is more fully alleged above.

## COUNT VX
### ASSAULT UNDER PENDENT JURISDICTION AGAINST O'CONNOR

133. Paragraphs "1." through "132." are repeated.

134. As a result of the conduct described above, Cooper was placed in apprehension of imminent harmful and offensive bodily contact.

135. As a result of O'Connor's conduct, Cooper has suffered physical pain and mental anguish, together with shock, fright, apprehension, embarrassment, and humiliation.

136. As a result of the foregoing, Cooper is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against O'Connor in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## COUNT X
### BATTERY UNDER PENDENT JURISDICTION AGAINST O'CONNOR

137. Paragraphs "1." through "136." are repeated.

138. O'Connor made offensive contact with Cooper without privilege or consent.

139. As a result of O'Connor's conduct, Cooper has suffered physical pain and mental anguish, together with shock, fright, apprehension, embarrassment, and humiliation.

140. As a result of the foregoing, Cooper is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## COUNT XI
### ASSAULT UNDER PENDENT JURISDICTION AGAINST JACOBS

141. Paragraphs "1." through "140." are repeated.

142. As a result of the conduct described above, Cooper was placed in apprehension of imminent harmful and offensive bodily contact.

143. As a result of Jacobs' conduct, Cooper has suffered physical pain and mental anguish, together with shock, fright, apprehension, embarrassment, and humiliation.

144. As a result of the foregoing, Cooper is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against Jacob's in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## COUNT XII
### BATTERY UNDER PENDENT JURISDICTION AGAINST JACOBS

145. Paragraphs "1." through "144." are repeated.

146. Jacobs made offensive contact with Cooper without

privilege or consent.

147. As a result of Jacobs' conduct, Cooper has suffered physical pain and mental anguish, together with shock, fright, apprehension, embarrassment, and humiliation.

148. As a result of the foregoing, Cooper is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

**COUNT XIII**
**PRIMA FACIE TORT UNDER PENDENT JURISDICTION**

149. Paragraphs "1." through "148." are repeated.

150. By their actions, as set forth above, Defendants inflicted harm upon Cooper without excuse or justification.

151. As a result of the foregoing, Cooper is entitled to damages as described herein.

**COUNT XV**
**LIBEL AND SLANDER UNDER PENDENT JURISDICTION**

152. Paragraphs "1." through "151." are repeated.

153. By their actions set forth above, knowing the charges against Cooper were false, Ryan disseminated and published a completely false statement to the New York Post stating that Jacobs was punched in the face by Cooper causing bruising and

swelling to Jacobs, which upon its face was per say false and defamatory.

154. As a result of the foregoing, Cooper's reputation has been permanently damaged and therefore Cooper is entitled to damages.

## COUNT XIV
### NEW YORK STATE CONSTITUTIONAL VIOLATIONS

155. Paragraphs "1." through "154." are repeated.

156. The aforementioned conduct of the named and unnamed officers violated the protections guaranteed to Cooper by the New York State Constitution, Article 1, Sections 6, 8, 11 and 12 including but not limited to the right to be free from unreasonable seizure of their person, including excessive force.

157. Defendants' deprivation of Cooper's rights under the New York State Constitution resulted in the injuries and damages suffered by Cooper.

## COUNT XIV
### FALSE ARREST UNDER PENDENT JURISDICTION

158. Paragraphs "1." through "157." are repeated.

159. Cooper was wrongfully, unlawfully and unjustifiably charged and arrested without a warrant and without any probable cause.

160.   NYC is responsible because at all relevant times Schrell, Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart and the John Doe Police Officers were employees of the NYPD and NYC, and were acting within the scope of their employment, in furtherance of the business of NYPD and NYC. The individual defendants Schrell, Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart and the John Doe Police Officers were acting pursuant to the authority conferred upon them by NYPD and NYC.

161. As a result of the foregoing, Cooper is entitled to damages as described herein.

**COUNT XV**
**MALICIOUS PROSECUTION UNDER PENDENT JURISDICTION**

162. Paragraphs "1." through "161." are repeated.

163. Criminal proceedings were commenced and continued against Cooper which falsely and maliciously charged Cooper with the commission of criminal acts.

164. Schrell, Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart and John Doe Police Officers with the consent and participation of one another, continued said proceeding despite the fact they knew Cooper had not committed any crimes, and that there was no need for arrest and imprisonment of Cooper, as is described below.

165. Schrell, Ryan, Jacobs, Horun, Katrinic, Morales,

Barnhart and John Doe Police Officers were directly and actively involved in the initiation of criminal proceedings against Cooper.

166. Schrell, Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart and John Doe Police Officers lacked probable cause to initiate criminal proceedings against Cooper.

167. Schrell, Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart and John Doe Police Officers were motivated by actual malice in initiating criminal proceedings against Cooper.

168. Schrell, Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart and John Doe Police Officers misrepresented and falsified evidence presented to the District Attorney.

169. Schrell, Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart and John Doe Police Officers did not make a complete and full statement of facts to the District Attorney.

170. Schrell, Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart and John Doe Police Officers ignored exculpatory evidence, the video of the incident, in the continuation of criminal proceedings against Cooper.

171. Schrell, Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart and John Doe Police Officers were directly and actively involved in the continuation of criminal proceedings against Cooper.

172. The Criminal case against Cooper was dismissed on the merits in Cooper's favor on June 20, 2016.

173. NYC, as an employer of Schrell, Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart and John Doe Police Officers is responsible for their wrongdoing under the doctrine of respondeat superior.

174. As a direct and proximate result of the misconduct and abuse of authority stated above, Cooper sustained and continues to sustain injuries and damages as alleged herein.

175. As a result of the foregoing, Cooper is entitled to damages as described herein.

**COUNT XVI**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

176. Paragraphs "1." through "175." are repeated.

177. The actions of the defendants taken against Cooper were outrageous and beyond any norms acceptable to society.

178. The defendants acted with the desire and intent to cause Cooper emotional distress, or acted under circumstances known to them which made it substantially certain that they would cause such emotional distress.

179. The defendants acted with utter disregard for the consequences of their actions.

180. As a result of the aforesaid, Cooper sustained

injuries and damages previously described in this complaint, including intentional infliction of emotional distress.

181. As a result of the foregoing, Cooper is entitled to damages as described herein.

## COUNT XVII
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

182. Paragraphs "1." through "181." are repeated.

183. The individually named Defendants, by their aforementioned acts, did negligently cause Cooper to suffer mental and emotional distress.

184. As a result of the foregoing, Cooper is entitled to damages as described herein.

## COUNT XVI
### LARCENY UNDER PENDENT JURISDICTION

185. Paragraphs "1." through "184" are repeated.

186. The unlawful possession and retention of Cooper's hat by Jacobs, which was custom made and unique, constitutes larceny.

187. As a result of the foregoing, Cooper is entitled to damages as described herein.

**WHEREFORE,** Plaintiff requests judgment against all of the defendants:

a) For compensatory damages in an amount to be determined

at trial; and

     b) For punitive damages in an amount to be determined at trial; and

     c) For attorney Fees; and

     d) For the allowable disbursements and costs of this action; and

     e) Such other and further relief as may be just and proper.

                                   BARRY R. FEERST & ASSOCIATES

                                   BY:_____/s/_____
                                      BARRY R. FEERST (BRF-3836)
                                      Attorney(s) for Plaintiff
                                      Steven Cooper
                                      194 South 8th Street
                                      Brooklyn, New York 11211
                                      (718)384-9111

Dated: Brooklyn, New York
       November 28, 2018

-38-