D|F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
STEVEN COOPER,

                Plaintiff,

    -against-

CITY OF NEW YORK; DANIEL O'CONNOR; POLICE
LIEUTENANT THOMAS JACOBS; POLICE OFFICER
JESSICA SCHRELL SHIELD NO. 26482; POLICE
SERGEANT BRENDAN RYAN; NEW YORK POLICE
OFFICERS JOHN DOES 1-10 THE IDENTITY OF
WHOM IS PRESENTLY UNKNOWN, IN THEIR
INDIVIDUAL AND OFFICIAL CAPACITIES AS NEW
YORK CITY POLICE OFFICERS,

                Defendants.
------------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**17-CV-1517 (NGG) (RLM)**

NICHOLAS G. GARAUFIS, United States District Judge.

    Plaintiff Steven Cooper commenced this action on March 17, 2017, asserting claims

under 42 U.S.C. § 1983 ("§ 1983") and state tort laws against Defendants Police Officer Jessica

Schrell, Police Sergeant Brendan Ryan, Police Lieutenant Thomas Jacobs, unknown John Doe

Police Officers 1-10, and Daniel O'Connor (collectively the "Individual Defendants"), and the

City of New York ("the City"). (See Compl. (Dkt. 1).) On September 29, 2018, the court

dismissed the First Amended Complaint ("FAC") (Dkt. 36) without prejudice. See Cooper v.

City of New York, No. 17-CV-1517 (NGG) (RLM), 2018 WL 4762248, at *11 (E.D.N.Y. Sept.

29, 2018). Plaintiff now seeks leave to file a second amended complaint. (See Pl. Mot. to

Amend ("Mot.") (Dkt. 69-2[1]).) For the following reasons, Plaintiff's motion is GRANTED IN

PART and DENIED IN PART.

---

[1] Plaintiff filed a motion to amend and proposed second amended complaint on February 1, 2019 (Dkt. 68) and again
on February 4, 2019 with a cover letter (Dkt. 69). Because he filings appear identical, but the later filing also

## I.    BACKGROUND

### A. Factual Background

The court takes the following statement of facts largely from Plaintiff's PSAC, the well-pleaded allegations of which the court generally accepts as true for purposes of the motion to amend. See Ind. Pub. Ret. Sys. v. SAIC, Inc., 818 F.3d 85, 92 (2d Cir. 2016) ("We assess futility as we would a motion to dismiss, determining whether the proposed complaint contains enough facts to state a claim to relief that is plausible on its face." (citation and quotation marks omitted)).

Plaintiff alleges that on March 20, 2016 he was hit by a vehicle driven by Jacobs as he was crossing the street in Brooklyn, New York. (PSAC ¶¶ 26-28.) Jacobs is a New York Police Department ("NYPD") officer. (Id. ¶ 10.) O'Connor, a private citizen, Mona, a retired lieutenant of the NYPD, and "a number of John Doe defendants, at least three of whom are NYPD officers," were passengers in the vehicle. (Id. ¶ 27; see id. ¶ 17.) After Plaintiff was struck by the vehicle, Jacobs, O'Connor, and a John Doe exited the vehicle. (Id. ¶ 29.)

O'Connor and Jacobs approached Plaintiff and began to chase him as he attempted to flee. (Id. ¶¶ 30-31.) O'Connor struck Plaintiff on the head, choked him, grabbed him, and pushed him into the middle of the road. (Id. ¶ 31.) Jacobs joined O'Connor in "assaulting and battering" Plaintiff. (Id. ¶ 32.) Plaintiff alleges that he felt a firearm on Jacobs's person. (Id.) O'Connor and Jacobs chased Plaintiff and, at one point, Jacobs lost his balance while trying to pick up Plaintiff's hat from the sidewalk and "tumbled over and fell on the sidewalk face-first." (Id. ¶¶ 34-35.)

---

includes a cover letter and notice of motion, the court treats the motion at Docket 69 as the operative motion under review here and citations to the PSAC are to the amended complaint filed at Docket 69-3.

Plaintiff alleges that he "initially escaped" and called 911 for help. (Id. ¶ 36.) During the call, O'Connor and Jacobs caught up to Plaintiff and could be "heard punching and otherwise assaulting" Plaintiff. (Id. ¶ 37.) The 911 operator advised Plaintiff that police were on the way. (Id. ¶ 38.)

Defendants Schrell and Horun, both officers of the NYPD (see id. ¶¶ 11-12), arrived shortly thereafter in a NYPD radio mobile patrol ("RMP") vehicle. (Id. ¶ 39.) Horun and Schrell ordered Plaintiff to get into the RMP. (Id. ¶ 40.) Plaintiff then told Horun and Schrell "what occurred," at which point Horun told Plaintiff to "shut the fuck up." (Id.) Plaintiff then "saw Jacobs display his badge to the other NYPD officer and heard Jacob's say that he was 'on the job.'" (Id. ¶ 41.)

Plaintiff then expressed his wish to go home and tend to his injuries (id. ¶ 41), but Katrincic and Morales, two additional NYPD officers (see id. ¶¶ 13, 15), told Plaintiff that he was not free to leave and insisted that he remain in the RMP vehicle (id. ¶ 41). Plaintiff alleges that "[w]ithout an arrest warrant or probable cause, and lacking any legal justification," Plaintiff was then "unlawfully detained, against his will, and transported in the RMP vehicle to the 90th Precinct." (Id. ¶ 42.)

Plaintiff states that his "face, body, and right eye were so swollen and bleeding that he repeatedly pleaded with Schrell, Horun, Katrincic, Morales, Barnhart [(an NYPD officer who works at the 90th Precinct (see id. ¶ 14))], and Joe Doe Police Officers for medical assistance." (Id. ¶ 43.) Plaintiff sat at the 90th precinct for several hours while his right eye was bleeding and received no medical treatment. (Id. ¶ 44.) Plaintiff alleges that he was "told by Schrell, Horun, Katrincic, Morales, Branhart, and Joe Doe Police Officers" that he could not leave because the

NYPD Internal Affairs Bureau ("IAB") was on its way, but no members of IAB interviewed Plaintiff that day. (Id. ¶ 45.)

At approximately 8:00 p.m., four hours after the assault, Plaintiff told Barnhart that he wanted to press charges against Jacobs, O'Connor, and all the John Doe police officers involved. (Id. ¶ 47.) Barnhart allegedly responded by asking if Plaintiff was sure. (Id.) Plaintiff said, "yes, don't you think I should based on what happened?" (Id.) Barnhart then told Cooper he would be right back. (Id.) Plaintiff avers that Schrell, Ryan, Jacobs, Horun, Katrincic, Morales, Barnhart, and the John Doe Police Officers "thereafter . . . fabricated a scenario designed to result in the arrest of [Plaintiff]." (Id. ¶ 48.)

At approximately 10:30 p.m., Barnhart allegedly informed Plaintiff that he was under arrest, placed Plaintiff in a holding cell, and fingerprinted him. (Id. ¶ 49.) Plaintiff asserts that he was arrested "based on Schrell, Ryan, Jacobs, Horun, Katrnic, Morales, Barnhart, and the John Doe Police Officers['] false allegations and/or omissions." (Id. ¶ 49.) The next day, March 21, 2016, Plaintiff was given a desk appearance ticket charging him with assault in the third degree and ordering him to appear in court on April 25, 2016. (Id. ¶ 51.)

On March 23, 2016, the New York Post published an article about the incident that included an allegedly false statement by Ryan to the effect that Plaintiff punched Jacobs in the face, causing bruising and swelling to Jacobs. (Id. ¶ 52.) Plaintiff claims this statement was per se "false and defamatory." (Id.)

On April 25, 2016, Cooper was arraigned under docket number 2016KN023559. (Id. ¶ 53.) He was charged with "[a]ssault in the third degree, [c]riminal [m]ischief in the fourth degree, [a]ttempted assault in the third degree, menacing in the third degree and [h]arassment in the second degree." (Id. ¶ 57.) Plaintiff alleges that "[t]he documents filed by Schrell, Ryan,

4

Jacobs, Horun, Katrincic, Morales, Barnhart and the John Doe Police Officers with the Criminal Court . . . were false, perjurious and filed in order to shield the defendants from liability and continue the malicious prosecution" of Plaintiff. (Id. ¶ 54.) Plaintiff does not, however, identify or otherwise describe these "documents." Similarly, Plaintiff references "aforementioned sworn allegations and documents [that] were filed by Schrell, Ryan, Jacobs, Horun, Katrincic, Morales, Barnhart and the John Doe Police Officers" (id. ¶ 55), without identifying or describing those allegations or documents.

Plaintiff alleges that "[d]espite receiving video evidence that showed the true aggressors, the Kings County District Attorney relentlessly continued the malicious prosecution of [Plaintiff] and continued to ignore the criminal acts committed by Schrell, Ryan, Jacobs, Horun, Katrincic, Morales, Barnhart and the John Doe Police Officers." (Id. ¶ 56.) The criminal case against Plaintiff was ultimately "dismissed on the merits" on June 20, 2016. (Id. ¶ 57.)

In March 2016, O'Connor was charged with assault, menacing, and harassment as a result of the physical altercation with Plaintiff. (Id. ¶ 58.) The court issued an order of protection, ordering O'Connor to stay away from Plaintiff. (Id.) On November 21, 2016, "O'Connor was allowed to negotiate a plea of disorderly conduct and sealing of the record." (Id. ¶ 59.) The order of protection remained in effect until November 20, 2018. (Id. ¶ 60.)

Plaintiff alleges that, "[a]s a direct result of the assault, battery and tortious conduct committed by Schrell, Ryan, Jacobs, Horun, Katrincic, Morales, Barnhart, the John Doe Police Officers and O'Connor," he has been "permanently injured both physically and mentally" (Id. ¶ 61.) Specifically, Plaintiff's right eye was "badly damaged," "requiring a procedure of cataract extraction with intraocular lens implantation." (Id. ¶ 63.)

