UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
STEVEN COOPER,

                Plaintiff,

        v.                                    MEMORANDUM AND ORDER

CITY OF NEW YORK; DANIEL O'CONNOR;      17-CV-1517 (RPK) (RLM)
*Police Lieutenant* THOMAS JACOBS; *Police Officer* JESSICA SCHRELL, *Shield No. 26482*; *Police Dpt. Sergeant* BRENDAN RYAN; *Police Sergeant* ADAM KATRINCIC; *Captain* DESMOND MORALES; *Police Officer* NICHOLAS HORUN; *Lt. Tax #90962* STEVEN MONA; *Police Sergeant* PEARL BARNHART; *and NY Police Officers* JOHN DOES 1-10, *the identity of whom is presently unknown, in their individual and official capacities as New York City Police Officers*,

                Defendants.
-----------------------------------------------------------x
RACHEL P. KOVNER, United States District Judge:

      Plaintiff Steven Cooper brings nine claims arising from an altercation with a rapper and an off-duty police lieutenant and his subsequent arrest. Defendants City of New York ("the City") and the police officers who made the arrest (collectively, "City Defendants") now move for summary judgment, as does the off-duty lieutenant, defendant Thomas Jacobs. For the reasons that follow, defendants' motions are granted.

## BACKGROUND

      The following facts, taken from the parties' Rule 56.1 statements, depositions, and evidentiary filings, are uncontradicted by other evidence unless noted.

### A.    Factual Background

      On March 20, 2016, off-duty New York Police Department lieutenant Thomas Jacobs, rapper Daniel O'Connor, and Steven Mona—all defendants in this case—were driving in a car

1

together, along with third-party Vasilis Xydias.  Pl.'s R. 56.1 Statement ¶¶ 1.J–4.J (Dkt. #164). The car nearly hit plaintiff Steven Cooper as he walked across an intersection.  *Id*. at ¶¶ 1.J, 7.J–8.J.

Thinking that Mr. Cooper had thrown something at the car, *id*. at ¶ 9.J; Decl. of James M. Moschella, Jacobs Ex. A, at 95:9–13 (Dkt. #173-1) ("Jacobs Dep."), Mr. O'Connor got out and grabbed Mr. Cooper's hoodie, Jacobs Dep. 98:20–25.  Lt. Jacobs followed.  Pl.'s R. 56.1 Statement ¶ 10.J.

The parties disagree over whether Lt. Jacobs attempted to separate the parties or instead joined Mr. O'Connor in physically confronting Mr. Cooper.  *Id.* at ¶ 14.J.  The parties also disagree over whether Lt. Jacobs was carrying a gun under his clothing.  *Id.* at ¶ 25.J.  Mr. Cooper testifies that he felt a gun when Lt. Jacobs hip-checked him and that Lt. Jacobs threatened to shoot him. Decl. of Rob Rickner, Ex. 40, at 140:3–8; 189:15–21 (Dkt. #165-53) ("Cooper Dep.").

During the altercation, Mr. Cooper pulled, slapped, or punched off Lt. Jacobs's glasses.  *Id*. at 191:8–13; Jacobs Dep. 103:24–104:2.  He then fled and called 911.  Pl.'s R. 56.1 Statement ¶¶ 38.J–41.J, 48.J.  Mr. O'Connor found Mr. Cooper while he was on the phone with 911.  Cooper Dep. 60:5–7.

The parties dispute whether Mr. O'Connor and Lt. Jacobs then beat and kicked Mr. Cooper, *id*. at 60:9–20, or whether Mr. O'Connor and Mr. Cooper simply yelled at each other while Lt. Jacobs remained some distance away, Jacobs Dep. 116:25–120:9.  Eventually, Lt. Jacobs and Mr. O'Connor returned to their car.  Pl.'s R. 56.1 Statement ¶ 52.J.