**B. Procedural History**

On June 30, 2017, Plaintiff filed the FAC. (See FAC; May 31, 2017 Order (explaining that because no defendant has answered the complaint, Defendant may amend as a matter of course).) Three separate motions to dismiss were filed: (1) by the City, Ryan, and Schrell (collectively, the "City Defendants") (see City of New York Notice of Mot. to Dismiss ("City Mot. to Dismiss") (Dkt. 56)); (2) by Jacobs (Jacobs Notice of Mot. to Dismiss ("Jacobs Mot. to Dismiss") (Dkt. 54)); and (3) by O'Connor (O'Connor Mot. to Dismiss ("O'Connor Mot. to Dismiss") (Dkt. 55)). On September 29, 2018, the court granted all three motions and dismissed the FAC without prejudice. See Cooper, 2018 WL 4762248.

Plaintiff filed a second amended complaint on November 28, 2018 and a subsequent motion to amend the complaint on December 4, 2018. (See Second Am. Compl. (Dkt. 63); Letter Mot. to Amend Compl. (Dkt. 64).) The December 4 motion was denied without prejudice pursuant to the court's individual rules, which require any party who wishes to amend a pleading pursuant to Federal Rule of Civil Procedure 15(a)(2) to first request a pre-motion conference. (See Dec. 13, 2018 Order.)

On December 17, 2018, Plaintiff filed a letter seeking a pre-motion conference and attaching a proposed second amended complaint. (Letter Mot. for Pre-Motion Conf. (Dkt. 66).) At the pre-motion conference on January 17, 2019, Plaintiff stated that he wished to withdraw the previously filed proposed second amended complaints and to file a new proposed second amended complaint with his anticipated motion to amend. (See Jan. 18, 2019 Min. Entry.) The court granted Plaintiff's request to withdraw his previous proposed second amended complaints (Dkts. 63, 64-1 & 66-1), granted leave to file a motion to amend, and set a briefing schedule. (See id.)

Plaintiff filed his motion to amend and the operative proposed second amended complaint ("PSAC") on February 1, 2019 (and refiled them on February 4, 2019 with a cover letter).[2] (See Mot. to Amend (Dkt. 68); Mot.; Mem. in Supp. of Mot. (Dkt. 69); PSAC (Dkt. 69-3).) In support of his motion, Plaintiff argues that the PSAC "pleads factual allegations that are sufficient to raise a right to relief above the speculative level" and "adds necessary parties to the action and additional causes of action." (Mem. at 3.) The PSAC asserts the following causes of action:

|   | Claim | Defendants[3] |
|---|---|---|
| 1 | 42 U.S.C. § 1983 False Imprisonment | (Schrell, Ryan, Jacobs, Horun, Katrincic, Morales, Barnhart and John Doe Police Officers) |
| 2 | 42 U.S.C. § 1983 False Arrest | (Schrell, Ryan, Jacobs, Horun, Katrincic, Morales, Barnhart and the John Doe Police Officers) |
| 3 | 42 U.S.C. § 1983 Malicious Prosecution | (Schrell, Ryan, Jacobs, Horun, Katrincic, Morales, Barnhart and the John Doe Police Officers) |
| 4 | Deprivation of Rights under 42 U.S.C. § 1983 | (Schrell, Ryan, Jacobs, Horun, Katrincic, Morales, Barnhart and the John Doe Police Officers) |
| 5 | Excessive Force under 42 U.S.C. § 1983 | (Schrell, Ryan, Jacobs, Horun, Katrincic, Morales, Barnhart and the John Doe Police Officers) |
| 6 | Supervisory Liability under 42 U.S.C. § 1983 | (Katrincic and the John Doe Police officers) |
| 7 | Municipal Liability under 42 U.S.C. § 1983 | (City of New York) |
| 8 | Conspiracy to Deprive Plaintiff of his Constitutional Rights under 42 U.S.C. § 1983 | (Schrell, Ryan, Jacobs, Horun, Katrincic, Morales, Barnhart, the John Doe Police Officers, Mona, and O'Connor) |
| 9 | Assault under Pendent Jurisdiction against O'Connor | O'Connor |
| 10 | Battery under Pendent Jurisdiction against O'Connor | O'Connor |

---

[2] As noted above, the court treats the proposed second amended complaint filed on February 4, 2019 with the cover letter and motion as the operative complaint.

[3] With the exceptions of the state law assault and battery claims, Plaintiff does not make explicit against which Defendants each claim is asserted. Defendants' names inside parentheses thus reflect the court's best guesses based on the descriptions of each claim.

| 11 | Assault under Pendent Jurisdiction against Jacobs | Jacobs |
|----|---------------------------------------------------|--------|
| 12 | Battery under Pendent Jurisdiction against Jacobs | Jacobs |
| 13 | Prima Facie Tort under Pendent Jurisdiction | (All Defendants) |
| 14 | Libel and Slander under Pendent Jurisdiction | (Ryan) |
| 15 | New York State Constitutional Violations | (Schrell, Ryan, Jacobs, Horun, Katrincic, Morales, Barnhart, and the John Doe Police Officers) |
| 16 | False Arrest under Pendent Jurisdiction | (Schrell, Ryan, Jacobs, Horun, Katrincic, Morales, Barnhart, the John Doe Police Officers, and the City of New York) |
| 17 | Malicious Prosecution under Pendent Jurisdiction | (Schrell, Ryan, Jacobs, Horun, Katrincic, Morales, Barnhart and John Doe Police Officers) |
| 18 | Intentional Infliction of Emotional Distress | (All Individual Defendants) |
| 19 | Negligent Infliction of Emotional Distress | (All Defendants) |
| 20 | Larceny under Pendent Jurisdiction | (Jacobs) |

Jacobs, O'Connor, and the City Defendants filed separate oppositions to Plaintiff's motion, all of which advance versions of the same argument—that the PSAC fails to cure deficiencies in the FAC and that amendment would be futile because the PSAC cannot survive a motion to dismiss. (See Jacobs Mem. in Opp'n to Mot. ("Jacobs Opp'n") (Dkt. 72); City Defs. Mem. in Opp'n to Mot. ("City Opp'n") (Dkt. 73); O'Connor Mem. in Opp'n to Mot. ("O'Connor Opp'n") (Dkt. 79).)

The motion was fully briefed on May 28, 2019. (See Pl. Reply ("Reply") (Dkt. 82).)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires." Nevertheless, a motion to amend should be denied if there is an "apparent or declared reason—such as undue delay, bad faith or dilatory motive . . . , repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the

8

opposing party by virtue of the allowance of the amendment, [or] futility of amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962). The decision to grant or deny leave to amend is within the court's discretion. H.L. Hayden Co. v. Siemens Med. Sys., Inc., 112 F.R.D. 417, 419 (S.D.N.Y. 1986) (citations omitted).

"We assess futility as we would a motion to dismiss, determining whether the proposed complaint contains enough facts to state a claim to relief that is plausible on its face." Ind. Pub. Ret. Sys., 818 F.3d at 92 (internal quotation marks and citation omitted); see IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC, 783 F.3d 383, 389 (2d Cir. 2015) ("[T]he standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss.") (citation omitted). "The proposed Amended Complaint may therefore be scrutinized as if defendant's objections to the amendments constituted a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Gopysingh v. Santiago, No. 00-CV-2951 (JSM), 2001 WL 1658280, at *1 (S.D.N.Y. Dec. 26, 2001) (quoting Journal Publ'g Co. v. Am. Home Assur. Co., 771 F. Supp. 632, 635 (S.D.N.Y. 1991)).

In considering the proposed complaint, the court is conscious that "an amended complaint ordinarily supersedes the original, and renders it of no legal effect." Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994) (quoting Int'l Controls Corp. v. Vesco, 556 F.2d 665, 668 (2d Cir. 1977)).

## III.   FEDERAL CLAIMS

The court first considers whether the PSAC plausibly alleges violations of § 1983, and, having found that it does, addresses the statutes of limitations with respect to those claims.

### A. Section 1983 False Arrest and False Imprisonment Claims

Plaintiff asserts claims for false arrest and imprisonment against Schrell, Ryan, Jacobs, Horun, Katrincic, Morales, Barnhart and the John Doe Police Officers. (PSAC ¶¶ 66-91.)

1. Legal Standard

In analyzing a claim for false arrest under § 1983, "federal courts look to the law of the state in which the arrest occurred." Hoyos v. City of New York, 999 F. Supp. 2d 375, 385 (E.D.N.Y. 2013) (citing Gonzalez v. City of Schenectady, 728 F.3d 149, 155 (2d Cir. 2013)). "In New York, the action of false arrest or false imprisonment is derived from the ancient common-law action of trespass and protects the personal interest of freedom from restraint of movement." Jenkins v. City of New York, 478 F.3d 76, 88 (2d Cir. 2007) (citation omitted). "False arrest and false imprisonment are largely synonymous because an imprisonment starts at the moment of arrest." Jenkins v. City of New York, 478 F.3d 76, 88 n.10 (2d Cir. 2007) (citation omitted). To prevail on a claim for false arrest in New York, a plaintiff must plead that "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement[,] and (4) the confinement was not otherwise privileged." Singer v. Fulton Cty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995) (alteration in original) (quoting Broughton v. State, 335 N.E.2d 310, 314 (N.Y. 1975)).