Meanwhile, a police cruiser responding to the 911 call picked up Mr. Cooper.  *Id*. at ¶¶ 4.D–8.D; 55.J–56.J.  The two officers in the vehicle were defendants Police Officer Nicholas

2

Horun and Police Officer Jessica Schrell. *Id*. at ¶ 4.D. Together, they returned to the intersection, where they joined several more police cruisers and unmarked cars. Cooper Dep. 66:19–25.

Officers Horun and Schrell exited the car and approached the scene, where they spoke with Lt. Jacobs. Pl.'s R. 56.1 Statement ¶ 11.D; Jacobs Dep. 129:20–130:5; Decl. of Christopher D. DeLuca, Ex. C 23:15–24:19 (Dkt. #162-3) ("Schrell Dep."). Mr. Cooper attempted to join the conversation, but the officers asked him to back up. Cooper Dep. 66:24–67:9.

Lt. Jacobs identified himself to Officers Horun and Schrell as a lieutenant and told them that "he got punched in the face by that individual that was in the car, trying to break up a fight." Schrell Dep. 23:15–24; *see* Jacobs Dep. 129:20–130:5. When Mr. Cooper saw Lt. Jacobs identify himself, he realized that the incident might turn into "a crazy situation," so he offered the officers his contact information and asked to leave. Cooper Dep. at 67:20–68:12. Sgt. Katrincic refused. *Id*. at 69:9–70:1; Decl. of Christopher D. DeLuca, Ex. E 23:6–14 (Dkt. #162-5) ("Katrincic Dep.").[1] The officers then took Mr. Cooper, Lt. Jacobs, Mr. O'Connor, Sgt. Mona, and Mr. Xydias to the 90th Precinct. Pl.'s R. 56.1 Statement ¶¶ 66.J–67.J, 20D.

At the precinct, Cpt. Desmond Morales spoke with Mr. Cooper, Lt. Jacobs, and Mr. O'Connor. *Id*. at ¶¶ 22.D–23.D. Mr. Cooper alleged that Lt. Jacobs punched him. Decl. of Christopher D. DeLuca, Ex. F 29:23–30:5 (Dkt. #162-6) ("Morales Dep."). Cpt. Morales prepared an Unusual Occurrence Report ("UF-49") that omitted Mr. Cooper's allegation. Pl.'s R. 56.1 Statement ¶ 24.D.

---

[1] In his Rule 56.1 statement, plaintiff also asserts that Officers Horun and Schrell told him he was not free to leave. *See* Pl.'s R. 56.1 Statement ¶¶ 19.D, 63.J. However, the Rule 56.1 statement cites no evidence that supports this conclusion. *See* Cooper Dep. 67:20–68:17; 69:24–70:1 (specifically identifying only a "sergeant with red hair"); Decl. of Rob Rickner, Ex. 43 at 41:23–42:9 (Dkt. #165-56) ("Horun Dep.") (stating that Horun *believed* plaintiff was not free to go, not that Horun *told* plaintiff that he could not leave).

3

After five or six hours at the precinct, Cooper Dep. 154:11–14, Sgt. Katrincic asked Mr. Cooper if he wanted to press charges, *id*. at 75:10–12. Mr. Cooper said that he did. *Id*. at 75:13–15. Sgt. Katrincic then informed him that the others wanted to press charges too, and formally arrested Mr. Cooper. *Id*. at 75:16–20. Sgt. Pearl Barnhart approved the arrest report and criminal complaint. Pl.'s R. 56.1 Statement ¶ 32.D. Sgt. Brendan Ryan, a public information officer, provided a statement to *The New York Post*, which ran an article titled "House of Pain Rapper Charged in Road-Rage Brawl." *Id*. at ¶¶ 36.D–37.D; Decl. of Christopher D. DeLuca, Ex. 17 (Dkt. #162-17). The statement described Mr. Cooper as "punch[ing]" Lt. Jacobs "in the face" while Lt. Jacobs "was attempting to diffuse the argument." Pl.'s R. 56.1 Statement ¶ 36.D.