"An arrest is privileged if it is supported by probable cause, which 'is an absolute defense to a false arrest claim.'" Heyliger v. Peters, 71 F. App'x 96, 97 (2d Cir. 2019) (summary order) (quoting Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006)). "Where an officer makes an arrest without a warrant, the presumption arises that the plaintiff's arrest was unlawful." Jenkins, 478 F.3d at 88 (citing Broughton, 335 N.E.2d at 315). "However, this presumption is rebutted if, applying the reasonable, prudent person test, the arresting officer, acting in good faith, had reasonable cause for believing the person to be arrested to have committed [a felony]." Id. (quoting Dillard v. City of Syracuse, 381 N.Y.S.2d 913, 915 (N.Y. App. Div. 1976) (quotation marks omitted)). "A defendant bears the burden of raising and proving the existence of probable cause for a plaintiff's arrest." Frederick v. City of New York, No. 13-CV-897 (MKB), 2016 WL

8711395, at *12 (E.D.N.Y. Mar. 25, 2016) (citing Dickerson v. Napolitano, 604 F.3d 732, 751 (2d Cir. 2010); Curry v. City of Syracuse, 316 F.3d 324, 335 (2d Cir. 2003)). The existence of probable cause is "normally asserted in an answer." Silver v. Kuehbeck, 217 F. App'x 18, 22 (2d Cir. 2007). Nonetheless, dismissal may be warranted "on a pre-answer motion to dismiss where probable cause appears on the face of the complaint, in that facts admitted in the complaint establish each of the elements of the crime" for which the plaintiff was arrested. Frederick, 2016 WL 8711395, at *12 (quoting Silver, 217 F. App'x at 22) (quotation marks omitted and alterations adopted). In Silver, the Second Circuit reviewed the grant of a motion to dismiss a false arrest claim de novo and found that the complaint "on its face support[ed] a finding" that the officer had probable cause to arrest the plaintiff because the "undisputed facts clearly establish[ed] the elements of aggravated harassment," the crime for which the plaintiff had been arrested. Silver, 217 F. App'x at 22.

Probable cause exists when an officer "ha[d] knowledge or reasonably trustworthy information of facts and circumstances that [would be] sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). In making this assessment, courts view "the totality of the circumstances" and consider the "facts available to the officer at the time of the arrest and immediately before it." Caldarola v. Calabrese, 298 F.3d 156, 162, 166 (2d Cir. 2002) (quotations marks and citations omitted). Probable cause can exist "based upon mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994) (citing Colon v. City of New York, 455 N.E.2d 1248, 1250 (1983)). The inquiry is objective, and a court should not

consider the subjective beliefs or motivations of the arresting officer. <u>Whren v. United States</u>, 517 U.S. 806, 812-13 (1996).

    2. <u>Discussion</u>

Here, Plaintiff alleges that he was ordered by Horun and Schrell to get into the RMP and was not permitted to leave despite his request to do so. (<u>See</u> PSAC ¶¶ 40-42.) Horun and Schrell then brought Plaintiff to the 90th Precinct against his will. (<u>See id.</u> ¶¶ 41-42.) Plaintiff alleges that he was then told by Schrell, Horun, Katrincic, Morales, Barnhart, and John Doe Police Officers that he had to remain in the precinct because IAB needed to interview him; however, IAB never did so. (<u>Id.</u> ¶¶ 41-45.) Finally, Plaintiff alleges that approximately six hours after the alleged assault, Barnhart informed Plaintiff that he was under arrest and placed him in a holding cell. (<u>Id.</u> ¶ 49.) The allegations in the PSAC thus satisfy the first three elements of a false arrest or imprisonment claim—Plaintiff was confined against his will and he was conscious of the confinement. The remaining question is whether Plaintiff's arrest was "otherwise privileged." <u>See Singer</u>, 63 F.3d at 118.

Accepting the PSAC's allegations as true, and drawing all reasonable inferences in Plaintiff's favor, the court finds that the face of the PSAC does not make clear that, based on the totality of the circumstances, Horun, Schrell, Katrincic, Morales, Barnhart, and the John Doe Police Officers had probable cause to arrest Plaintiff. City Defendants insist that there is probable cause on the face of the PSAC because Plaintiff was arrested based on the statements of a complaining victim—Jacobs. (City Opp'n at 8.) They argue that the PSAC "describes the same set of facts and circumstances which were detrimental to his FAC" and contend that "[n]o matter how many opportunities plaintiff is afforded, he cannot cure the fact that plaintiff was arrested by an officer based on statement made by an individual involved in the physical altercation." (<u>Id.</u> at 10.)

However, City Defendants provide no citations to the PSAC, and the court can find no mention in the PSAC of a statement by Jacobs or any other "individual involved in the physical alter[c]ation." (See id.) Indeed, the court finds no facts in the PSAC that would "establish each of the elements of the crime" of assault in the third degree, with which Plaintiff was charged. See Frederick, 2016 WL 8711395, at *12 (quoting Silver, 217 F. App'x at 22) (quotation marks omitted and alterations adopted). There are no allegations that Plaintiff assaulted Jacobs or O'Connor or that the arresting officers were given to understand that he had done so. Instead, the PSAC alleges that: Plaintiff was struck by a car and assaulted (PSAC ¶¶ 28-38); he called 911 and was assaulted again, which the 911 operator could hear (id. ¶¶ 37-38); he explained what had happened to Horun and Schrell (id. ¶ 40); he was taken to the 90th Precinct and held there purportedly because, as a civilian injured by an officer, he needed to be interviewed by IAB (id. ¶ 45); and he was then arrested for assault in the third degree (id. ¶ 50). The City Defendants' probable cause defense is simply not apparent on the face of the PSAC.

Therefore, the PSAC states a claim against Schrell, Horun, Katrincic, Morales, Barnhart, and John Doe Police Officers for false arrest and imprisonment pursuant to § 1983, and is not futile in this respect.

With respect to the false arrest and imprisonment claims against Jacobs and Ryan, however, the PSAC contains no facts indicating that Jacobs or Ryan participated in the alleged false arrest and imprisonment of Plaintiff and thus fails to state such claims against them. The PSAC is futile to the extent it attempts to assert such claims.

## B. Section 1983 Malicious Prosecution

Plaintiff also asserts a claim against Schrell, Ryan, Jacobs, Horun, Katrincic, Morales, Barnhart and the John Doe Police Officers for malicious prosecution. (See PSAC ¶¶ 92-99.)

13

1. Legal Standard

To state a claim for malicious prosecution under § 1983, a plaintiff must allege: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Manganiello v. City of New York, 612 F.3d 149, 161 (2d Cir. 2010) (citation and quotation marks omitted).

As a general rule, "[o]nce a criminal Defendant has been formally charged, the chain of causation between the officer's conduct and the claim of malicious prosecution is broken by the intervening actions of the prosecutor, thereby abolishing the officer's responsibility for the prosecution." Williams v. City of New York, No. 02-CV-3693 (CBM), 2003 WL 22434151, at *6 (S.D.N.Y. Oct. 23, 2003) (citing Townes v. City of New York, 176 F.3d 138, 147 (2d Cir. 1999)). This is because a defendant—even a police officer—"must do more than report the crime or give testimony" in order to have initiated a criminal proceeding for the purposes of a malicious prosecution claim. Manganiello, 612 F.3d at 163. "Although there is a presumption that a prosecutor exercises independent judgment in deciding whether to initiate and continue a criminal proceeding, an arresting officer may be held liable for malicious prosecution when a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, or when she withholds relevant and material information." Mitchell v. Victoria Home, 434 F. Supp. 2d 219, 227 (S.D.N.Y. 2006) (quotation marks and citations omitted).

In order to adequately plead a malicious prosecution claim against a police officer, a plaintiff must allege facts "showing that the officer brought formal charges and had the person arraigned, or filled out complaining and corroborating affidavits, or swore to and signed a felony complaint." Myers v. Moore, 326 F.R.D. 50, 60 (S.D.N.Y. 2018) (quotations and citation marks

omitted) (alterations adopted). "Accordingly, to state a malicious prosecution claim against any individual officer here, Plaintiff must allege that that officer engaged in such conduct. Allegations that he merely participated in Plaintiff's arrest are not sufficient." Id. (quotations and citation marks omitted) (alterations adopted).

   2. Discussion

Here, the PSAC does not plead facts demonstrating which Defendant is responsible for the alleged malicious prosecution of Plaintiff. Instead, it engages in group pleading, discusses the seven Individual Defendants and ten John Doe Defendants together without pleading facts demonstrating what each did that makes him liable for malicious prosecution. (See PSAC ¶ 54 ("The documents filed by Schrell, Ryan, Jacobs, Horun, Katrincic, Morales, Barnhart and the John Doe Police Officers with the Criminal Court under said docket number were false, perjurious and filed in order to shield the defendants from liability and continue the malicious prosecution of [Plaintiff]."); id. ¶ 94 ("Schrell, Ryan, Jacobs, Horun, Katrincic, Morales, Barnhart and the John Doe Police Officers initiated a malicious prosecution against Cooper by falsely charging him with misdemeanor counts, forwarding false information to prosecutors and filing perjurious documents in support of the prosecution.")). Accordingly, the PSAC does not sufficiently plead a malicious prosecution claim. See Costello v. City of Burlington, 632 F.3d 41, 48-49 (2d Cir. 2011) (holding that failure to allege facts concerning the personal involvement of any defendant is fatal to a plaintiff's claims under § 1983); Myers, 326 F.R.D. at 60 (dismissing malicious prosecution claim where the complaint relied on group pleading); Leneau v. Ponte, No. 16-CV-776 (GHW), 2018 WL 566456, at *15 (S.D.N.Y. Jan. 25, 2018) ("[In § 1983 cases,] complaints that rely on group pleading and fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim.") (internal quotation marks and citations omitted); Wright v. Orleans Cty., No. 14-CV-622A, 2015 WL 5316410, at

*13 (W.D.N.Y. Sept. 10, 2015) (observing that because "'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983 . . . [p]leadings that fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim") (quoting Spavone v. N.Y. State Dep't of Corr. Servs., 719 F.3d 127, 135 (2d Cir. 2013)). Amendment would thus be futile in this respect.