Mr. Cooper was charged with assault in the third degree, criminal mischief in the fourth degree, menacing in the third degree, attempted assault in the third degree, and harassment in the second degree. *Id.* at ¶ 85.J. Eventually, the Kings County District Attorney's Office dropped the charges against Mr. Cooper. Decl. of Rob Rickner, Ex. 51 (Dkt. #165-64).

**B.     Procedural History**

Mr. Cooper sued the City Defendants, Mr. O'Connor, Lt. Jacobs, Sgt. Mona, and John Does 1–10. *See* Compl. (Dkt. #1). Judge Garaufis, the then-assigned district judge, dismissed the first amended complaint after finding that it failed to state a claim upon which relief could be granted. *See* Mem. & Order 24 (Dkt. #61); Fed. R. Civ. P. 12(b)(6). Mr. Cooper moved to amend the complaint, Mot. to Amend (Dkt. #68), and defendants opposed the motion on the ground that amendment would be futile, Mems. in Opp'n to Mot. to Amend (Dkts. #72, 73). Judge Garaufis granted leave to amend in part, finding that Mr. Cooper's claims under 42 U.S.C. § 1983 for false arrest, false imprisonment, and "conspiracy to deprive plaintiff of his constitutional rights" are "[t]he only federal claims that would survive a motion to dismiss." Mem. & Order 25, 42 (Dkt. #84). With respect to the conspiracy claim, Judge Garaufis noted that Mr. Cooper's "allegations,

4

while limited, are sufficient to raise a plausible inference of a conspiracy to violate Plaintiff's right to be free from false arrest." *Id*. at 24. Judge Garaufis also granted leave to amend with respect to certain state-law claims, which are discussed in further detail below. *Id*. at 42. He denied leave to amend with respect to Sgt. Mona, finding that Mr. Cooper's allegations were "entirely devoid of facts" supporting those allegations. *Id*. at 25.

The now-operative second amended complaint contains nine claims. Under 42 U.S.C. § 1983, Mr. Cooper brings claims for (i) false imprisonment and (ii) false arrest against Officers Schrell and Horun, Sgts. Katrincic and Barnhart, Cpt. Morales, and John Does 1–10, as well as (iii) a conspiracy claim against Officers Schrell and Horun, Sgts. Ryan, Barnhart, and Katrincic, Lt. Jacobs, and Cpt. Morales. Second Am. Compl. ¶¶ 64–97 (Dkt. #85). Under New York law, Mr. Cooper also brings claims for (iv) assault and (v) battery against Mr. O'Connor, (vi) assault and (vii) battery against Lt. Jacobs, (viii) defamation against Sgt. Ryan, and (ix) false arrest against the City, Officer Schrell, and John Does 1–10. *Id*. at ¶¶ 98–120.

The City Defendants move for summary judgment on Mr. Cooper's constitutional claims and his state-law false-arrest claim. *See* City Defs.' Notice of Mot. for Summ. J. (Dkt. #160). Lt. Jacobs also moves for summary judgment on the constitutional claims, Jacobs' Notice of Mot. for Summ. J. (Dkt. #171), and the City Defendants and Lt. Jacobs move to dismiss the pendant state-law claims. *See* City Defs. Mem. in Supp. 16–19 (Dkt. #163); Jacobs Mem. in Supp. 19 (Dkt. #174). In response, Mr. Cooper states that he does not oppose summary judgment on the defamation claim, any other claims against Sgts. Ryan and Barnhart, and the dismissal of the John Doe defendants. Pl.'s Mem. in Opp'n 1 n.1 (Dkt. #166); Pl.'s Letter Brief (Dkt. #178). At the Court's direction, the parties filed supplemental briefing on the Section 1983 conspiracy claim. *See* Apr. 30, 2022 Order; City Defs.' Letter Brief (Dkt. #177); Pl.'s Letter Brief.