### C. Section 1983 Excessive Force Claim

The PSAC also asserts an excessive force claim under § 1983 against Schrell, Ryan, Jacobs, Horun, Katrincic, Morales, Barnhart and the John Doe Police Officers. (PSAC ¶¶ 107-10.) For the following reasons, the court finds that this claim would not survive a motion to dismiss and that amendment in this respect would therefore be futile.

### 1. Defendants other than Jacobs

Failure to allege facts concerning the personal involvement of any defendant is fatal to a plaintiff's claims under § 1983. See Costello, 632 F.3d at 48-49 (citing Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)). For this reason, the court previously dismissed Plaintiff's § 1983 excessive force claim against the Individual Defendants except Jacobs. See Cooper, 2018 WL 4762248, at *6.

Plaintiff's excessive force claim stems from Plaintiff's physical altercation with Jacobs and O'Connor. (See PSAC ¶¶ 29-35.) Although Plaintiff asserts that "[t]he level of force employed by Schrell, Ryan, Jacobs, Horun, Katrincic, Morales, Barnhart, and the John Doe Police Officers were [sic] excessive . . . " (PSAC ¶ 108), the PSAC does not actually allege that any individuals other than Jacobs and O'Connor were involved in the physical altercation. For this reason, the court finds that Plaintiff's excessive force claim against Schrell, Ryan, Horun, Katrincic, Morales, Barnhart and the John Doe Police Officers would not survive a motion to dismiss.

16

2. Jacobs

### a. Legal Standard

In order to state a claim under § 1983, a plaintiff must allege that he has been

(1) deprived of a right, privilege or immunity secured by the Constitution or laws of the United

States, and that (2) this deprivation was done under color of law. § 1983; accord Pitchell v.

Callan, 13 F.3d 545, 547 (2d Cir. 1994) (citing Parratt v. Taylor, 451 U.S. 527, 535 (1981)). The

"under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no

matter how discriminatory or wrongful.'" Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50

(1999) (quoting Blum v. Yaretsky, 457 U.S. 991, 1002 (1982)). An individual acts under the

color of law when he or she exercises power "made possible only because [he or she] is clothed

with the authority of state law." United States v. Classic, 313 U.S. 299, 326 (1941); see also

United States v. Walsh, 194 F.3d 37, 50 (2d Cir. 1999) ("The Supreme Court has broadly

interpreted the color of law requirement, concluding that misuse of power, possessed by virtue of

state law and made possible only because the wrongdoer is clothed with the authority of state

law, is action taken under color of state law.") (alteration adopted) (citation and internal

quotation marks omitted).

In the context of off-duty police officers, "[c]ourts have had frequent occasion to interpret

the term 'color of law' for the purposes of § 1983 actions, and it is by now axiomatic that 'under

"color" of law means under "pretense" of law' and that 'acts of officers in the ambit of their

personal pursuits are plainly excluded.'" Pitchell, 13 F.3d at 547-48 (quoting Screws v. United

States, 325 U.S. 91, 111 (1945)). "[T]here is no bright line test for distinguishing 'personal

pursuits' from activities taken under color of law." Id. at 548. The relevant question is not

whether the officer "was on or off duty when the challenged incident occurred," but whether the

officer "albeit off-duty, nonetheless invokes the real or apparent power of the police department"

or "perform[s] duties prescribed generally for police officers." Id. (citations omitted); see also Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003) ("We have no doubt that when an officer identifies himself as a police officer and uses his service pistol, he acts under color of law."). In analyzing whether an off-duty police officer acted under the color of law, courts consider whether the officer: (1) was off-duty; (2) identified himself as an officer of the law; (3) was in uniform; (4) was authorized to make an arrest at the time; (5) was carrying handcuffs; (6) was carrying any weapons; (7) flashed a police badge; and (8) placed the plaintiff under arrest or otherwise detained him. Cotz v. Mastroeni, 476 F. Supp. 2d 332, 372 (S.D.N.Y. 2007) (citations omitted).

### b. Discussion

The PSAC contains no facts that render plausible the assertion that Jacobs was acting "under color of State law." (See PSAC ¶ 20.) For example, the PSAC does not allege facts showing that Jacobs (1) was on-duty at the time of the altercation; (2) identified himself as an officer of the law; (3) wore a uniform or carried handcuffs; (4) revealed a police badge; or (5) placed plaintiff under arrest or otherwise detained him. See Cotz, 476 F. Supp. at 372.

Plaintiff asserts that Jacobs was "at all times relevant herein . . . acting under color of State law" (PSAC ¶ 20) and was a "duly sworn NYPD officer[] . . . acting . . . according to [his] official duties" (id. ¶ 23). Such conclusory allegations, however, are insufficient to state a claim under § 1983. See Stoeckley v. City of New York, 700 F. Supp. 2d 489, 499 (S.D.N.Y. 2010) ("[T]hese are assertions of legal conclusions rather than of fact . . . [and the court is] not obliged to accept them as true for purposes of the motion.").

While Plaintiff does allege that he felt that Jacobs was carrying a firearm during the altercation (id. ¶ 32), "the mere act of possessing a firearm does not render an off-duty police officer's actions as having occurred 'under color of law.'" Cooper, 2018 WL 4762248, at *7

(citing Pitchell, 13 F.3d at 548; Bonsignore v. City of New York, 683 F.2d 635, 639 (2d Cir. 1982)). Indeed, Plaintiff does not allege that he learned that Jacobs was a police officer at any time during the physical altercation. Instead, he alleges that he saw Jacobs display his badge to another officer and say that he was "on the job." (Id. ¶ 41.) This statement, made after the alleged assault is not sufficient to establish that Jacobs was acting under color of state law in assaulting Plaintiff. See Stoeckley, 700 F. Supp. 2d at 493 (finding that defendant was not acting under color of state law where plaintiffs first learned that the defendant was a police officer "after the incident had concluded and the officers who responded to the 911 call came out of the grocery store into which [the defendant] had gone and said to the plaintiffs, 'Don't worry, he's a cop.'")

Ultimately, "no rational fact finder could determine that [Jacobs] was acting under color of state law prior to the time he displayed his badge . . . and identified himself as a police officer. Thus, there is no predicate for liability under section 1983 . . . for the physical altercation that occurred before [Jacobs] identified himself as a police officer." McNamara v. City of New York, No. 06-CV-5585 (LTS), 2009 WL 735135, at *3 (S.D.N.Y. Mar. 20, 2009).

Plaintiff contends that "[a]lthough Plaintiff originally perceived (and alleged upon information and belief in the previous complaints) that Jacobs was off duty at the time of the incident, the [PSAC] alleges that Jacobs was on duty at the time of the incident" (Reply (Dkt. 82) at 11). However, Plaintiff provides no citation to the PSAC for this assertion, and the court can find no such allegation in the PSAC.

Because the PSAC contains no factual, non-conclusory allegations that Jacobs was acting under color of state law for purposes of Plaintiff's excessive force claim, the excessive force claim against Jacobs would not survive a motion to dismiss.

19

**D. Section 1983 Supervisory Liability**

Plaintiff asserts a claim against "supervisory defendants, Katrincic and the John Doe Police officers" for "caus[ing] [Plaintiff] constitutional injury by being deliberately or consciously indifferent to the rights of others in failing to properly supervise and train their subordinate employees." (PSAC ¶ 112.)

### 1. Legal Standard

"A defendant's supervisory authority is insufficient in itself to demonstrate liability under § 1983." LaMagna v. Brown, 474 F. App'x 788, 789 (2d Cir. 2012) (citing Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003)). Instead, "to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation." Grullon v. City of New Haven, 720 F.3d 133, 138 (2d Cir. 2013) (collecting cases). A supervisory defendant's personal involvement can be shown by evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [others] by failing to act on information indicating that unconstitutional acts were occurring.

Id. at 139 (emphasis omitted) (quoting Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)). Accordingly, "supervisory liability may be imposed when an official has actual or constructive notice of unconstitutional practices and demonstrates 'gross negligence' or 'deliberate indifference' by failing to act." Meriwether v. Coughlin, 879 F.2d 1037, 1048 (2d Cir. 1989) (quoting McCann v. Coughlin, 698 F.2d 112, 125 (2d Cir. 1983)).

2. Discussion

Although this claim is asserted against "supervisory defendants, Katrincic and the John Doe Police officers," the term "supervisory defendants" is not defined in the PSAC and Katrincic is never identified as a supervisor. Consequently, the court construes this claim as against John Doe defendants presumably serving in supervisory roles. Regardless, the court finds that the PSAC contains insufficient allegations as to any "supervisory defendants"—Katrnicic, John Does 1-10, or anyone else—or any actions or omissions related to their purported supervisory roles. Accordingly, the court finds that this claim would not survive a motion to dismiss. Amendment in this respect would thus be futile.

**E. Section 1983 Municipal Liability**

Plaintiff asserts a § 1983 claim against the City. (See PSAC ¶¶ 114-23.)

1. Legal Standard

"[A] municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell v. Department of Social Services, 436 U.S. 658, 691 (1978). Instead, municipalities are only liable under § 1983 for constitutional deprivations resulting from a governmental policy or custom. Id. at 694; see Lozman v. City of Riviera Beach, 138 S. Ct. 1945, 1951 (2018) ("[I]n a § 1983 case[,] a city or other local governmental entity cannot be subject to liability at all unless the harm was caused in the implementation of 'official municipal policy.'" (quoting Monell, 436 U.S. at 691)). "Generally, merely asserting, in the absence of factual allegations in support, that a municipal entity has a custom or policy that denies a plaintiff a constitutional right is insufficient to establish a plausible claim." Salgado v. DuBois, No. 17-CV-6040 (NSR), 2019 WL 1409808, at *7 (S.D.N.Y. Mar. 28, 2019) (citing Batista v. Rodriguez, 702 F.2d 393, 397, 399 (2d Cir. 1983)). A plaintiff may demonstrate that such a policy or custom exists by introducing evidence of one of the following:

(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policy makers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

Skates v. Incorporated Village of Freeport, 265 F. Supp. 3d 222, 235 (E.D.N.Y. 2017) (quoting

Jones v. Bay Shore Union Free Sch. Dist., 170 F. Supp. 3d 420, 438 (E.D.N.Y. 2016)). A

plaintiff bringing a Monell claim also must establish a causal connection between the

municipality's official policy and the underlying constitutional violation. See City of Canton v.