5

**STANDARD OF REVIEW**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a factual dispute is material if it "might affect the outcome of the suit under the governing law." *Frost v. New York City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quotation marks omitted). In determining whether there is a genuine issue of material fact, a court evaluates the whole record, resolving all ambiguities and drawing all permissible factual inferences in favor of the non-movant. *See ibid*. A nonmoving party can survive summary judgment only if there is sufficient evidence to permit a rational trier of fact to find in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

In assessing the record, I consider cited "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, [and] interrogatory answers." Fed. R. Civ. P. 56(c)(1)(A). I view "the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Tracy v. Freshwater*, 623 F.3d 90, 95 (2d Cir. 2010). "It is a settled rule that credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (internal quotation marks, alterations, and citation omitted).

**DISCUSSION**

Defendants' motions are granted with respect to Mr. Cooper's federal claims. The existence of probable cause entitles defendants to summary judgment on Mr. Cooper's false-

imprisonment and false-arrest claims, and defendants also prevail on the Section 1983 conspiracy claim.  Next, summary judgment is granted as unopposed to defendants on the defamation claim and to Sgt. Barnhart and Sgt. Ryan on all other claims against them.  And because discovery has closed and John Does 1–10 have not been identified, the claims against them are also dismissed.  *See Esperanza v. City of New York*, 325 F. Supp. 3d 288, 294 n.1 (E.D.N.Y. 2018) (dismissing unknown defendants when plaintiff had not identified them in discovery) (collecting cases); Pl.'s Letter Brief 1 (agreeing the John Does should be dismissed).  Finally, Mr. Cooper's remaining state-law claims are dismissed without prejudice to refiling in state court.

I.  **Defendants Prevail on the False-Arrest and False-Imprisonment Claims**

Probable cause defeats all three of Mr. Cooper's false-arrest and false-imprisonment claims, which cumulatively cover the time from Mr. Cooper's initial detention through his time at the Precinct.

Probable cause exists "when the arresting officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed . . . a crime." *Mitchell v. City of New York*, 841 F.3d 72, 77 (2d Cir. 2016) (brackets omitted) (quoting *Jenkins v. City of New York*, 478 F.3d 76, 84–85 (2d Cir. 2007)).  Under both New York law and federal law, its existence is "a complete defense" to claims of both false arrest and false imprisonment. *Triolo v. Nassau Cnty.*, 24 F.4th 98, 106 (2d Cir. 2022); *see Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014).  Whether probable cause exists is assessed "objectively" based on "the facts known by the arresting officer at the time of the arrest." *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)).

Under these principles, defendants are entitled to summary judgment on Mr. Cooper's false-arrest and false-imprisonment claims.  As Mr. Cooper argues, his false-arrest claims arose

7

"as soon as the officers stopped him from walking away and tending to his wounds"—that is, when Sgt. Katrincic refused to let him leave the scene of the incident—and his false-imprisonment claim arose when he was subsequently detained at the 90th Precinct. Pl.'s Mem. in Opp'n 10; Second Am. Compl. ¶ 65. Before either event occurred, however, Lt. Jacobs had told the arresting officers that "he got punched in the face by [Mr. Cooper], trying to break up a fight." Schrell Dep. 23:15–24; Jacobs Dep. 129:20–130:5; *see* Cooper Dep. 67:20–68:12. As the report of a "putative victim," Lt. Jacobs's allegation established the probable cause required to arrest and detain Mr. Cooper. *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) ("When information is received from a putative victim or an eyewitness, probable cause exists . . . unless the circumstances raise doubt as to the person's veracity."); *accord Stansbury v. Wertman*, 721 F.3d 84, 90 (2d Cir. 2013).