Harris, 489 U.S. 378, 385 (1989).

### 2. Discussion

Here, no factual allegations in the PSAC suggest that a municipal entity had a custom or

policy that deprived Plaintiff of his constitutional rights. Indeed, Plaintiff advances no

arguments in support of his Monell claim in his briefs. (See Mot.; Reply.) Therefore, Plaintiff's

PSAC does not state a facially plausible claim for Monell liability against the City of New York

and would not survive a motion to dismiss. The amendment would thus be futile in this respect.

### F. Section 1983 Conspiracy

Plaintiff alleges that Schrell, Jacobs, Horun, Katrincic, Morales, Barnhart, the John Doe

Police Officers, Mona, and O'Connor conspired to violate his constitutional rights in violation of

§ 1983.

### 1. Legal Standard

To survive a motion to dismiss a § 1983 conspiracy claim, a complaint must allege: "(1)

an agreement between two or more state actors or an agreement between a state actor and private

party; (2) concerted acts to inflict an unconstitutional injury; and (3) an overt act done in

furtherance of the goal of causing damages." Coggins v. Cty. of Nassau, 988 F. Supp. 2d 231, 246 (E.D.N.Y. 2013), aff'd in part, appeal dismissed in part sub nom., Coggins v. Buonora, 776 F.3d 108 (2d Cir. 2015) (citing, inter alia, Nealy v. Berger, No. 08-CV-1322 (JFB), 2009 WL 704804, at *5 (E.D.N.Y. Mar. 16, 2009)). "A plaintiff is not required to list the place and date of defendants['] meetings and the summary of their conversations when he pleads conspiracy, but the pleadings must present facts tending to show agreement and concerted action." Anilao v. Spota, 340 F. Supp. 3d 224, 255 (E.D.N.Y. 2018). Indeed, while "conclusory allegations" of a § 1983 conspiracy are insufficient, "such conspiracies are by their very nature secretive operations, and may have to be proven by circumstantial, rather than direct, evidence." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999) (citations and quotation marks omitted).

    2.  Discussion

The allegations in the PSAC raise a plausible inference of conspiracy as to Schrell, Jacobs, Horun, Katrincic, Morales, Barnhart, and the John Doe Police Officers.

Plaintiff alleges that he called 911 during the assault and that the 911 operator was able to hear Jacobs and O'Connor assaulting him. (Id. ¶¶ 36-38.) The 911 operator told Plaintiff that the police were on the way. (Id. ¶ 38.) Plaintiff was then intercepted by Horun and Schrell in an NYPD RMP vehicle. (Id. ¶ 39.) Plaintiff alleges that he was visibly injured—his face, body, and eye were swollen and bleeding. (See id. ¶¶ 43-44.) Plaintiff told Horun and Schrell what had happened to him, and Horun told him to "shut the fuck up." (Id. ¶ 40.) Plaintiff then observed Jacobs showing his badge to the other officers and heard him telling them that he was "on the job." (Id. ¶ 41.) After that, Katrincic and Morales told Plaintiff he was not free to leave, and he was taken against his will to the 90th Precinct. (Id. ¶¶ 41-44.) Plaintiff asked for medical treatment, but "Schrell, Horun, Katrincic, Morales, Barnhart and John Doe Police Officers all told [Plaintiff] that he was fine." (Id. ¶ 44.) Plaintiff asked to leave, but was told that, as a

civilian injured by an officer, he needed to remain at the precinct to speak with IAB. (Id. ¶¶ 44-45.)

Around four hours after the incident, and while he was still waiting for IAB, Plaintiff allegedly told Barnhart that he wanted to press charges against Jacobs, O'Connor, and all John Doe officers involved. (Id. ¶ 47.) At that point, Barnhart asked, "are you sure?" to which Plaintiff replied, "yes, don't you think I should based on what happened?" (Id. ¶ 47.) Barnhart responded by telling Plaintiff he would "be right back." (Id.) About two hours later, Barnhart informed Plaintiff that he was under arrest, placed him in a holding cell, and fingerprinted him. (Id.)

The court finds that these allegations, while limited, are sufficient to raise a plausible inference of a conspiracy to violate Plaintiff's right to be free from false arrest. Taken together, they "tend[] to show agreement and concerted action" on the part of Schrell, Jacobs, Horun, Katrincic, Morales, and Barnhart, see Anilao, 340 F. Supp. 3d at 255, and provide "the factual basis necessary to enable defendants intelligently to prepare their defense," Ciambriello v. Cty. of Nassau, 292 F.3d 307, 325 (2d Cir. 2002) (alteration adopted) (quoting Ostrer v. Aronwald, 567 F.2d 551, 553 (2d Cir.1977)). Amendment with respect to these defendants would not, therefore, be futile.

Plaintiff fails, however, to allege sufficient facts in the PSAC to show that O'Connor, Mona, or the John Doe Police Officers were part of the alleged conspiracy to violate his rights. Although O'Connor is alleged to have taken part in the physical altercation involving Plaintiff, there are no allegations indicating that he participated in the alleged conspiracy. Nor are there any specific factual allegations to the effect that John Does were involved.

With respect to Mona, the § 1983 conspiracy claim is the only federal complaint brought against the retired NYPD lieutenant. (See PSAC ¶¶ 17, 124-132.) In this count, Plaintiff asserts that Mona conspired with "Schrell, Ryan, Jacobs, Horun, Katrincic, Morales, Barnhart and the John Doe Police Officers and . . . O'Connor" to deprive Plaintiff of his constitutional rights (see PSAC ¶ 126); however, the PSAC is entirely devoid of facts supporting such a conclusory statement. Plaintiff does at one point refer to "the assault inflicted on him by Jacobs, O'Connor, Mona and the John Doe Police officers" (id. ¶ 46), but the PSAC does not allege that Mona participated in the assault described (see id. ¶¶ 29-38). The PSAC merely alleges that Mona was a passenger in Jacobs's vehicle at the time that the vehicle struck Plaintiff. (PSAC ¶¶ 17, 27.)

Plaintiff's § 1983 conspiracy claim against O'Connor, Mona, and John Doe Police Officers thus would not survive a motion to dismiss, rendering amendment futile in this respect.

## G. Statute of Limitations

The only federal claims that would survive a motion to dismiss are thus the § 1983 false arrest, false imprisonment, and conspiracy claims. The court also finds that these claims are not barred by the statute of limitations.

Since § 1983 does not provide a specific statute of limitations, "courts apply the statute of limitations for personal injury actions under state law." Hogan v. Fischer, 738 F.3d 509, 517 (2d Cir. 2013) (citations omitted). "Section 1983 actions filed in New York are therefore subject to a three-year statute of limitations." Id. (citing Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002); N.Y. C.P.L.R. § 214). However, "federal law governs when a federal claim accrues," and, under federal law, "a claim accrues when the plaintiff has a complete and present cause of action." DeMartino v. New York, No. 12-CV-3319 (SJF), 2013 WL 3226789, at *13 (E.D.N.Y. June 24, 2013) (citing, inter alia, Wallace v. Kato, 549 U.S. 384, 388 (2007)).

1. <u>False Arrest and False Imprisonment</u>

"The statute of limitations for a claim of false imprisonment—and false arrest, which is a species of false imprisonment—begins to run 'when the alleged false imprisonment ends.'" Peterec v. Hilliard, No. 12-CV-3944 (CS), 2013 WL 5178328, at *4 (S.D.N.Y. Sept. 16, 2013) (quoting Wallace, 549 U.S. at 388-89). False imprisonment ends when "the victim becomes held pursuant to legal process—when, for example, he is bound over by a magistrate or arraigned on charges." Lynch v. Suffolk Cty. Police Dep't, Inc., 348 F. App'x 672, 675 (2d Cir. 2009) (summary order) (alteration adopted and quotation marks omitted). Likewise, damages for false arrest "cover the time of detention up until issuance of process or arraignment, but not more." Wallace, 549 U.S. at 390 (internal quotation marks omitted).

Here, Plaintiff was given a desk appearance ticket on March 21, 2016 (PSAC ¶ 51), and thus his false arrest and imprisonment claims accrued on that date. See DeMartino, 2013 WL 3226789, at *13 (holding that § 1983 false arrest claim accrued when plaintiff was issued appearance ticket); Weir v. City of New York, No. 05-CV-9268 (DFE), 2008 WL 3363129, at *10 (S.D.N.Y. Aug. 11, 2008) ("[Plaintiff's] § 1983 claim for false arrest accrued . . . when he was given the desk appearance ticket and released from the stationhouse."). Accordingly, the three-year statute of limitations for Plaintiff's § 1983 false arrest and imprisonment claims ran on March 21, 2019.

As explained, supra, Plaintiff filed several versions of his proposed second amended complaint. Each of these versions named Horun, Katrincic, Barnhart, Morales, and Mona and added a false imprisonment claim. (See Withdrawn Second Am. Compl.) Because even the latest of these filings was filed before the statute of limitations had run, the court need not determine which of these filings should be considered the commencement of new claims for statute of limitations purposes. See, e.g., Bensinger v. Denbury Res. Inc., 31 F. Supp. 3d 503,

509 (E.D.N.Y. 2014) (holding that submission of pre-motion letter constituted the commencement of new claims for statute of limitations purposes because "[d]efendants were on notice of [the added plaintiff's] claims when Plaintiffs submitted their pre-motion letter and included a draft amended complaint"); Teri v. Spinelli, 980 F. Supp. 2d 366, 377 (E.D.N.Y. 2013) (plaintiffs' letter request for leave to amend the complaint commenced the action against the added defendant for statute of limitations purposes because the added defendant "had notice of the claims against him before the statute of limitations period had run").