Mr. Cooper has not pointed to any circumstances that rendered it unreasonable for officers to rely on this account of a putative victim. Contrary to Mr. Cooper's arguments, Mr. Cooper's protestations of innocence did not eliminate probable cause. Pl.'s Mem. in Opp'n 10–12. "[A]n officer is not required to investigate an individual's innocent explanations as to an alleged crime, nor to resolve all credibility issues between witnesses, before making an arrest based on probable cause." *Washington v. Napolitano*, 29 F.4th 93, 98 (2d Cir. 2022); *see Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) (citing *Baker v. McCollan*, 443 U.S. 137, 145–46 (1979)).

And Mr. Cooper does not identify any evidence that defendants "deliberately disregard[ed] [known] facts" when making their probable cause determination. *Jocks v. Tavernier*, 316 F.3d 128, 135–36 (2d Cir. 2003) (citing *Ricciuti*, 124 F.3d at 128). Mr. Cooper notes that the video of the incident undercuts Lt. Jacobs's story. Pl.'s Mem. in Opp'n 8. However, the officers did not

8

have this footage at the time of the arrest. Pl.'s R. 56.1 Statement ¶ 25.D.[2] Because probable cause is assessed "objectively" based on "the facts known by the arresting officer at the time of the arrest," *Jaegly*, 439 F.3d at 153 (citing *Devenpeck*, 543 U.S. at 153), the footage's subsequent discovery does not alter the probable-cause analysis.

Relatedly, Mr. Cooper fails to establish that "the circumstances raise doubt as to [Lt. Jacobs's] veracity." *Curley*, 268 F.3d at 70 (citing *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995)). Such circumstances arise, for example, if an arresting officer knew of a "bitter prior relationship" between the parties, *Sankar v. City of New York*, 867 F. Supp. 2d 297, 306 (E.D.N.Y. 2012), or knew that the complaining victim's "cognitive abilities" were so "severely impaired" as to render his "account . . . unreliable," *Moroughan v. City of Suffolk*, 514 F. Supp. 3d 479, 522 (E.D.N.Y. 2021) (off-duty officer's account failed to establish probable cause because he was so drunk that he insisted to responding officers that he had shot himself when, in fact, he had not been shot at all). Plaintiff has not presented evidence of comparable circumstances.

Finally, Mr. Cooper simply asks the Court to disregard the officers' and Lt. Jacobs's testimony about what they discussed at the scene. *See* Pl.'s Letter Brief 2. At summary judgment, a district court may only disregard testimony when the testimony is "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit [it]," *Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d Cir. 2005) (internal quotation marks omitted). This stringent standard is not close to satisfied. Defendants' testimony is plausible, and Mr. Cooper has produced no evidence to controvert it.

Accordingly, defendants prevail on the false-arrest and false-imprisonment claims.

---

[2] Plaintiff also claims the New York Police Department did not look for video or only conducted a sham search. *See* Pl.'s R. 56.1 Statement ¶ 25.D. That assertion lacks a basis in the record. *See* Horun Dep. 79:9–80:12 (discussing search); Decl. of Christopher D. DeLuca, Ex. S 20:13–23:10 (Dkt. 162-19) (testimony of officer who conducted the search).

### II. Summary Judgment Is Granted on the Section 1983 Conspiracy Claim

Defendants are also entitled to summary judgment on Mr. Cooper's Section 1983 conspiracy claim. As explained below, the only Section 1983 conspiracy claim contained in the Second Amended Complaint is a conspiracy to violate Mr. Cooper's rights through false arrest. Defendants are entitled to summary judgment on that claim because, for the reasons explained above, no false arrest occurred. But even if the operative complaint were construed to include other Section 1983 conspiracy claims, plaintiff has not adduced evidence sufficient to withstand summary judgment on those claims.