Thus, Plaintiff's § 1983 false arrest and false imprisonment claims are not time-barred as to any Defendants.

### 2. Conspiracy Claim

Plaintiff's conspiracy claim under § 1983 against the newly added Defendants is similarly not time-barred. For a conspiracy claim, "the cause of action accrues and the statute of limitations begins to run from the time of commission of the overt act alleged to have caused damage"—here, the alleged false arrest or imprisonment. See Chodos v. F.B.I., 559 F. Supp. 69, 74 (S.D.N.Y.), aff'd, 697 F.2d 289 (2d Cir. 1982).

Because the alleged false arrest or imprisonment accrued on March 21, 2016, the conspiracy also accrued on March 21, 2016, meaning that the statute of limitations expired on March 21, 2019. See Nunez v. Mitchell, No. 17-CV-9734 (AJN), 2018 WL 4301370, at *3 (S.D.N.Y. Sept. 10, 2018) ("Because the alleged overt acts occurred on the date of Plaintiff's arrest, the conspiracy also accrued [on that date].") As noted above, Plaintiff first filed a second amended complaint naming Horun, Katrincic, Morales, Barnhart, and Mona on November 28, 2018 and filed the instant PSAC on February 1, 2019—within the three-year statute of limitations. Plaintiff's conspiracy claim as to all Defendants is therefore timely.

## IV.   STATE LAW CLAIMS

Plaintiff also asserts twelve state law claims against Defendants.  Defendants raise

statute of limitations and jurisdictional challenges to those claims as well as challenges to the

sufficiency of the pleadings.

### 1.   Assault and Battery

As he did in the FAC, Plaintiff asserts claims for assault and battery against O'Connor

and Jacobs.  (PSAC ¶¶ 26-38, 133-148.)  These allegations are sufficient to state a claim to relief

that is plausible on its face.

Jacobs argues that all of Plaintiff's state claims are untimely because they do not relate

back to the original pleading.  (See Jacobs Opp'n at ECF pp. 6-7.)  However, because the assault

and battery claims against Jacobs and O'Connor were all asserted in the original complaint,

which was filed within the one-year statute of limitations, see N.Y. C.P.L.R. 215(3), they are not

time-barred.

O'Connor, in turn, argues that the assault and battery claims are properly brought only in

New York state court.  (See O'Connor Opp'n at ECF pp. 5-6.)  The court disagrees.  Subject to

the requirements of 28 U.S.C. § 1367(b) and (c), district courts may exercise supplemental

jurisdiction over claims that form part of the "same case or controversy" as a claim over which

the court has original jurisdiction.  28 U.S.C. § 1367(a).  To determine whether claims form part

of the "same case or controversy," the court should ask whether the claims "derive from a

common nucleus of operative fact."  Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d

328, 335 (2d Cir. 2006) (citation and internal quotation marks omitted).

Here, the facts underlying Plaintiff's § 1983 false arrest, false imprisonment, and

conspiracy claims and those underlying his assault and battery claims—namely the

circumstances of the alleged assault and battery by Jacobs and O'Connor—"substantially

overlap, creating a common nucleus of operative fact." Id. at 336 (quoting Lyndonville Sav. Bank & Trust Co. v. Lussier, 211 F.3d 697, 704 (2d Cir. 2000) (quotation marks omitted and alteration adopted)). Supplemental jurisdiction would thus be appropriate.

### 2. Prima Facie Tort under Pendent Jurisdiction

Plaintiff also asserts a claim for prima facie tort against all Defendants. (PSAC ¶¶ 149-151.) The four elements for a prima facie tort in New York State are: "(1) intentional infliction of harm, (2) causing special damages, (3) without excuse or justification, and (4) by an act or series of acts that would otherwise be lawful." Restis v. Am. Coal. Against Nuclear Iran, Inc., 53 F. Supp. 3d 705, 730 (S.D.N.Y. 2014) (citing Ross v. Mitsui Fudosan, Inc., 2 F. Supp. 2d 522, 531 (S.D.N.Y. 1998)).

Prima facie tort is a "highly disfavored" cause of action in New York. Restis, 53 F. Supp. 3d at 730 n.15; see Santos v. Barber, No. 17-CV-6475, 2017 WL 6409152, at *7 (W.D.N.Y. Dec. 15, 2017) ("New York law does not permit the use of a prima facie tort cause of action to act as a catch all alternative for every cause of action which cannot stand on its own legs." (citations and quotation marks omitted)); Hall v. City of White Plains, 185 F. Supp. 2d 293, 304 (S.D.N.Y. 2002); Nevin v. Citibank, N.A., 107 F. Supp. 2d 333, 347 (S.D.N.Y. 2000) ("[I]t is well settled that any claim covered by a traditional tort cannot be the basis of a prima facie tort—even if the traditional tort claim turns out not to be viable.").

Here, Plaintiff has failed to state a prima facie tort claim. First, Plaintiff sets forth no facts alleging that one or more Defendants were motivated by malice—let alone "that malice was the sole motivation for their acts." See Chen v. United States, 854 F.2d 622, 629 (2d Cir. 1988). Second, false arrest, assault, and battery do not constitute conduct that is otherwise lawful, nor does Plaintiff allege that it is. Finally, Plaintiff does not plead any special damages. See Katz v. Travelers, 241 F. Supp. 3d 397, 409 (E.D.N.Y. 2017) (noting that the plaintiffs' prima facie tort

claim failed because they failed to plead special damages); Bilinski v. Keith Haring Found., Inc., 96 F. Supp. 3d 35, 51 (S.D.N.Y.) ("Pleading damages as a round number with no attempt at itemization alleges general rather than special damages." (citation omitted)), aff'd in part, 632 F. App'x 637 (2d Cir. 2015).

Therefore, Plaintiff's claim for prima facie tort would not survive a motion to dismiss and amendment would be futile in this respect.

### 3. Libel and Slander under Pendent Jurisdiction

Plaintiff brings a claim for "libel and slander" against Ryan in connection with Ryan's alleged statement to the New York Post, in which he claimed that Plaintiff had punched Jacobs in the face, causing bruising and swelling. (PSAC ¶ 12.; see also Compl. ¶¶ 152-54; FAC ¶¶ 142-44.)

"A claim for 'defamation' is an umbrella term that incorporates the 'twin torts of libel and slander.'" Cortes v. Twenty-First Century Fox Am., Inc., 285 F. Supp. 3d 629, 641 (S.D.N.Y.), aff'd, 751 F. App'x 69 (2d Cir. 2018) (quoting Albert v. Loksen, 239 F.3d 256, 265 (2d Cir. 2001) (citations omitted)). "To state a claim for defamation under New York Law, the plaintiff must allege (1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on [the] part of the publisher; (4) that either constitutes defamation per se or caused 'special damages.'" Linell v. N.Y.C. Dep't of Educ., No. 15-CV-5085 (CBA), 2017 WL 880853, at *2 (E.D.N.Y. Mar. 3, 2017) (quoting Thorsen v. Sons of Norway, 996 F. Supp. 2d 143, 163 (E.D.N.Y. 2014)).

The court construes Plaintiff's defamation claim as one for defamation per se because Plaintiff does not adequately allege special harm (see PSAC ¶ 154 ("As a result of the foregoing, [Plaintiff's] reputation has been permanently damaged and therefore [Plaintiff] is entitled to

damages.")), and instead claims that Ryan's statement to the New York Post was "per [se] false and defamatory." (PSAC ¶ 153.)

"Defamation per se consists of any one of the following: (1) a statement charging an individual with a serious crime; (2) a statement that tends to injure another in his trade, business, or profession; (3) a statement that claims an individual has a loathsome disease; or (4) a statement imputing unchastity to a woman." Travelex Currency Servs., Inc. v. Puente Enterprises, Inc., No. 18-CV-1736 (ER), 2019 WL 1259102, at *8 (S.D.N.Y. Mar. 19, 2019) (citations and quotation marks omitted). "Defamatory statements should be construed as they would be commonly understood in the context of their publication and a court should not render statements actionable by giving them a strained or artificial construction." Cortes, 285 F. Supp. 3d at 641 (citation and quotation marks omitted) (alterations adopted).

"In New York, a statement that falsely charges a person [] with 'an indictable offense upon conviction of which punishment may be inflicted' can be considered slanderous per se." Ruta v. Delta Airlines, Inc., 322 F. Supp. 2d 391, 405 (S.D.N.Y. 2004) (quoting Privitera v. Town of Phelps, 435 N.Y.S.2d 402, 404 (N.Y. App. Div. 1981)). Assault is a crime under both state and federal law. Under New York law, most assaults are felonies, see N.Y. Penal Law §§ 120.05 (assault in the second degree), 120.10 (assault in the first degree), 120.08 (assault on a police officer), and 120.11 (aggravated assault upon a police officer), although at least one is a misdemeanor, see id. § 120.00 (assault in the third degree). In New York, however, both felonies and misdemeanors are "indictable offenses" that may form the basis for defamation per se. See Weldy v. Piedmont Airlines, Inc., 985 F.2d 57, 62 (2d Cir. 1993) (citing Privitera, 435 N.Y.S.2d at 404). Under federal law, there are at least three statutes under which assault can be a felony and therefore an indictable offense. See 18 U.S.C.A. §§ 111-13.

31

Because "assault is a serious, indictable crime under both state and federal law," <u>Weldy</u>, 985 F.2d at 62, Ryan's statement that Plaintiff punched Jacobs, a police officer, in the face causing bruising and swelling, is a sufficient ground for alleging defamation per se. <u>See id.</u> (finding that accusation that plaintiff was being fired for "aggravated assault" provided a sufficient basis for holding defendant liable under a slander per se cause of action); <u>Ruta</u>, 322 F. Supp. 2d at 405 (granting leave to amend complaint because statement accusing plaintiff of kicking and injuring defendant was a sufficient ground for alleging slander per se); <u>cf. Burdick v. Verizon Commc'ns, Inc.</u>, 758 N.Y.S.2d 877 (N.Y. App. Div. 2003) (statements that plaintiff "hit" or "took a swing at" a third party while plaintiff was engaged in a labor protest were not slanderous per se because there was no allegation that the person "hit" was injured).