#### A. The conspiracy claim pertains to false arrest.

Although Mr. Cooper asserts that the operative complaint contains claims of conspiracy to commit false arrest, fabrication of evidence, and First Amendment retaliation, Judge Garaufis granted leave to file a Section 1983 conspiracy claim only as it relates to "a conspiracy to violate [p]laintiff's right to be free from false arrest." Mem. & Order 24. Mr. Cooper has offered no reason for revisiting Judge Garaufis's decision now. *See Vaughn v. Phoenix House New York Inc.*, 957 F.3d 141, 146 (2d Cir. 2020) (explaining that the law-of-the-case doctrine bars revisiting prior rulings absent an intervening change in law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice); *see also Lyman v. CSX Transp., Inc.*, 364 F. App'x 699, 701 (2d Cir. 2010) (a court need not consider claims raised for the first time in opposition to summary judgment) (collecting cases). Accordingly, the Court agrees with defendants that Mr. Cooper's conspiracy claim is limited to the theory that defendants conspired to falsely arrest him.

#### B. The existence of probable cause resolves the Section 1983 conspiracy claim.

Defendants are entitled to summary judgment on Mr. Cooper's claim that defendants conspired to violate the Fourth Amendment through false arrest, in violation of Section 1983. To establish a Section 1983 conspiracy, a plaintiff must show "(1) an agreement between two or more

state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). In addition, "a plaintiff alleging a [Section] 1983 conspiracy claim must prove an actual violation of constitutional rights." *Knopf v. Esposito*, 803 F. App'x 448, 453 (2d Cir. 2020) (quoting *Singer*, 63 F.3d at 119).

The existence of probable cause entitles defendants to summary judgment on a conspiracy claim predicated on a Fourth Amendment violation, such as false arrest. Where "probable cause to arrest . . . [a] plaintiff [exists], there has been no deprivation of a constitutional right and no valid claim of conspiracy" under the Fourth Amendment. *Celestin v. City of New York*, 581 F. Supp. 2d 420, 434–35 (E.D.N.Y. 2008); *see Singer*, 63 F.3d at 119; *accord Fiedler v. Incandela*, 222 F. Supp. 3d 141, 165 (E.D.N.Y. 2016); *Daly v. Ragona*, No. 11-CV-3836 (JFB) (WDW), 2013 WL 3428185, at *9 (E.D.N.Y. July 9, 2013); *Martinez v. Golding*, 499 F. Supp. 2d 561, 570 (S.D.N.Y. 2007). As explained, *see* pages 7–9, *supra*, probable cause existed to detain Mr. Cooper from the moment Lt. Jacobs provided his account to the officers. This probable cause, in turn, defeats any conspiracy claim resting on Fourth Amendment violations.[3]

### C. Even if Mr. Cooper's operative complaint included additional Section 1983 conspiracy claims, defendants would be entitled to summary judgment on those claims.

Even if Mr. Cooper's operative pleading were construed to permissibly press additional claims of conspiracy to violate Mr. Cooper's First Amendment rights and conspiracy to fabricate evidence, defendants would be entitled to summary judgment on those claims.

---

[3] I do not address the possibility of a Fourth Amendment claim arising from a malicious-prosecution theory. Judge Garaufis did not grant plaintiff leave to amend his complaint to press such a claim. *See* Mem & Order 40; *see also id.* at 15–16 (explaining that plaintiff's proposed second amended complaint failed to adequately plead that any malicious prosecution had occurred). Further, Mr. Cooper has not defended a Section 1983 conspiracy claim with respect to malicious prosecution. Pl.'s Letter Brief.

### 1. Probable cause defeats any claim of First Amendment retaliation here.

Probable cause defeats any First Amendment retaliation conspiracy claim Mr. Cooper brings. *See* Pl.'s Mem. in Opp'n 18 (emphasizing that Mr. Cooper was arrested only after saying that he wished to press charges). The existence of probable cause typically defeats a claim of retaliatory arrest in violation of the First Amendment—even when an officer makes an arrest shortly after the arrestee has engaged in protected speech. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1725 (2019); *see Singer*, 63 F.3d at 120 (where "there was probable cause" for an arrest, the plaintiff could not "demonstrat[e] a viable First Amendment [conspiracy] claim"). That principle does not apply "when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves*, 139 S. Ct. at 1727. But Mr. Cooper has not presented evidence to trigger this exception. Therefore, any claim of conspiracy to violate Mr. Cooper's First Amendment rights would fail.