The court further finds that Plaintiff, in alleging that Ryan made a knowingly false statement to the New York Post to the effect that Plaintiff punched Jacobs in the face (<u>see</u> PSAC ¶¶ 52, 153), has alleged sufficient facts to satisfy the other elements of the tort.

Plaintiff's defamation claim would thus survive a motion to dismiss and amendment in this respect would not be futile.[4]

### 4.  New York State Constitutional Violations

Plaintiff asserts a claim against all Defendants for violations of "the protections guaranteed to [Plaintiff] by the New York State Constitution, Article 1, Sections 6, 8, 11 and 12, including but not limited to the right to be free from, unreasonable seizure of their person, including excessive force." (PSAC ¶ 156.)

---

[4] The court also notes that because this defamation claim against Ryan was asserted in the original complaint, which was filed within the one-year statute of limitations, <u>see</u> N.Y. C.P.L.R. § 215(3), it is not time-barred.

Plaintiff has alleged no facts to support his purported claims under Article 1, §§ 6 (grand jury; waiver of indictment; right to counsel; informing accused; double jeopardy; self-incrimination; waiver of immunity by public officers; due process of law), 8 (freedom of speech and press; criminal prosecutions for libel), and 11 (equal protection of laws; discrimination in civil rights prohibited). Amendment in these respects is therefore futile.

With respect to Article 1 § 12, Plaintiff contends that Defendants violated his rights to be free from unreasonable seizure and excessive force.[5] (See PSAC ¶ 156.) See Bancroft v. City of Mount Vernon, 672 F. Supp. 2d 391, 404 (S.D.N.Y. 2009) (noting that excessive-force claims brought by arrestees are analyzed under Article One, § 12, of the New York State Constitution, which is New York's analogue to the Fourth Amendment to the U.S. Constitution).

"In Brown v. State, the New York Court of Appeals recognized the viability of a constitutional-tort claim—that is, a cause of action for damages based on official conduct that violated the State's Constitution." Sullivan v. City of New York, No. 17-CV-3779 (KPF), 2018 WL 3368706, at *20 (S.D.N.Y. July 10, 2018) (citing Brown v. State, 674 N.E.2d 1129, 1132-33, 1136 (N.Y. 1996); see. The Court of Appeals subsequently narrowed Brown's already "narrow remedy," holding that a private right of action for violations of the New York State Constitution exists only where such a right of action is necessary to address both "the private interest that citizens harmed by constitutional violations have an avenue of redress, and the public interest that future violations be deterred." Martinez v. City of Schenectady, 761 N.E.2d

---

[5] Article I, Section 12 of the New York State Constitution states in relevant part:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

N.Y. Const., art. I, § 12.

560, 563 (N.Y. 2001). Accordingly, New York courts have held that a private right of action for violations of the state constitution is unavailable if an alternative remedy is available elsewhere, such as under state tort law or through a New York Civil Practice Law and Rules Article 78 action. See, e.g., Blake v. State, 42 N.Y.S.3d 875 (Mem), 875-76 (N.Y. App. Div. 2016); Shelton v. N.Y. State Liquor Auth., 878 N.Y.S.2d 212, 218 (N.Y. App. Div. 2009).

Here, Plaintiff has alternative common law and § 1983 remedies for his claim under the state constitution concerning false arrest and excessive force. As explained above, Plaintiff has pleaded sufficient factual allegations to make out viable § 1983 false arrest and false imprisonment claims against Schrell, Horun, Katrincic, Morales, Barnhart, and John Doe Police Officers. In addition, as discussed below, Plaintiff has asserted a viable false arrest state tort claim against Schrell, Horun, Katrincic, Morales, Barnhart, and John Doe Police Officers, and he may also hold the City liable for those actions through the doctrine of respondeat superior.

Plaintiff has also asserted viable assault and battery claims, which "effectively duplicate[]" Plaintiff's claim of excessive force under the state constitution. See Alwan v. City of New York, 311 F. Supp. 3d 570, 588 (E.D.N.Y. 2018) ("Plaintiff's claim of excessive force under the state constitution effectively duplicates his assault and battery claims, as state-law excessive force claims are analyzed using substantially the same standard that applies to assault and battery claims."); see also Posr v. Doherty, 944 F.2d 91, 94-95 (2d Cir. 1991) (stating that the requirements of an excessive-force claim under the Fourth Amendment to the U.S. Constitution were "substantially identical" to the requirements for an assault-and-battery claim under New York law, except that the former requires state action).

Accordingly, the court concludes that Plaintiff has an adequate alternative remedy under state tort law for his state-constitutional false arrest, false imprisonment, and excessive-force

claims, and that these claims therefore would not survive a motion to dismiss. See Alwan, 311 F. Supp. 3d at 588. Amendment to add state constitutional claims would thus be futile.

### 5. False Arrest under Pendent Jurisdiction

Plaintiff brings a claim for false arrest under state law against, it appears, Schrell, Ryan, Jacobs, Horun, Katrincic, Morales, Barnhart, the John Doe Police Officers, and the City. (See PSAC ¶ 160.)

#### a. Sufficiency of Allegations

A state law claim for false arrest is substantially similar to a false arrest claim under § 1983. Weyant, 101 F.3d at 852. As explained above, the PSAC states a claim for false arrest and imprisonment under § 1983 against Schrell, Horun, Katrincic, Morales, Barnhart, and John Doe Police Officers, but fails to state such claims against Jacobs and Ryan. For the same reasons, the PSAC states a claim for false arrest against Schrell, Horun, Katrincic, Morales, Barnhart, and John Doe Police Officers under state law, and fails to state such a claim under state law against Jacobs and Ryan. Additionally, the PSAC states a claim for false arrest against the City based on a theory of respondeat superior. See L.B. v. Town of Chester, 232 F. Supp. 2d 227, 239 (S.D.N.Y. 2002) ("Unlike cases brought under § 1983, municipalities may be liable for the common law torts, like false arrest and malicious prosecution, committed by their employees under the doctrine of respondeat superior.").

Nonetheless, the court finds that the state law false arrest claim against Horun, Katrincic, Morales, and Barnhart would not survive a motion to dismiss because such claims would be barred by the statute of limitations.

#### b. Statute of Limitations

"Causes of action based on false arrest and false imprisonment accrue upon the subject's release from confinement and are governed by a one-year statute of limitations." Bellissimo v.

Mitchell, 995 N.Y.S.2d 603, 605 (N.Y. App. Div. 2014) (citations and quotation marks omitted); N.Y. C.P.L.R. 215(3); see Mejia v. Davis, No. 16-CV-9706 (GHW), 2018 WL 333829, at *7 (S.D.N.Y. Jan. 8, 2018) ("In New York, a state claim for false arrest accrues when a plaintiff is released from custody.").

Plaintiff appears to have been released from custody on March 21, 2016. (See PSAC ¶ 51 (alleging that Plaintiff was placed in a cell around 10:30 p.m. on March 20, 2016 and given a desk appearance ticket on March 21, 2016).) Accordingly, the statute of limitations on his state law false arrest claim began running that day. Plaintiff filed his initial complaint, which included a claim for false arrest under state law against Schrell, Ryan, Jacobs, the John Doe Police Officers, and the City, on March 17, 2017, four days before the one-year statute of limitations expired. This complaint identified Horun, Katrincic, Morales, and Barnhart as the John Does, rather than by name.

On February 1, 2019, Plaintiff filed a motion to amend and attached the operative PSAC, which named Horun, Katrincic, Barnhart, and Morales as defendants.[6] (PSAC.) This was more than one year after the false arrest claim accrued. See Rothman, 220 F.3d at 96 ("When a plaintiff seeks to add a new defendant in an existing action, the date of the filing of the motion to amend constitutes the date the action was commenced for statute of limitations purposes." (citation and quotation marks omitted)). Plaintiff's claims against these four Defendants are therefore timely only if the one-year limitations period was tolled or if the PSAC relates back to the original complaint.

---

[6] As noted above, Plaintiff first filed a proposed second amended complaint naming these four defendants on November 29, 2018, but this filing was terminated because Plaintiff failed to seek leave to move to amend, per the court's individual rules. However, even this date was long past the expiration of the statute of limitations on March 21, 2017.

### i. Tolling

Plaintiff argues that his state law claims are tolled under 28 U.S.C. § 1367(d) and N.Y. C.P.L.R. § 205(a). However, he is mistaken.

Under 28 U.S.C. § 1367(d), "[t]he period of limitations for any [state] claim [joined with a claim within federal-court competence] shall be tolled while the claim is pending [in federal court] and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." Artis v. D.C., 138 S. Ct. 594, 598 (2018) (quoting 28 U.S.C. § 1367(d)) (alterations in original). New York's "savings" statute, N.Y. C.P.L.R. § 205(a), allows a plaintiff to refile claims within six months of a timely prior action's termination for reasons other than voluntary discontinuance, a failure to obtain personal jurisdiction over the defendant, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits as long as the new action is premised upon the same transaction or occurrence or series of transactions or occurrences. See Norex Petroleum Ltd. v. Blavatnik, 16 N.E.3d 561, 563 (N.Y. 2014).