### 2. The lack of evidence of any meeting of the minds defeats any claim that defendants conspired to fabricate evidence.

Finally, the absence of any evidence of a meeting of the minds entitles defendants to summary judgment on the claim that Officer Schrell, Officer Horun, Sgt. Katrincic, Cpt. Morales, and Lt. Jacobs conspired to fabricate evidence in violation of Mr. Cooper's Fourteenth Amendment rights. Second Am. Compl. ¶¶ 91–97. While conspiracies may "be proven by circumstantial, rather than direct, evidence," *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999), a plaintiff still must put forward evidence from which a factfinder could conclude that "defendants acted in a willful manner, culminating in an agreement, understanding or 'meeting of the minds,'" *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 507–08 (S.D.N.Y. 2008) (quotation marks omitted) (quoting *Shabazz v. Pico*, 994 F. Supp. 460, 467 (S.D.N.Y. 1998)), *aff'd*, 461 F. App'x 18 (2d Cir. 2012); *accord Pangburn*, 200 F.3d at 72. No evidence of such an agreement exists here. Mr.

Cooper argues that a conspiracy can be inferred from several alleged deficiencies regarding the City Defendants' investigation, but, as discussed below, those allegations are either unsupported by the record or fail to support an inference of conspiracy.

First, Mr. Cooper claims that a jury could find a conspiracy to fabricate evidence between the defendants because he identified Lt. Jacobs as his attacker, but "the City Defendants denied that Cooper ever even accused Jacobs of assaulting him." Pl.'s Mem. in Opp'n 15. This assertion is belied by the record, which establishes that Sgt. Katrincic reported Mr. Cooper's allegation that "the lieutenant struck him," Decl. of Rob Rickner, Ex. 24.1, at 2 (Dkt. #165-25), and that Cpt. Morales investigated whether Lt. Jacobs struck Mr. Cooper, Pl.'s R. 56.1 Statement at ¶¶ 22.D–24.D. Although Cpt. Morales did not include Mr. Cooper's allegation in the UF-49, Cpt. Morales explained that the information was omitted because he completed the UF-49 after "it was determined that Lieutenant Jacobs did not strike Mr. Cooper, and Mr. O'Connor actually struck him." Morales Dep. 60:9–23; see Pl.'s R. 56.1 Statement ¶ 24.D. No reasonable jury could infer from Cpt. Morales's decision not to include Mr. Cooper's allegation in a particular form that the defendants were engaged in a conspiracy to fabricate evidence.

Second, Mr. Cooper suggests that a jury could infer that defendants "tacitly or overtly agreed to adopt Jacobs' version of events" because defendants attributed Mr. Cooper's injuries "solely to O'Connor" and "responding officers" adopted Lt. Jacobs's position that Lt. Jacobs had not assaulted plaintiff. Pl.'s Mem. in Opp'n 15, 17. But no reasonable jury could infer a conspiracy to fabricate evidence from these aspects of the investigation. It is undisputed that Cpt. Morales investigated Mr. Cooper's allegation and concluded after interviewing at least seven witnesses that "Jacobs did not strike plaintiff and that O'Connor struck plaintiff." Pl.'s R. 56.1 Statement ¶¶ 22.D–24.D. Mr. Cooper fails to raise a genuine dispute regarding the sufficiency of

13

Cpt. Morales's investigation. And no reasonable jury could infer a conspiracy to fabricate evidence from the fact that officers credited one account over another, without more.

Third, Mr. Cooper argues that "while Defendants claimed that there was a video canvass with negative results, none of them can identify who actually canvassed the area." Pl.'s Mem. in Opp'n 16. However, Officer Horun testified that he "kn[e]w for a fact" that an agent in the Borough Investigation Unit conducted the video canvass. Horun Dep. 78:14–79:18. No reasonable juror could find that the officers' failure to remember the name of the canvassing offer supported Mr. Cooper's proffered inference that "the officers either (1) lied about canvassing and avoided doing so to protect Jacobs; or (2) discovered footage confirming Cooper's story and intentionally chose not to collect or report it." Pl.'s Mem. in Opp'n 16.