Neither statute applies, however, to claims brought against newly added Defendants. See Barnett v. Conn. Light & Power Co., 967 F. Supp. 2d 593, 599-600 (D. Conn. 2013), aff'd, 580 F. App'x 30 (2d Cir. 2014) (holding that because the plaintiff had asserted a timely nuisance claim against only one defendant in a lawsuit, 28 U.S.C. § 1367(d) did not toll the nuisance claim as to the other defendant); Rayo v. State of N.Y., 882 F. Supp. 37, 39 (N.D.N.Y. 1995) ("[I]t is imperative that the plaintiff seeking to utilize [N.Y. C.P.L.R. § 205(a)] be able to demonstrate that the original dismissing court had jurisdiction over the defendant whom the plaintiff now seeks to reassert his claim in the second action."); Cazsador v. Greene Cent. Sch., 663 N.Y.S.2d 310, 311 (N.Y. App. Div. 1997) (holding that because the "plaintiff never obtained jurisdiction over [defendant] in the prior action (and in fact made no effort to interpose a claim against that party), CPLR 205(a) has no application to this case"). Therefore, Plaintiff's false

arrest state law claim against Horun, Katrincic, Barnhart, and Morales was not tolled under 28 U.S.C. § 1367(d) or N.Y. C.P.L.R. § 205(a) and expired prior to the filing of the motion to amend.[7]

### ii. Relation Back

"Once the limitations period has ended, [Plaintiff] may only substitute in a named defendant for a John Doe defendant if the amendment relates back to the original complaint within the meaning of Federal Rule of Civil Procedure 15(c)." Lopez v. City of New York, No. 15-CV-7292 (ARR), 2018 WL 2744705, at *8 (E.D.N.Y. June 7, 2018) (citing Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1075 (2d Cir. 1993)).

First, under Rule 15(c)(1)(C), plaintiffs may add a new defendant only if the new defendant "should have known that, but for a mistake of identity, the original action would have been brought against it." Fed. R. Civ. P. 15(c)(1)(C). "The failure to identify a John Doe defendant before the limitations period has run does not constitute a 'mistake of identity.'" Lopez, 2018 WL 2744705, at *8 (quoting Hogan, 738 F.3d at 517-18). Therefore, "amendments to substitute individuals in place of John Doe defendants do not relate back to the original complaint and are not permitted under Rule 15(c)(1)(C)." Id. at *8 (citing Hogan, 738 F.3d at 518).

---

[7] The court also finds that equitable tolling would not be appropriate here. "Under New York law, the doctrines of equitable tolling or equitable estoppel 'may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action.'" Abbas v. Dixon, 480 F.3d 636, 642 (2d Cir. 2007) (quoting Doe v. Holy See (State of Vatican City), 793 N.Y.S.2d 565, 568 (N.Y. App. Div. 2005)). "'Due diligence on the part of the plaintiff in bringing [an] action,' however, is an essential element of equitable relief." Id. (quoting Holy See, 793 N.Y.S.2d at 569). The plaintiff bears the burden of showing equitable tolling is warranted, and "[i]f a plaintiff cannot 'articulate[ ] any acts by defendants that prevented [him] from timely commencing suit' then he has 'failed to meet [his] burden of showing that [he was] wrongfully induced by defendants not to commence suit.'" Id. (quoting Holy See, 793 N.Y.S.2d at 569).

Here, Plaintiff has not raised equitable tolling, nor does the record reflect that Plaintiff exercised due diligence or that Defendants prevented him from timely commencing suit. Accordingly, equitable tolling does not apply.

Second, Rule 15(c)(1)(A) also allows relation back to the extent it is allowed by New York law. See Fed. R. Civ. P. 15(c)(1)(A) (allowing relation back to the extent that "the law that provides the applicable statute of limitations allows [it]"). New York law allows relation back when either N.Y. C.P.L.R. §§ 203 or 1024 are satisfied. See Lopez, 2018 WL 2744705, at *8;

Section 203 closely tracks Rule 15(c)(1)(C). See id.; Vasconcellos v. City of New York, No. 12-CV-8445 (CM), 2014 WL 4961441, at *8 (S.D.N.Y. Oct. 2, 2014). Plaintiff may only add a new defendant under section 203 if "the new party knew or should have known that, but for an <u>excusable mistake</u> by plaintiff as to the identity of the proper parties, the action would have been brought against him as well." Lopez, 2018 WL 2744705, at *8 (emphasis in original) (citing Vasconcellos, 2014 WL 4961441, at *8). As Plaintiff cannot meet the requirements of Rule 15(c)(1)(C), they also cannot satisfy section 203. See id.

Section 1024 permits relation back only if plaintiffs have "exercise[d] due diligence, prior to the running of the statute of limitations, to identify the defendant by name." Hogan, 738 F.3d at 519 (quoting Bumpus v. N.Y.C. Transit Auth., 883 N.Y.S.2d 99, 104 (N.Y. App. Div. 2009)). To meet this requirement, "the party must [first] 'exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name.' Second, the party must describe the John Doe party 'in such form as will fairly apprise the party that [he] is the intended defendant.'" Hogan, 738 F.3d at 519 (alteration in original) (citations omitted) (quoting Bumpus, 883 N.Y.S.2d at 104). Plaintiff has not alleged any facts demonstrating that he exercised "due diligence" prior to the running of the statute to identify the John Doe defendants by name. Cf., e.g., Temple v. N.Y. Cty. Hosp., 933 N.Y.S.2d 321, 323 (N.Y. App. Div. 2011) (holding that plaintiff failed to exercise due diligence because although some limited discovery demands were served prior to the expiration of the statute of limitations, plaintiff failed to, e.g.,

engage in pre-action discovery or Freedom of Information Law requests, failed to promptly seek further discovery, neglected to submit a properly executed authorization to the disclosing party, and failed to properly and promptly seek assistance from the Supreme Court). Plaintiff's claim for false arrest under state law against Horun, Katrincic, Barnhart, and Morales does not relate back and amendment would thus be futile in this respect.

The state law false arrest claim would thus survive a motion to dismiss only with respect to Schrell, the John Doe Police Officers, and the City.

### 6. Malicious Prosecution under Pendent Jurisdiction

Plaintiff brings a claim for malicious prosecution under state law against Schrell, Ryan, Jacobs, Horun, Katrinic, Morales, Barnhart, the John Doe Police Officers, and the City. This claim would fail for the same reason that Plaintiff's federal claim for malicious prosecution would fail. Amendment would thus be futile in this respect.

### 7. Intentional and Negligent Infliction of Emotional Distress

The PSAC contains new claims for intentional and negligent infliction of emotional distress against all Defendants. (PSAC ¶¶ 176-84.)

In New York, the tort of intentional infliction of emotional distress has four elements: "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." Bender v. City of New York, 78 F.3d 787, 790 (2d Cir. 1996). The elements of an action for negligent infliction of emotional distress are a "breach of a duty owed to [the] plaintiff which exposes him or her to an unreasonable risk of bodily injury or death," Castanza v. Town of Brookhaven, 700 F.Supp.2d 277, 293 (E.D.N.Y.2010) (citation omitted), and extreme and outrageous conduct, Franco v. Diaz, 51 F. Supp. 3d 235, 247 (E.D.N.Y. 2014).

"Generally, courts view those 'causes of action [as] duplicative of . . . causes of action alleging false arrest and false imprisonment, malicious prosecution, and assault and battery.'" Demosthene v. City of New York, No. 14-CV-816 (SJ) (VMS), 2015 WL 5093116, at *26 (E.D.N.Y. June 26, 2015), report & recommendation adopted, 2015 WL 5093164 (E.D.N.Y. Aug. 28, 2015) (quoting Rodger v. City of New York, 966 N.Y.S.2d 466, 469 (N.Y. App. Div. 2013)); see Calicchio v. Sachem Cent. Sch. Dist., 185 F. Supp. 3d 303, 314 (E.D.N.Y. 2016) ("To the extent that these causes of action are based on conduct encompassed by traditional torts such as false imprisonment, malicious prosecution, and slander, the[y] are precluded by New York law, even if the alleged conduct falls short of the traditional tort."); Brewton v. City of New York, 550 F. Supp. 2d 355, 370 (E.D.N.Y. 2008) ("[T]o the extent that [the plaintiff] contends she suffered emotional distress as a result of the false arrest, her claim is encompassed entirely within other tort remedies and is thus precluded under New York law."); Fischer v. Maloney, 373 N.E.2d 1215, 1217 (N.Y. 1978) ("[I]t may be questioned whether the doctrine of liability for intentional infliction of extreme emotional distress should be applicable where the conduct complained of falls well within the ambit of other traditional tort liability, [such as] malicious prosecution and abuse of process.").

Accordingly, the court finds that these claims would not survive a motion to dismiss and that amendment would thus be futile.

### 8. Larceny under Pendent Jurisdiction

Finally, Plaintiff brings a claim against Jacobs for larceny. (See PSAC ¶¶ 185-87.) The court is not aware of any such claim under New York state law, and Plaintiff cites no authority for its existence. Such claim would not, therefore, survive a motion to dismiss.

41

## V.    CONCLUSION

For the foregoing reasons, Plaintiff's motion to amend (Dkt. 69) is GRANTED IN PART and DENIED IN PART. Plaintiff may amend to state the following claims:

1)  42 U.S.C. § 1983 False Arrest/False Imprisonment against Schrell, Horun, Katrincic, Morales, Barnhart, and John Doe Police Officers;

2)  Conspiracy to Deprive Plaintiff of his Constitutional Rights under 42 U.S.C. § 1983 against Schrell, Jacobs, Horun, Katrincic, Morales, Barnhart, and the John Doe Police Officers;

3)  Assault and Battery under state law against O'Connor and Jacobs;

4)  Libel and Slander (Defamation) under state law against Ryan;

5)  False Arrest under state law against Schrell, the John Doe Police Officers, and the City.

Plaintiff is DIRECTED to serve and file a second amended complaint, consistent with this decision, on the docket of this case within 14 days of the date of this decision.

The Clerk of Court is respectfully DIRECTED to re-open the case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York          NICHOLAS G. GARAUFIS
      August 5, 2019          United States District Judge