Fourth, Mr. Cooper contends that discrepancies between Cpt. Morales's and Sgt. Katrincic's reports regarding whether Lt. Jacobs was armed provides evidence that "Jacobs did have his weapon, and the City Defendants were working together to cover that fact up." *Id*. at 16–17. No reasonable jury could infer a conspiracy from this reporting discrepancy which, if anything, suggests the absence of coordination.

Fifth, Mr. Cooper suggests that "officers attempted to downplay [his] injuries because they did not want to attribute them to Jacobs." *Id*. at 17. But it is undisputed that Mr. Cooper's injuries were documented in the Arrest Report and Complaint Report associated with Mr. O'Connor's arrest, the 90th Precinct Command Log, and Mr. Cooper's Aided Card. Pl.'s R. 56.1 Statement ¶¶ 27.D–28.D. Even if Mr. Cooper is correct that defendants "refused to take [a] photo of his black eye," *id*. at ¶ 28.D, Mr. Cooper fails to explain how this fact supports the inference that defendants conspired to fabricate evidence.

14

Because Mr. Cooper has offered little more than speculation to support his claim of a conspiracy to fabricate evidence, defendants would be entitled to summary judgment on any conspiracy claim as well. *Moroughan*, 514 F. Supp. 3d at 494; *Barnes v. Harling*, 368 F. Supp. 3d 573, 595–96 (W.D.N.Y 2019); *Ostensen v. Suffolk Cnty.*, 236 F. App'x 651, 653 (2d Cir. 2007).

### III. Mr. Cooper's State-Law Assault and Battery Claims Are Dismissed

Finally, because Mr. Cooper's federal claims have failed, I decline to retain jurisdiction over Mr. Cooper's state-law claims. *See* 28 U.S.C. § 1367(c). Four factors bear on whether it is appropriate to exercise supplemental jurisdiction: "judicial economy, convenience, fairness, and comity." *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 81 (2d Cir. 2018). As a general matter, where "a plaintiff's federal claims are dismissed before trial, 'the state claims should be dismissed as well.'" *Brzak v. United Nations*, 597 F.3d 107, 113–14 (2d Cir. 2010) (citation omitted); *see Pension Benefit Guar. Corp. ex rel. St Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013); *Klein & Co. Futures, Inc. v. Bd. of Trade*, 464 F.3d 255, 262 (2d Cir. 2006). Mr. Cooper has articulated no persuasive reason to depart from the usual practice here. This case "is not on the eve of trial" or likely even "the eve of the eve of trial," and Mr. Cooper has identified no reason why he could not re-file his state-law claims in state court. *Chenensky v. N.Y. Life Ins. Co.*, 942 F. Supp. 2d 388, 393 (S.D.N.Y. 2013) (citation omitted). Accordingly, it is not now inconvenient, unfair, or uneconomical for the parties to try their state-law claims in state court. *See Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d at 727.

### CONCLUSION

Defendants' motions for summary judgment are granted on Mr. Cooper's Section 1983 false-imprisonment and false-arrest claims, the state-law false-arrest claim, and the Section 1983 conspiracy claim. Summary judgment is also granted as unopposed to Sgts. Barnhart and Ryan and to defendants on plaintiff's defamation claim. The John Doe defendants are dismissed. And

because no federal claims survive, the Court declines to exercise jurisdiction over plaintiff's remaining state-law claims. The Clerk of Court is directed to enter judgment and close the case.

SO ORDERED.

                                               */s/ Rachel Kovner*
                                               RACHEL P. KOVNER
                                               United States District Judge

Dated: September 26, 2022
        Brooklyn, New York